# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Nathan G. DuBray, )
  )
             Petitioner, )
  )      Case No. 3:16-cv-29
      vs. )
  )  **REPORT AND RECOMMENDATION**
Chad Pringle, Warden, )
  )
          Respondent. )

Nathan G. DuBray (DuBray)[1] petitioned for habeas relief under 28 U.S.C. § 2254. (Doc. #1). After preliminary review, the court ordered service on the respondent. (Doc. #3). The respondent moved to dismiss the habeas petition, (Doc. #7), and DuBray has responded to that motion, (Doc. #14).

## Summary of Report and Recommendation

DuBray pleaded guilty to two counts of gross sexual imposition, but later stated a desire to withdraw those pleas. DuBray's petition alleges various ways in which his counsel were ineffective. He also alleges that the state district court used the wrong standard in declining to allow him to withdraw his guilty pleas. Finally, in his response to the motion to dismiss, DuBray contends he was constructively denied effective assistance of counsel.

DuBray's claim that the state district court used the wrong standard in declining to allow him to withdraw his guilty pleas is a matter of state law; it fails to present a federal constitutional claim, and it should be dismissed. DuBray is not entitled to habeas relief on his ineffective assistance of counsel claims or on his claim of constructive denial of effective assistance of counsel, since the state court decisions on those issues

---

[1] State court documents refer to petitioner's last name as "Dubray."

were not unreasonable or contrary to federal law. Since he has not demonstrated entitlement to relief on any of his claims, DuBray's federal habeas petition should be dismissed.

## Background

An Information charged DuBray with two counts of gross sexual imposition. (Resp. Ex. #2; Resp. Ex. #3). The Affidavit of Probable Cause in support of the Information alleged that the eight-year-old victim reported that DuBray had engaged in sexual acts with her twice in January, 2012.[2] (Resp. Ex. #2). The victim was described as considering DuBray to be like an uncle to her. (Resp. Ex. #6, p. 14).

On July 15, 2013, the day before his jury trial was scheduled to begin, DuBray appeared in state court for a status conference. (Resp. Ex. #4, p. 2). At that time, DuBray's trial counsel—Blake Hankey (Hankey)—informed the court that DuBray would enter guilty pleas to both counts pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).[3] Id. at 3. The state court judge confirmed that DuBray intended to plead guilty, she advised him of the charges, and she advised him of the minimum and maximum penalties for those charges. Id. at 3-6. DuBray pleaded guilty to both charges, and the state court judge determined that DuBray's guilty pleas were freely and voluntarily made and that they were supported by sufficient facts. Id. at 6-14. The court ordered a presentence investigation and scheduled a sentencing hearing. Id. at 14, 17-18.

---

[2] The Information alleged that the first sexual act occurred between January 2, 2012, and January 3, 2012, and that the second sexual act occurred on January 3, 2012. (Resp. Ex. #2; Resp. Ex. #3).

[3] During the July 15, 2013 hearing, DuBray maintained that he had no recollection of the sexual acts because of his high level of intoxication, but he admitted that there were enough facts for a jury to find him guilty. (Resp. Ex. #4, pp. 9, 11-14).

On October 4, 2013, DuBray appeared for his sentencing hearing. (Resp. Ex. #6). At the beginning of that hearing, Hankey advised the court that DuBray wanted to withdraw his guilty pleas. Hankey requested that a briefing schedule be set, and he advised the court that DuBray had stated that he "felt pressure" from Hankey and his co-counsel—Adam Fleishman (Fleishman)—to plead guilty. Id. at 3-5. In response to questions from the court, DuBray stated that nobody had made any threats or promises to him, but that he felt he "owe[d] an explanation to [his] children; so [he] want[ed] to take it to trial to prove to them that [he] didn't do this." Id. at 5-6. The court advised DuBray that he could file a motion to withdraw his pleas, but the court proceeded with sentencing.[4] Id. at 4-5. The court sentenced DuBray to thirty years of imprisonment with fifteen years suspended and ten years of probation on each count, to be served concurrently. (Resp. Ex. #5). DuBray did not file a direct appeal.

On July 14, 2014, DuBray filed a state application for post-conviction relief. (Resp. Ex. #8; Resp. Ex. #9). In that application, DuBray generally alleged that counsel did not represent him as is required by "prevailing professional norms." (Resp. Ex. #9, p. 13). Specifically, he alleged that counsel were ineffective by (1) failing to "conduct a full and complete investigation" or hire an investigator, (2) failing to hire an expert to address issues regarding the victim's forensic interview; (3) failing to determine whether the state subjected him to an impermissible multiplicity of charges "based on fabricated or tainted evidence"; (4) failing to provide him with "sufficient information" which

---

[4] DuBray did not file a motion to withdraw his guilty pleas until December 2015, more than two years after he was sentenced, (Resp. Ex. #22), and the state district court denied that motion, (Resp. Ex. #23).

would have enabled him "to make an intelligent decision"; and (5) failing to interview and/or depose witnesses. Id. at 7-14. DuBray also alleged that he did not knowingly or intelligently plead guilty to the charges, id. at 20, that he was constructively denied effective assistance of counsel, id., and that the prosecutor erred in charging him, (Resp. Ex. #8, p. 4).

On October 20, 2014, the state court held an evidentiary hearing on DuBray's post-conviction relief application. (Resp. Ex. #11). DuBray and Hankey both testified. Id. DuBray testified that Hankey failed to hire a private investigator or expert, failed to depose or interview the state's trial witnesses, and failed to secure defense witnesses. Id. at 4-5, 13-14. He testified that Hankey met with him in person approximately three times, reviewed all of the discovery with him, prepared him to testify, and reviewed plea offers with him. Id. at 5-8. When asked whether he felt forced or coerced into pleading guilty, DuBray responded, "I felt like there wasn't any other choice but to take the agreement," and " I felt like I was led to believe that I was going to be [found] guilty no matter what." Id. at 12-13. But, DuBray acknowledged that it had been his decision to plead guilty, and he stated that he was upset with the length of his sentence. Id. at 15-16.

DuBray requested that he be allowed to proceed to trial, and he testified that he could show, through cross-examination, that three witnesses lied. Id. at 14-15. But, DuBray acknowledged that none of those witnesses observed the events that gave rise to the charges. Id. at 18-20. He also acknowledged that another individual, whom he contended Hankey should have interviewed, could provide no information related to the allegations. Id. at 21-22.

Hankey testified that he reviewed the discovery with DuBray, that they discussed the weaknesses of the case, that they discussed the trial judge's sentences in similar

4

cases in which a jury had found a defendant guilty, and that they met with the prosecutor who outlined the state's case. Id. at 34-35. Hankey testified that he and Fleischman reviewed the video of the forensic interview of the victim, that he had previously handled numerous cases involving interviews of child victims, that the forensic interviewer "handled everything appropriately," that the forensic interviewer did not use leading questions, that no evidence indicated that the forensic interview was tainted, and that he saw no reason to hire an expert to review the video. Id. at 29-30, 37. Hankey further testified that he did not hire an investigator because he did not "believe one was necessary," that only the victim and DuBray were present during the "incident," and that nothing "could be gleaned by having a private investigator." Id. at 42.

Hankey testified that he was prepared for trial. Id. at 32-33. He testified that he had prepared DuBray to testify, including advising him that, to keep his prior bad acts from being used against him, he "had to be very selective in how he answered questions so that evidence [of those prior bad acts] couldn't be brought in." Id. at 33. Hankey acknowledged that he did not file a motion in limine to keep DuBray's prior bad acts out of evidence, and he stated that he did not file that motion because there was "no indication that [DuBray's prior bad acts] were ever going to be used unless [the defense] opened the door." Id. at 39. Hankey testified that no pretrial hearing regarding hearsay evidence was held, but that he "was of the opinion [that he] could [also] keep hearsay out." Id. at 40-41.

Hankey testified that he "viewed it as a 'he said, she said' type of case." Id. at 43. He testified that he would have attacked witnesses' credibility, and would have tried to show "that for some reason the family was mad, making this up, and [DuBray] had to be

. . . rock solid on the stand." Id. at 43-44. Hankey testified that he did not depose the victim's mother because "in these cases [he] like[s] to keep things close to the vest." Id. at 45. Hankey explained that he did not want any witness—or the state—to have time to prepare for his cross-examination. Id.

Hankey testified that DuBray was "difficult to get a hold of." Id. at 34. But, the state's exhibit—counsels' billing record—received in evidence at the evidentiary hearing, shows that either Hankey or Fleischman met with DuBray approximately ten times before his change of plea. (Resp. Ex. #12).

Hankey testified that the prosecutor had asked to meet with defense counsel and DuBray to outline the state's case in the hope of avoiding trial. (Resp. Ex. #11, p. 35). Hankey stated when prosecutors decide to do that, "it gives [him] a nice snapshot into what the State is trying to prove or what they think their case is, and it helps [him] attack it." Id. at 35-36.

Hankey further testified that he did not force DuBray to plead guilty. Id. at 36. He said that he could not specifically recall what he had said to DuBray in that regard, but that he tells all of his clients:

> It's your decision. Here's the negatives. Here's the positives. And, you know, ultimately it's up to you.
> And, you know, I'll go to trial, but if we go to trial and lose, there are the negatives. If we go to trial and win, you walk out of here with nothing.

Id.

The state district court, in its order denying DuBray's post-conviction relief application, described DuBray's claims as alleging that "trial counsel should have hired a private investigator, deposed the State's witnesses, and filed a motion to exclude

evidence of prior bad acts." (Resp. Ex. #13, p. 1). The state district court concluded that "Hankey satisfactorily explained his rationale for preparing the defense in the manner he chose." Id. at 5. The state district court noted that "over 60 hours of work went into the case and numerous items of written correspondence were exchanged." Id. The state district court found that "Hankey's legal representation did not fall below an objective standard of reasonableness" and no evidence established "a reasonable probability that the outcome of this case would have been different had the case been tried to a jury." Id. at 6.

DuBray appealed the state district court's order denying him post-conviction relief. (Resp. Ex. #14). In his appellant brief, submitted by his court-appointed counsel, DuBray claimed that his pleas were not voluntary because he received ineffective assistance of counsel,[5] and that the state district court did not apply the proper standard for the second prong of DuBray's ineffective assistance of counsel claims.[6] (Resp. Ex.

---

[5] The appellant brief alleged numerous ineffective assistance of counsel claims. (See Resp. Ex. #16).

[6] As discussed in Section 4 below, in Strickland v. Washington, 466 U.S. 688 (1984), the Supreme Court established a two-pronged test for analyzing ineffective assistance of counsel claims. Under the second prong, a petitioner must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 694. In other words, DuBray must prove that had he received effective assistance of counsel, he would not have pleaded guilty. As discussed above, the state district court found that no evidence established "a reasonable probability that the outcome of this case would have been different had the case been tried to a jury," rather than finding insufficient evidence that DuBray would not have pleaded guilty. (Resp. Ex. #13, p. 6). The state's brief on appeal acknowledged that the district court used the wrong standard. (Resp. Ex. #18, p. 9). But, the North Dakota Supreme Court concluded there was no harm because DuBray had not established the first prong of the Strickland test. DuBray v. State, 2015 ND 244, 872 N.W.2d 633 (unpublished table decision).

#16). DuBray also submitted a pro se supplemental appellant brief, in which he raised the same claims as in his post-conviction relief application. (See Resp. Ex. #17).

The North Dakota Supreme Court, in summarily affirming the district court's order, described DuBray's ineffective assistance of counsel claims as alleging that trial counsel failed to "(1) hire a private investigator; (2) depose witnesses; (3) move to exclude evidence; and (4) communicate all known facts to Dubray." DuBray v. State, 2015 ND 244, 872 N.W.2d 633 (unpublished table decision). The supreme court also noted that DuBray argued that the district court applied the wrong standard to the second prong of its ineffective assistance of counsel analysis, but it concluded that argument was irrelevant since courts need not address the second prong if the first prong is not established. Id. The supreme court found that "the district court's finding that Dubray's trial counsel's representation did not fall below an objective standard of reasonableness [was] not clearly erroneous." Id.

### Allegations of the Federal Habeas Petition

In his habeas petition, DuBray raises two grounds for relief. First, he raises ineffective assistance of counsel claims. He generally alleges that counsel failed to represent him with "skill, knowledge of the law, diligence, and preparation." (Doc. #1, p. 13). He specifically alleges that his trial counsel were ineffective by (1) failing to interview or depose witnesses, including the victim and her mother; (2) failing to file a motion in limine to exclude prior bad acts; (3) failing to conduct an investigation or hire an investigator; (4) failing to develop a defense strategy; (5) failing to hire an expert; (6) failing to communicate and provide him "with all information"; (7) failing to determine whether the state subjected him to an impermissible multiplicity of charges; (8) failing

to file a timely motion to withdraw his guilty pleas; and (9) allowing the prosecutor, in DuBray's presence, to "outline his case against [him]." Id. at 12-13. In addition to the claims of ineffective assistance of counsel, DuBray alleges that the state court used the wrong standard in declining to allow him to withdraw his guilty pleas. Id. at 14.

In his response to the motion to dismiss, DuBray also alleges that he was constructively denied effective assistance of counsel under United States v. Cronic, 466 U.S. 648 (1984). (Doc. #14, p. 21).

## Law and Discussion

The court first considers respondent's claims of procedural defects in DuBray's petition.

### 1.    State Law Claims

Respondent contends that DuBray's claim concerning withdrawal of his guilty pleas—that the state court used the wrong standard—fails to present a federal constitutional claim. (Doc. #8, p. 17). DuBray counters that his claim arises under Kercheval v. United States, 274 U.S. 220 (1927), (Doc. #14, pp. 24-25), which addressed questions under federal criminal law.

DuBray contends that his "attempt to withdraw his guilty plea through post-conviction proceeding[s] should have been reviewed under the 'fair and just' standard" of North Dakota Rule of Criminal Procedure 11(d)(1)(B). (Doc. #1, p. 14). That rule provides that a defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for the withdrawal." (Emphasis added). DuBray argues that the state district court should have applied Rule 11(d)(1)(B) when it ruled on his motion because he initially made that motion—orally—prior to sentencing. (Doc. #14, pp. 22-25).

In December 2015, after his post-conviction relief application was denied, DuBray filed a written motion to withdraw his guilty pleas. (Resp. Ex. #21). The state district court denied that written motion pursuant to North Dakota Rule of Criminal Procedure 11(d)(2), which provides that "[u]nless the defendant proves that withdrawal is necessary to correct a <u>manifest injustice</u>, the defendant may not withdraw a plea of guilty after the court has imposed sentence." (Emphasis added).

DuBray's claim that the state court should have applied Rule 11(d)(1)(B)'s fair and just standard instead of Rule 11(d)(2)'s manifest injustice standard is not cognizable in federal court. This court is bound by the state court's interpretation of state law, including its application of Rule 11. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Additionally, DuBray's reliance on <u>Kercheval</u> is unavailing. In <u>Kercheval</u>, the issue was whether the trial court improperly allowed evidence at trial of the defendant's withdrawn guilty plea. 724 U.S. at 222-23. While the Supreme Court stated in <u>Kercheval</u> that, under <u>federal</u> law, the court "in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems <u>fair and just</u>," 724 U.S. at 224 (emphasis added), that statement has no bearing on DuBray's claims that the state district court misapplied <u>state</u> law. DuBray's claim that the state court applied an incorrect standard in ruling on his motion to withdraw his guilty pleas should therefore be dismissed.[7]

---

[7] It is unclear whether DuBray raises an additional claim in his response to respondent's motion to dismiss—that the state district court should have ruled on his oral motion to withdraw his guilty plea prior to sentencing. (Doc. #14, pp. 22-24). To the extent that DuBray's response to the motion to dismiss could be construed as raising that claim, that claim is subject to dismissal under Rule 2 of the Rules Governing Section 2254 Cases, since that claim was not raised in the habeas petition. Alternatively,

## 2. Procedural Default

Before seeking federal habeas relief, a petitioner must "fairly present" his federal habeas claim to the state courts. Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010). "To 'fairly present' his claim, the petitioner must [have] present[ed] the same facts and legal theories to the state court that he later presented to the federal courts." Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). The claim need not be an "exact duplicate," Odem v. Hopkins, 192 F.3d 772, 776 (8th Cir. 1999), but "the federal claim should not present significant additional facts such that the claim was not fairly presented to the state court," Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). There must be "at least an arguable factual commonality." Id. at 1303 (citations and internal quotation marks omitted).

Respondent contends that Dubray's ineffective assistance of counsel claims were not fairly presented to the state courts because they were presented only in a speculative and conclusory manner. (Doc. #8, pp. 7-8). Further, respondent asserts that DuBray can no longer present those claims to the state courts, since those claims are barred—or procedurally defaulted—from state court review for misuse of process.[8] Id. at 8. Respondent contends that, because of that procedural default, this court is prohibited

_____

it fails to raise a federal constitutional claim, since this court is bound by state court interpretation of state law.

[8] Under North Dakota Century Code section 29-32.1-12, misuse of process is an affirmative defense that can be raised in state post-conviction proceedings. Misuse of process is defined to include any "claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding." N.D. Cent. Code § 29-32.1-12(2)(a). This procedural defense is regularly enforced by the North Dakota courts. See State v. Steen, 2007 ND 123, ¶ 17, 736 N.W.2d 457, 462; Laib v. State, 2005 ND 187, ¶ 6, 705 N.W.2d 845, 848; Johnson v. State, 2004 ND 130, ¶ 13, 681 N.W.2d 769, 775-76.

from reviewing DuBray's ineffective assistance of counsel claims.[9] Id.

In this court's view, DuBray's state court briefs raised all of the ineffective assistance of counsel claims that he now raises in his federal habeas petition. (See Resp. Ex. #8; Resp. Ex. #9; Resp. Ex. #16; Resp. Ex. #17; Resp. Ex. #19). He does not allege additional facts or legal theories in his federal habeas petition that were not raised before the state courts. Therefore, this court concludes that the claims were fairly presented to the state courts, are not procedurally defaulted, and are not barred from federal review on that basis.[10]

### 3. Standard of Review of Claims Adjudicated on the Merits

Under the Antiterrorism and Effective Death Penalty Act, a federal court cannot grant habeas relief on any claim adjudicated on the merits in state court proceedings, unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[9] A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Gray v. Netherland, 518 U.S. 152, 162 (1996).

[10] Though DuBray did not artfully plead his ineffective assistance of counsel claims before the state courts, this court has reviewed all of DuBray's state court briefs, and confirmed that all of his current claims alleging ineffective assistance of counsel were raised before the North Dakota Supreme Court. (See Resp. Ex. #16; Resp. Ex. #17; Resp. Ex. #19). There are no additional facts or legal theories before this court that were not before the North Dakota Supreme Court. Alternatively, in the interest of judicial economy, the court could reach the merits of DuBray's claims without resolving the procedural bar issues. See Barrett v. Acevido, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.").

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), "which demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam). A state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Under this standard, the federal court "must deny a writ—even if we disagree with the state court's decision—so long as that decision is reasonable in view of the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

**4.    Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that his counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). In Strickland, the Supreme Court established a two-pronged test for analyzing ineffective assistance of counsel claims. First, a petitioner must show

that his counsel's conduct was objectively unreasonable. Second, a petitioner must demonstrate that he was prejudiced by his counsel's performance. Under the prejudice prong, a petitioner must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. In the context of guilty pleas, petitioner must prove that he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Both prongs of the Strickland test—error and prejudice—must be satisfied to prevail on an ineffective assistance of counsel claim.

In reviewing ineffective assistance of counsel claims, courts apply a strong presumption that counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. A court reviewing counsel's performance must make every effort to eliminate hindsight and second-guessing. Id. at 689. Under the Strickland standard, counsel's strategic decisions regarding plausible options, made after thorough investigation of both law and facts, are virtually unchallengeable. Id. at 690. Additionally, each claim of ineffectiveness must be separately considered, since the "cumulative effect of alleged trial counsel errors is not grounds for granting habeas relief." Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

A "doubly deferential" standard of review applies to ineffective assistance of counsel claims in a § 2254 petition. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, the court must take a "highly deferential look at counsel's performance [under Strickland] through the deferential lens of § 2254(d)." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (internal citations and quotation marks omitted). So long as a state

14

court's application of <u>Strickland</u> was reasonable, a petitioner cannot succeed on an ineffective assistance of counsel claim under § 2254(d)'s standard.

Applying these standards, the court next considers each of DuBray's ineffective assistance of counsel claims separately.[11]

## A. Ineffective Assistance of Counsel—Failure to Interview or Depose Witnesses

DuBray contends that his counsel failed to interview or depose any witnesses, including the victim or the victim's mother. (Doc. #1, p. 12). In his habeas petition,[12] DuBray does not identify those witnesses, other than the victim and the victim's mother, that he contends should have been interviewed or deposed, and he does not describe how their interviews would have helped in his defense. Additionally, DuBray acknowledged at the evidentiary hearing on his state post-conviction relief application that no one, other than the victim, witnessed the events that gave rise to the charges. (Resp. Ex. #11, pp. 19-20).

---

[11] Although not raising it as a separate ineffective assistance of counsel claim, DuBray contends that his father-in-law paid Hankey $20,000 "in exchange for his services," and that Hankey "promised to provide representation and conduct certain tasks." (Doc. #1, p. 11); (<u>see also</u> Doc. #14, pp. 5, 10, 13, 15). He alleges that Hankey "failed to provide the representation he promised for his . . . fee and failed to conduct" each of the "tasks" identified as DuBray's ineffective assistance of counsel claims. (Doc. #1, p. 11). The agreement regarding Hankey's representation is not determinative of whether Hankey provided ineffective assistance to DuBray.

[12] In his state post-conviction relief application, DuBray identified five individuals whom he contended should have been interviewed or deposed. (<u>See</u> Resp. Ex. #9, p. 14). In that application, DuBray contended that those five individuals should have been interviewed or deposed "to determine if the statements, which they made to law enforcement[,] were misleading as to the facts of the underlying offense(s) in this matter." <u>Id.</u> However, he did not describe the statements the five individuals made to law enforcement or how those statements were misleading.

In his response to the motion to dismiss, DuBray states that trial counsel should have deposed the victim and the victim's mother to support his counsels' "theory of defense . . . that someone coerced or coached the . . . victim into making this up." (Doc. #14, p. 14). However, DuBray provides no facts to support the theory that the victim was coached or coerced to make her allegations against DuBray, and so he has not demonstrated how depositions of the victim or her mother would have helped in his defense.

DuBray speculates about information that might have been gleaned from deposing or interviewing the victim and the victim's mother, and his assertion that his counsel were ineffective by failing to interview or depose unidentified witnesses is conclusory. Mere speculation and conclusory allegations are not enough to establish the prejudice prong of Strickland. See Sargent v. Armontrout, 841 F.2d 220, 226 (8th Cir. 1998) ("[T]he burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden."); Wing v. Sargent, 940 F.2d 1189, 1191 (8th Cir. 1991) (speculation as to how others would have testified does not meet the burden of proof required to establish that counsel was ineffective); Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987) ("In order to warrant relief . . . a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice."). Because the allegations regarding the witnesses' testimony were speculative and conclusory, the North Dakota Supreme Court's decision, summarily affirming the denial of DuBray's claim that counsel were ineffective by failing to interview or depose witnesses, was reasonable under § 2254(d).

**B.    Ineffective Assistance of Counsel—Failure to File a Motion in Limine**

DuBray contends that counsel should have filed a motion in limine to exclude "unproven prior sexual misconduct allegations against [him]." (Doc. #1, p. 12). Hankey acknowledged that he did not file a motion in limine regarding DuBray's alleged prior bad acts.[13] (Resp. Ex. #11, p. 39). But, he testified that he did not file that motion because the state provided no notice that it intended to use that information. Id. The North Dakota Rules of Evidence require that the state provide notice of its intent to introduce evidence of prior bad acts. N.D.R.Ev. 404(b). Since the state did not provide notice that it would attempt to introduce Dubray's alleged prior bad acts at trial, counsels' decision to not file a motion in limine was reasonable. Therefore, the North Dakota Supreme Court's decision, summarily affirming the denial of DuBray's claim that counsel were ineffective by failing to file a motion in limine, was reasonable under § 2254(d).

**C.    Ineffective Assistance of Counsel—Failure to Conduct an Investigation or Hire an Investigator**

DuBray contends that counsel should have conducted an investigation or hired an investigator to ascertain whether someone "coached" the victim, whether someone was "targeting" him, and whether the "victim was able to testify from her own memory." (Doc. #1, p. 13; Doc. #14, p. 12). DuBray further contends that an investigator would

---

[13] The presentence investigation revealed that, on two prior occasions, it was alleged that DuBray had engaged in similar sexual misconduct. (Resp. Ex. #6, pp. 11, 28). When he was a juvenile, DuBray was alleged to have touched a younger female cousin. (Resp. Ex. #11, p. 9). The second allegation involved the alleged rape of a fourteen-year-old girl. Id. at 10.

have discovered that the prosecutor knew that he subjected DuBray to an impermissible multiplicity of charges "based on tainted evidence," that "statements and/or evidence" provided to law enforcement by five individuals "did not conform with the facts and were deceptive and untruthful," and that those five individuals "had . . . untruthful character[s] and/or prior crimes of dishonesty or false statement(s) to Law Enforcement." (Doc. #14, p. 14).

DuBray's assertions—that someone might have "coached" the victim, that someone might have been "targeting" him, that the victim's memory might have been inaccurate, that the charges were based on "tainted evidence," and that five individuals were dishonest—are speculative and conclusory. DuBray does not describe how the victim's memory was inaccurate, what evidence was "tainted," how five individuals' statements or the evidence they provided—neither of which he identifies—"did not conform with the facts," or how any of those five individuals were otherwise untruthful. Speculative and conclusory assertions do not establish the prejudice prong of <u>Strickland</u>. <u>See</u> <u>Armontrout</u>, 841 F.2d at 226; <u>Wiggins</u>, 825 F.2d at 1238. Because the allegations regarding possible results of further investigation are conclusory, the North Dakota Supreme Court's decision, summarily affirming the denial of DuBray's claims that counsel were ineffective by failing to investigate or hire an investigator, was reasonable under § 2254(d).

### D. Ineffective Assistance of Counsel—Failure to Develop a Defense Strategy

DuBray contends that counsel failed to develop a theory of defense and had no trial strategy. (Doc. #1, pp. 12-13). But, he also acknowledges that counsels' trial strategy was "to poke holes in the state's case" during cross-examination. (Doc. #14, p. 12).

Hankey testified at the evidentiary hearing on DuBray's post-conviction relief application that his trial strategy was to attack witnesses' credibility and try to show "that for some reason the family was mad, making this up." (Resp. Ex. #11, pp. 43-44).

DuBray's counsel had a reasonable defense strategy. While DuBray may disagree with that strategy, he describes no alternative. Therefore, the North Dakota Supreme Court's decision, summarily affirming the denial of DuBray's claim that counsel were ineffective by failing to develop a defense strategy, was reasonable under § 2254(d).

### E. Ineffective Assistance of Counsel—Failure to Hire an Expert

Dubray contends that counsel should have hired an expert to review the victim's forensic interview and to determine whether the "victim's memory may have been tainted." (Doc. #1, p. 12). DuBray states that an expert would have discovered that the information the child provided during the interview "was tainted by concerned authority figures, including school teachers, police officials, medical doctors, social worker therapists[,] and/or . . . by the mother of the alleged victim, with help from friends and family." (Doc. #14, p. 15). He also states that an expert would have discovered that the forensic interviewer repeated questions and used "leading statements" which "tainted" the "victim's memory such that the alleged child victim would not be competent . . . to testify at trial." Id. Lastly, DuBray contends that "the expert would have determined that a highly advanced inquiry into the atmosphere and demeanor surrounding the verbal interaction between the alleged child victim and concerned adults was necessary to determine whether the alleged child victim's memory was altered and/or tainted." Id.

DuBray does not describe how the victim's memory was allegedly inaccurate, or which statements or questions by the forensic interviewer might have "tainted" the

victim's memory, and he provides no facts suggesting that any "verbal interaction" altered or tainted the victim's memory. Additionally, Hankey testified that he had prior experience with forensic interviews of children and that, in his opinion, the forensic interviewer handled the interview appropriately. (Resp. Ex. #11, pp. 29-30, 37). DuBray's speculation and conclusory allegations are not enough to establish the prejudice prong of <u>Strickland</u>. <u>See</u> <u>Armontrout</u>, 841 F.2d at 226; <u>Wiggins</u>, 825 F.2d at 1238. Therefore, the North Dakota Supreme Court's decision, summarily affirming the state district court's denial of DuBray's claim that counsel were ineffective by failing to retain an expert, was reasonable under § 2254(d).

### F. Ineffective Assistance of Counsel—Failure to Communicate and Provide Information

DuBray contends that counsel failed to "supply [him] with all information, facts, documents, papers, reports[,] and transcripts in a timely manner," and that counsel failed to "communicate with [him] . . . to keep [him] informed of the progress of the case." (Doc. #1, p. 12). However, DuBray testified at the evidentiary hearing on his post conviction relief application that counsel reviewed all of the discovery with him, prepared him to testify, and reviewed plea offers with him. (Resp. Ex. #11, pp. 5-8). Additionally, a state's exhibit—counsels' billing record—received in evidence at that hearing shows that DuBray spoke with counsel in person and by phone numerous times and that counsel regularly sent DuBray letters and other correspondence. (Resp. Ex. #12). DuBray has not described what information he allegedly did not receive or how he was prejudiced by not receiving it. His speculation and conclusory assertions are not enough to establish the prejudice prong of <u>Strickland</u>. <u>See</u> <u>Armontrout</u>, 841 F.2d at 226; <u>Wiggins</u>, 825 F.2d at 1238. Therefore, the North Dakota Supreme Court's decision,

summarily affirming the state district court's order denying DuBray's claim that counsel were ineffective by failing to communicate and provide information, was reasonable under § 2254(d).

### G. Ineffective Assistance of Counsel—Failure to Determine if Charges Were Multiplicious

DuBray contends that counsel failed to "determine whether the [prosecutor] knew . . . that charging [him] with multiple offenses was multiplicity, and designed to scare [him] into pleading-out." (Doc. #1, p. 13). The constitutional guarantee against double jeopardy protects against, among other things, multiple punishments for the same offense. <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969). But, DuBray was alleged to have engaged in sexual acts with the victim two separate times. (Resp. Ex. #2; Resp. Ex. #3). The victim reported that DuBray woke her up and engaged in a sexual act with her in the early morning hours of January 3, 2012,[14] and that she went back to bed after that happened. (Resp. Ex. #2). The victim also reported that DuBray woke her a second time on January 3, 2012, when the sun was up, and engaged in another sexual act with her. <u>Id.</u> Since DuBray was alleged to have committed two offenses, his contention that he was improperly subjected to multiplicity of charges is without merit. It was not unreasonable for his counsel to not to address that issue, since it lacked merit. Therefore, the North Dakota Supreme Court's decision, summarily affirming the state district court's denial of DuBray's ineffective assistance of counsel claim regarding multiplicity of charges, was reasonable under § 2254(d).

---

[14] The Information alleged that the first sexual act occurred between January 2, 2012, and January 3, 2012. (Resp. Ex. #2, Resp. Ex. #3).

## H.     Ineffective Assistance of Counsel—Failure to File a Motion to Withdraw Guilty Pleas

DuBray contends that counsel failed to "file and serve a timely motion to withdraw [his] guilty plea[s]." (Doc. #1, p. 12). Counsel made an oral motion to withdraw the guilty pleas at the beginning of DuBray's sentencing hearing, and the court advised DuBray that it would proceed with sentencing but that he could file that motion after the sentencing hearing. (Resp. Ex. #6, pp. 3-5). DuBray contends that he asked counsel to file a motion to withdraw his guilty pleas both prior to and after the sentencing hearing. (Doc. #14, p. 23). Counsel did not file a written motion to withdraw the guilty pleas on behalf of DuBray either prior to or after that hearing.

Assuming that counsels' failure to file a motion to withdraw the guilty pleas was objectively unreasonable, DuBray has not established that he was prejudiced by that failure. The state district court determined that DuBray was not entitled to withdraw his guilty pleas under North Dakota Rule of Criminal Procedure 11(d)(2)'s manifest injustice standard, (Resp. Ex. #23), and in proceeding with sentencing implicitly decided he had not established a fair and just reason to withdraw his guilty pleas under Rule 11(d)(1)(B).

At DuBray's change of plea hearing, Dubray stated that his guilty pleas were freely and voluntarily made, that he had not been threatened or promised, that he understood that he was giving up his right to have a jury trial, that he had had sufficient time to discuss the case with his counsel, and that he was satisfied with their representation. (Resp. Ex. #4, pp. 7-8). At his sentencing hearing, after DuBray's counsel stated that DuBray had "felt pressured" into pleading guilty, the court questioned DuBray:

THE COURT: Mr. Dubray, you clearly told me you made this decision freely and voluntarily.

NATHAN DUBRAY: Yes, ma'am.

THE COURT: You told me nobody made any threats or promises to you.

NATHAN DUBRAY: Nobody did.

THE COURT: Okay. So, then, what's the issue?

NATHAN DUBRAY: I feel I owe an explanation to my children; so I want to take it to trial to prove to them that I didn't do this.

. . . .

THE COURT: I'm going to deny the request. We're proceeding today. I think your attorneys are quite capable of arguing what the appropriate sentence is, and when we're done with this, you can file whatever motion you want. . . .

(Resp. Ex. #6, pp. 5-6). In denying his request, the court implicitly determined that DuBray had not provided a fair and just reason for withdrawing his guilty pleas prior to sentencing, but it did not foreclose his right to file a written motion after the hearing.

At the evidentiary hearing on DuBray's post-conviction relief application, when asked whether he felt forced or coerced into pleading guilty, DuBray responded, "I felt like there wasn't any other choice but to take the agreement," and "I felt like I was led to believe that I was going to be [found] guilty no matter what." (Resp. Ex. #11, pp. 12-13). But, DuBray acknowledged that it was his decision to plead guilty, and he stated that he was upset with the length of his sentence. Id. at 15-16. The North Dakota Supreme Court summarily affirmed the district court's order denying DuBray's post-conviction relief application, which alleged that his guilty pleas were not voluntary because he received ineffective assistance of counsel. DuBray v. State, 2015 ND 244, 872 N.W.2d 633 (unpublished table decision).

DuBray has not shown any fair and just reason to withdraw his guilty pleas. He has not demonstrated that he received ineffective assistance of counsel under the Strickland standards, and the record reflects that he wished to withdraw his guilty pleas because of his dissatisfaction with his sentence length and to prove to his children that he was innocent. (Resp. Ex. #6, p. 6; Resp. Ex. #11, p. 16). "A 'swift change of heart after the plea' is not necessarily grounds for withdrawal of a guilty plea." State v. Jones, 2011 ND 234, ¶ 26, 817 N.W.2d 313, 323 (citations omitted). Additionally, "[a]n assertion of innocence—even a 'swift change of heart after the plea'—does not constitute a 'fair and just reason' to grant withdrawal." Id. (quoting United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992)). Since DuBray has not identified any fair and just reason to withdraw his guilty pleas, he has not demonstrated that he was prejudiced by his counsels' failure to file that motion. See Dyer v. United States, 23 F.3d 1424, 1425 (8th Cir. 1994) (failure to file a meritless motion does not establish ineffective assistance of counsel). Therefore, the North Dakota Supreme Court's decision, summarily affirming the state district court's denial of DuBray's claim that counsel were ineffective by failing to file a motion to withdraw his guilty pleas, was reasonable under § 2254(d).

I.     **Ineffective Assistance of Counsel—Allowing a Meeting with the Prosecutor**

In his list of ineffective assistance counsel claims, DuBray does not include allowing the prosecutor to meet with him and his counsel on the eve of trial, (Doc. #1, pp. 12-13). But, he states in his petition that counsels' "decision to have [him] meet with the Prosecuting Authority . . . to outline his case against [him] was beyond unreasonable and seems was further done to scare [him] into a plea deal." Id. at 13. DuBray argues in

his response to the motion to dismiss that the meeting was not part of trial strategy, but rather an effort to pressure him into pleading guilty. (Doc. #14, pp. 12-13, 16, 19-20).

Hankey testified that a meeting with prosecutors, such as that in DuBray's case, "gives [him] a nice snapshot into what the State is trying to prove or what they think their case is, and it helps [him] attack it." Id. at 35-36. Hankey further testified that he did not force DuBray to plead guilty, or use the meeting as an attempt to do so. Id. at 36.

According to Hankey, he uses meetings during which prosecutors outline their case, as strategy to enable him to better "attack" the state's case. DuBray has not explained how that meeting may have led him to plead guilty. In fact, he stated at the change of plea hearing—after that meeting—that no one made any threats or promises in exchange for his guilty pleas. DuBray has not demonstrated that his counsels' action in allowing the meeting was unreasonable or that he was prejudiced by it. Therefore, the North Dakota Supreme Court's decision, summarily affirming the state district court's denial of DuBray's claim that counsel were ineffective by allowing a meeting with the prosecutor, was reasonable under § 2254(d).

**5.    Constructive Denial of Assistance of Counsel under <u>United States v. Cronic</u>**

Citing <u>United States v. Cronic</u>, 466 U.S. 648 (1984), DuBray alleges in his response to the motion to dismiss that "since the process lost its character as a confrontation between adversaries," he was constructively denied assistance of counsel. (Doc. #14, p. 21). DuBray contends that the state district court's order denying him post-conviction relief and the North Dakota Supreme Court opinion affirming that order are inconsistent with <u>Cronic</u>. <u>Id.</u>

Rule 2 of the Rules Governing Section 2254 Cases requires that a habeas petition "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Since DuBray's habeas petition did not allege that he was denied effective assistance of counsel under Cronic, the court could conclude, on that basis alone, that he is not entitled to relief on that claim. But, even if considered on the merits, the claim fails.

In Cronic, the United States Supreme Court held that the court may presume that the defendant was prejudiced if counsel was "totally absent, or prevented from assisting the accused during a critical stage of the proceedings," where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or "when counsel is available to assist the accused during trial, [but] the likelihood that any lawyer, even a competent one, could provide assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." 466 U.S. at 659-60 (citations omitted). DuBray's counsel were not absent or prevented from assisting him, and this is not a case in which circumstances would have rendered any competent attorney unable to assist him. Additionally, DuBray has not demonstrated that counsel failed to subject the prosecution's case to meaningful adversarial testing. Cronic is therefore inapplicable and DuBray has not demonstrated that he is entitled to a presumption of prejudice. Therefore, the North Dakota Supreme Court's decision, affirming the state district court's denial of Dubray's Cronic claim, was reasonable under § 2254(d).

**Conclusion**

DuBray's claim alleging that the state district court used the wrong standard in denying his motion to withdraw his guilty pleas fails to present a federal constitutional claim.

None of DuBray's ineffective assistance of counsel claims entitle him to habeas relief. Nor does his claim alleging that he was constructively denied effective assistance of counsel under Cronic. The state court decisions regarding those claims were neither contrary to clearly established federal law nor an unreasonable application of federal law. Nor were those decisions unreasonable determinations of the facts in light of the evidence presented to the state court. It is therefore **RECOMMENDED** that respondent's motion to dismiss be **GRANTED** and that DuBray's habeas petition be **DISMISSED** with prejudice.

Based upon the entire record, the district judge should conclude that dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. It is therefore **RECOMMENDED** that a certificate of appealability not be issued by this court. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997) (finding that a district court possesses the authority to issue certificates of appealability under § 2253(c)). It is further **RECOMMENDED** that the court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 30th day of August, 2016.

 /s/ Alice R. Senechal<br>
Alice R. Senechal<br>
United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **September 12, 2016**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.