

(4462089)

## TRANSMITTAL SHEET

**TO:**   CLERK, USCA8                          DATE: 10/20/16

**FROM:** CLERK, U.S. DISTRICT COURT <u>NORTH DAKOTA</u> at Fargo   Phone: 701-297-7000

**APPEAL NO.:** 16-3978

DISTRICT COURT CASE NO.: 3:16-cv-29

DISTRICT COURT CAPTION:  Nathan DuBray vs. Chad Pringle

**TRANSMITTED HEREWITH:**

☑ Original File:  Volume(s)  Supplement #9 - State Court Record

☐ Designated Clerk's Record (3 certified copies)

☐ Supplement to Designated Clerk's Record (3 certified copies)

☐ Pre-sentence Investigation Report (3 **SEALED** copies)

☐ Statement of Reasons (3 **SEALED** copies)

☐ Sentencing Recommendations (3 **sealed** copies - **COURT ONLY**)

☐ Transcript of Proceedings:

☐ Exhibits:

**Plaintiff(s)**                **Defendant(s)**                **Court**

RECEIVED

OCT 2 4 2016

U.S. Court of Appeals
Eighth Circuit-St. Paul, MN

**COMMENTS:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

☑ Please return original file to U.S. District Court in Fargo, ND.

☐ ECF file does <u>NOT</u> need to be returned to U.S. District Court in



**Wayne Stenehjem**
**ATTORNEY GENERAL**

STATE OF NORTH DAKOTA
# OFFICE OF ATTORNEY GENERAL
STATE CAPITOL
600 E BOULEVARD AVE DEPT 125
BISMARCK, ND 58505-0040
(701) 328-2210   FAX (701) 328-2226
www.ag.nd.gov

April 20, 2016

Mr. Robert Ansley
Clerk
United States District Court
655 1st Avenue North, Suite 130
Fargo, ND  58102-4932

RE:   <u>Nathan G. DuBray v. Chad Pringle, Warden</u>; Case No. 3:16-cv-00029

Dear Mr. Ansley:

Enclosed for filing please find the state court records in the above-entitled action.  These records are an exception to this Court's electronic case filing requirements as they are state court records in a habeas case filed under 28 U.S.C. § 2254 and pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  Thank you for your assistance in this matter.

Sincerely,

Michael T. Mahoney
Assistant Attorney General

Enclosures
cc:    Nathan G. DuBray (w/encs.)

RECEIVED
APR 2 1 2016
ROBERT ANSLEY, CLERK
U.S. DISTRICT COURT-NORTH DAKOTA

Page 1 of 5

Skip to Main Content  Logout  My Account  My Cases  Search Menu  New Criminal Search  Refine Search  Back    Location : Northeast Central District    Images  Help

# REGISTER OF ACTIONS
## CASE NO. 18-2012-CR-01960

| State of North Dakota vs. Nathan G Dubray | §<br>§<br>§<br>§<br>§<br>§ | Case Type: **Felony**<br>Date Filed: **08/06/2012**<br>Location:<br>Judicial Officer: **Kleven, Debbie** |
|---|---|---|

### RELATED CASE INFORMATION

**Related Cases**
18-2014-CV-00960 (Related Case)

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Defendant** | Dubray, Nathan G<br>Jamestown, ND 58401<br>DL: NDDUB857102 | Male Indian<br>DOB: 1985<br>SSN: XXX-XX-7603<br>6' 0", 200 lbs | **Blake Dylan Hankey**<br>*Retained*<br>701-746-4529 x0000(W) |
| **Plaintiff** | State of North Dakota | | **Meredith Huseby Larson**<br>701-780-8281 x0000(W)<br><br>~~Mark Jason McCarthy~~<br>~~701-780-8281 x0000(W)~~ |

### CHARGE INFORMATION

| Charges: Dubray, Nathan G | Statute | Level | Date |
|---|---|---|---|
| 1.  Gross Sexual Imposition | 12.1-20-03 | Felony AA | 01/02/2012 |
| 2.  Gross Sexual Imposition | 12.1-20-03 | Felony AA | 01/02/2012 |

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 10/04/2013 | **Plea** (Judicial Officer: Kleven, Debbie)<br>1. Gross Sexual Imposition<br>   Guilty |
| 10/04/2013 | **Plea** (Judicial Officer: Kleven, Debbie)<br>2. Gross Sexual Imposition<br>   Guilty |
| 10/04/2013 | **Disposition** (Judicial Officer: Kleven, Debbie)<br>1. Gross Sexual Imposition<br>   Pled Guilty<br>2. Gross Sexual Imposition<br>   Pled Guilty |
| 10/04/2013 | **Criminal Judgment** (Judicial Officer: Kleven, Debbie)<br>1. Gross Sexual Imposition<br>01/02/2012 (AA) 12.1-20-03 (1212003) |

Comment (Credit for time served from September 25, 2012 through October 9, 2012. No contact with the victim or family members. Defendant will successfully complete the sex offender treatment program before being released. Restitution to be determined within 90 days. Restitution for any treatment for the victim is to continue throughout the probationary period.)
Condition - Adult:
  1. Notify Court of Address Change, 10/04/2013, Active 10/04/2013
  2. Supervised Probation, 10 years 10/04/2013, Active 10/04/2013
  3. Violate No Criminal Laws, 10/04/2013, Active 10/04/2013
Fee Totals:

| | |
|---|---|
| Criminal Administration Fee | $900.00 |
| Defense/Facility Admin Fee | $100.00 |
| Fee Totals $ | $0.00 |

Confinement:
  Agency: Department of Corrections and Rehabilitation, Term: 30 Years
  Suspended: 15 Years
  Probation: 10 Years

| 10/04/2013 | **Criminal Judgment** (Judicial Officer: Kleven, Debbie)<br>2. Gross Sexual Imposition<br>01/02/2012 (AA) 12.1-20-03 (1212003) |
|---|---|



EXHIBIT
1

tabbies®

Comment (Credit for time served from September 25, 2012 through October 9, 2012. No contact with the victim or family members. Defendant will successfully complete the sex offender treatment program before being released. Restitution to be determined within 90 days. Restitution for any treatment for the victim is to continue throughout the probationary period.)
Condition - Adult:
    1. Notify Court of Address Change, 10/04/2013, Active 10/04/2013
    2. Supervised Probation, 10 years 10/04/2013, Active 10/04/2013
    3. Violate No Criminal Laws, 10/04/2013, Active 10/04/2013
Fee Totals:

| | |
|---|---|
| Criminal Administration Fee | $900.00 |
| Defense/Facility Admin Fee | $100.00 |
| Fee Totals $ | $0.00 |

Confinement:
    Agency: Department of Corrections and Rehabilitation, Term: 30 Years
    Suspended: 15 Years
    Probation: 10 Years
    Concurrent With:Count 1

**12/30/2013** Amended Amended Criminal Judgment (Judicial Officer: Kleven, Debbie) Reason: Court Order
    1. Gross Sexual Imposition
    01/02/2012 (AA) 12.1-20-03 (1212003)

Comment (Credit for time served from September 25, 2012 through October 9, 2012. No contact with the victim or family members. Defendant will successfully complete the sex offender treatment program before being released. Restitution to be determined within 90 days. Restitution for any treatment for the victim is to continue throughout the probationary period.)
Condition - Adult:
    1. Notify Court of Address Change, 10/04/2013, Active 10/04/2013
    2. Supervised Probation, 10 years 10/04/2013, Active 10/04/2013
    3. Violate No Criminal Laws, 10/04/2013, Active 10/04/2013
    4. Restitution, Restitution in the amount of $5,265.53 at this time, with restitution being left open through the period of supervised probation, to be paid in full prior to the expiration of supervised probation. 12/30/2013, Active 12/30/2013
Fee Totals:

| | |
|---|---|
| Criminal Administration Fee | $900.00 |
| Defense/Facility Admin Fee | $100.00 |
| Fee Totals $ | $0.00 |

Confinement:
    Agency: Department of Corrections and Rehabilitation, Term: 30 Years
    Suspended: 15 Years
    Probation: 10 Years

**OTHER EVENTS AND HEARINGS**

| Date | Event |
|---|---|
| 08/06/2012 | Affidavit of Probable Cause      Doc ID# 1 |
| 08/06/2012 | Information      Doc ID# 2 |
| 08/06/2012 | Warrant of Arrest Issued |
| 08/09/2012 | Notice      Doc ID# 3 |
| | *Notice of Change of Assignment of Attorney* |
| 08/09/2012 | Service Document      Doc ID# 4 |
| | *Affidavit of Service by Mail* |
| 09/25/2012 | Notice      Doc ID# 7 |
| | *Notice of Appearance* |
| 09/25/2012 | Service Document      Doc ID# 8 |
| | *Certificate of Service* |
| 09/26/2012 | Warrant of Arrest Served      Doc ID# 5 |
| 09/26/2012 | Notice to Defendant and Consent to ITV      Doc ID# 6 |
| 09/26/2012 | Initial Appearance  (3:00 PM) (Judicial Officer Jahnke, Lawrence E) |
| | *KA-STENO 9/26/12* |
| | Result: Hearing Ended |
| 09/26/2012 | Notice of Assignment and Case Number      Doc ID# 9 |
| 09/26/2012 | Service Document      Doc ID# 10 |
| | *Certificate of Service* |
| 09/26/2012 | Notice of Hearing      Doc ID# 11 |
| | *Preliminary & Arraignment Hearing Notice* |
| 09/26/2012 | Order      Doc ID# 12 |
| | *Appearance Bond Ordered* |
| 09/26/2012 | No Contact Order      Doc ID# 13 |
| 10/02/2012 | Service Document      Doc ID# 14 |
| | *certificate of service-Notice of bond hearing* |
| 10/02/2012 | Notice of Hearing      Doc ID# 15 |
| | *bond hearing* |
| 10/04/2012 | Service Document      Doc ID# 16 |
| | *certificate of service-notice of bond hearing-cont* |
| 10/04/2012 | Notice of Hearing      Doc ID# 17 |
| | *cont bond hearing* |
| 10/04/2012 | Rule 16 Discovery Request      Doc ID# 18 |
| | *State's Reciprocal Discovery Request* |
| 10/04/2012 | Service Document      Doc ID# 19 |
| | *Affidavit of Service by Electronic Filing* |
| 10/08/2012 | Bond      Doc ID# 20 |
| | *bond posted* |
| 10/09/2012 | Bond Hearing  (3:30 PM) (Judicial Officer Kleven, Debbie) |
| | *Set at $50,000 L* |
| | Parties Present |
| | *10/04/2012 Continued to 10/09/2012 - Continuance - Other - Dubray, Nathan G* |

| | |
|---|---|
| | Result: Hearing Ended |
| 10/11/2012 | Subpoena     Doc ID# 21 |
| | Jeremy Moe |
| 10/11/2012 | Service Document     Doc ID# 22 |
| | sheriff return |
| 11/26/2012 | CANCELED   Preliminary Hearing  (2:00 PM) (Judicial Officer Vigeland, David) |
| | Other |
| | MB-STENO 11/27/12 |
| 11/27/2012 | Waiver     Doc ID# 23 |
| | Of Preliminary Hearing |
| 12/04/2012 | Arraignment  (10:45 AM) (Judicial Officer Kleven, Debbie) |
| | MA-Steno 12-4-12 |
| | Parties Present |
| | Result: Hearing Ended |
| 12/04/2012 | Notice of Hearing     Doc ID# 24 |
| | Notice of Pretrial Conference |
| 12/05/2012 | Service Document     Doc ID# 25 |
| | Certificate of Service |
| 12/31/2012 | Notice     Doc ID# 26 |
| | Rule 3.2 Notice of Motion |
| 12/31/2012 | Motion     Doc ID# 27 |
| | Motion to Amend Information |
| 12/31/2012 | Brief     Doc ID# 28 |
| | Brief in Support of Motion to Amend Information |
| 12/31/2012 | Proposed Order     Doc ID# 29 |
| | Order Granting Motion to Amend Information |
| 12/31/2012 | Brief     Doc ID# 30 |
| | (Proposed) Amended Information |
| 12/31/2012 | Service of Motion     Doc ID# 31 |
| | Affidavit of Service by Mail |
| 12/31/2012 | Notice     Doc ID# 32 |
| | Notice of Intent to Present |
| 12/31/2012 | Exhibit     Doc ID# 33 |
| | State's Exhibit 1 (Report of Dr. Graff) |
| 12/31/2012 | Exhibit     Doc ID# 34 |
| | State's Exhibit 2 - copy (original CD in basement vault) |
| 12/31/2012 | Motion     Doc ID# 35 |
| | Motion to Seal |
| 12/31/2012 | Brief     Doc ID# 36 |
| | Brief in Support of Motion to Seal |
| 12/31/2012 | Proposed Order     Doc ID# 37 |
| | Order Granting Motion to Seal |
| 12/31/2012 | Service of Motion     Doc ID# 38 |
| | Affidavit of Service by Mail |
| 01/10/2013 | Pretrial Conference  (10:45 AM) (Judicial Officer Medd, Joel D) |
| | DM-steno 1-10-13 |
| | Parties Present |
| | Result: Hearing Ended |
| 01/10/2013 | Order     Doc ID# 39 |
| | Final Jury Trial Order |
| 01/10/2013 | Proposed Order     Doc ID# 41 |
| | Final Jury Trial Order |
| 01/10/2013 | Service Document     Doc ID# 42 |
| | Certificate of Service |
| 01/24/2013 | Order Disposing of Motion     Doc ID# 43 |
| | Order Granting Motion to Seal |
| 01/24/2013 | Order Disposing of Motion     Doc ID# 44 |
| | Order to Amend Information |
| 01/24/2013 | Information     Doc ID# 45 |
| | Amended |
| 02/01/2013 | Service of Motion     Doc ID# 46 |
| | Affidavit of Service By Electronic Filing |
| 02/01/2013 | Notice     Doc ID# 47 |
| | Rule 3.2 Notice of Motion |
| 02/01/2013 | Motion     Doc ID# 48 |
| | Motion to Appoint a Guardian ad Litem |
| 02/01/2013 | Brief     Doc ID# 49 |
| | Brief in Suppot of Motion to Appoint a Guardian ad Litem |
| 02/01/2013 | Proposed Order     Doc ID# 50 |
| | Order |
| 03/06/2013 | Order Disposing of Motion     Doc ID# 51 |
| | Order Appointing Guardian Ad Litem |
| 03/06/2013 | Order     Doc ID# 52 |
| | Guardian ad Litem Confidential Information Sheet and Order |
| 04/21/2013 | Instructions     Doc ID# 53 |
| | Defendant's Proposed Jury Instructions |
| 04/21/2013 | Service Document     Doc ID# 54 |
| | Certificate of Service - Defendant's Proposed Jury Instructions |
| 04/23/2013 | Final Dispositional Conference  (2:30 PM) (Judicial Officer Kleven, Debbie) |
| | (Send copy of all hearing notices to Guardian ad Litem) |
| | Parties Present |
| | Result: Hearing Ended |
| 04/23/2013 | Instructions     Doc ID# 55 |

|            | *Proposed Plaintiff's Requested Jury Instructions* |
| 04/23/2013 | Notice    Doc ID# 56 |
|            | *Notice of State's Witnesses* |
| 04/23/2013 | Notice    Doc ID# 57 |
|            | *State's Exhibit List* |
| 04/23/2013 | Service Document    Doc ID# 58 |
|            | *Affidavit of Service by Mail* |
| 04/25/2013 | Service Document    Doc ID# 59 |
|            | *Certificate of Service* |
| 04/25/2013 | Proposed Order    Doc ID# 60 |
|            | *Amended Final Jury Trial Order* |
| 04/30/2013 | CANCELED  Felony Jury Trial  (9:00 AM) (Judicial Officer Kleven, Debbie) |
|            | Other |
|            | *(Send copy of all hearing notices to Guardian ad Litem)* |
| 05/02/2013 | CANCELED  Felony Jury Trial  (9:00 AM) (Judicial Officer Kleven, Debbie) |
|            | Other |
|            | *(Send copy of all hearing notices to Guardian ad Litem)* |
| 05/03/2013 | CANCELED  Felony Jury Trial  (9:00 AM) (Judicial Officer Kleven, Debbie) |
|            | Other |
|            | *(Send a guardian ad litem copy of all hearing notices)* |
| 05/10/2013 | Proposed Order    Doc ID# 61 |
|            | *2nd Amended Final Jury Trial Notice* |
| 05/10/2013 | Service Document    Doc ID# 62 |
| 05/13/2013 | Order    Doc ID# 63 |
|            | *Amended Final Jury Trial Order* |
| 06/21/2013 | Order    Doc ID# 64 |
|            | *Approving Jury Questionnaire* |
| 06/21/2013 | Exhibit    Doc ID# 65 |
|            | *B  -* |
| 07/03/2013 | Service Document    Doc ID# 66 |
|            | *Affidavit of Service By Electronic Filing* |
| 07/03/2013 | Report    Doc ID# 67 |
|            | *Amended State's Exhibit List* |
| 07/03/2013 | Service Document    Doc ID# 68 |
|            | *Certificate of Service* |
| 07/03/2013 | Notice of Hearing    Doc ID# 69 |
|            | *Status Conference Notice* |
| 07/15/2013 | Status Conference  (9:00 AM) (Judicial Officer Kleven, Debbie) |
|            | *(Send copy of all hearing notices to Guardian ad Litem)/Steno (MA) 7-15-13* |
|            | 04/30/2013 *Reset by Court to 07/15/2013* |
|            | Result: Hearing Ended |
| 07/15/2013 | Order for PSI    Doc ID# 70 |
|            | *and Sentencing Hearing Notice* |
| 07/15/2013 | Service Document    Doc ID# 71 |
|            | *Certificate of Service* |
| 07/16/2013 | CANCELED  Felony Jury Trial  (9:00 AM) (Judicial Officer Kleven, Debbie) |
|            | Case Settled |
|            | *(Send copy of all hearing notices to Guardian ad Litem)* |
|            | 05/01/2013 *Reset by Court to 07/15/2013* |
| 09/10/2013 | Pre-Sentence Investigation    Doc ID# 72 |
|            | *PSI* |
| 09/10/2013 | Pre-Sentence Investigation    Doc ID# 73 |
|            | *PSI Addendum* |
| 09/13/2013 | Statement    Doc ID# 74 |
|            | *Victim Impact Statement for PSI* |
| 09/16/2013 | Order    Doc ID# 75 |
|            | *Releasing Victim Impact Statement* |
| 09/16/2013 | Order    Doc ID# 76 |
|            | *Releasing PSI* |
| 09/26/2013 | No Contact Order Expired    Doc ID# 77 |
| 10/04/2013 | Sentencing  (9:00 AM) (Judicial Officer Kleven, Debbie) |
|            | 10/04/2013, 10/04/2013 |
|            | *to take all morning (DVD in 1st Floor Clerk Vault) MA-STENO 10/4/13* |
|            | Parties Present |
|            | Result: Hearing Ended |
| 10/04/2013 | Criminal Judgment    Doc ID# 78 |
|            | *with Appendix "A"* |
| 10/04/2013 | Statement    Doc ID# 79 |
|            | *Of Reasons For Sentence* |
| 12/04/2013 | Notice    Doc ID# 80 |
|            | *Rule 3.2 Notice of Motion* |
| 12/04/2013 | Motion    Doc ID# 81 |
|            | *Motion For Restitution* |
| 12/04/2013 | Brief    Doc ID# 82 |
|            | *Brief in Support of Motion For Restitution* |
| 12/04/2013 | Affidavit    Doc ID# 83 |
|            | *Affidavit of Restitution Coordinator and Statement of Proof* |
| 12/04/2013 | Proposed Order    Doc ID# 84 |
|            | *Order Granting Motion For Restitution* |
| 12/04/2013 | Service of Motion    Doc ID# 85 |
|            | *Affidavit of Service By Electronic Filing* |
| 12/30/2013 | Order Disposing of Motion    Doc ID# 86 |
|            | *Order Granting Motion For Restitution* |

| | | |
|---|---|---|
| 12/30/2013 | **Proposed Order**   Doc ID# 87 | |
| | *Amended Criminal Judgment (count 1) Criminal Judgment (count 2)* | |
| 01/03/2014 | **Criminal Judgment**   Doc ID# 88 | |
| | *Amended Criminal Judgment (count 1) Criminal Judgment (count 2)* | |
| 07/17/2014 | **Exhibit**   Doc ID# 89 | |
| | *Exhibit Disposition Form* | |
| 03/09/2015 | **Clerk's Certificate on Appeal**   Doc ID# 90 | |
| 03/09/2015 | **Transcript**   Doc ID# 91 | |
| | *Sealed Redacted Text Key from Change of Plea hearing held on 7-15-2013* | |
| 03/09/2015 | **Transcript**   Doc ID# 92 | |
| | *Redacted Text Key of Sentencing hearing held on 10-04-2013* | |
| 03/09/2015 | **Transcript**   Doc ID# 93 | |
| | *Transcript of Sentencing held on 10-04-2013* | |
| 03/09/2015 | **Transcript**   Doc ID# 94 | |
| | *Change of Plea hearing held 7-15-2013* | |
| 03/10/2015 | **Clerk's Certificate on Appeal**   Doc ID# 95 | |
| 12/28/2015 | **Notice**   Doc ID# 96 | |
| | *of Motion* | |
| 12/28/2015 | **Motion**   Doc ID# 97 | |
| | *Motion to Withdraw Guilty Plea* | |
| 12/28/2015 | **Brief**   Doc ID# 98 | |
| | *in Support of Motion to Withdraw Guilty Plea* | |
| 12/28/2015 | **Affidavit**   Doc ID# 99 | |
| | *of Nathan G Dubray in Support of Motion to Withdraw Guilty Plea* | |
| 12/28/2015 | **Demand for Change of Judge**   Doc ID# 100 | |
| 12/28/2015 | **Letter**   Doc ID# 101 | |
| | *Requesting Counsel* | |
| 12/28/2015 | **Request**   Doc ID# 102 | |
| | *for Hearing on Motion to Withdraw Guilty Plea* | |
| 12/28/2015 | **Service Document**   Doc ID# 103 | |
| | *Certificate of Service* | |
| 12/28/2015 | **Order**   Doc ID# 104 | |
| | *Order Denying Demand for Change of Judge* | |
| 12/28/2015 | **Service Document**   Doc ID# 105 | |
| | *Certificate of Service* | |
| 12/29/2015 | **Service Document**   Doc ID# 106 | |
| | *Certificate of Service* | |
| 12/29/2015 | **Notice of Hearing**   Doc ID# 107 | |
| | *Motion Hearing Notice* | |
| 01/06/2016 | **Proposed Order**   Doc ID# 108 | |
| | *Application for Apointed Counsel* | |
| 01/07/2016 | **Service Document**   Doc ID# 109 | |
| | *Affidavit of Service By Mail* | |
| 01/07/2016 | **Brief**   Doc ID# 110 | |
| | *State's Brief in Opposition to Defendant's Motion to Withdraw Guilty Plea* | |
| 01/12/2016 | **Order**   Doc ID# 111 | |
| | *Order Denying Application for Court-Appointed Attorney and Order Denying Motion to Withdraw Guilty Plea* | |
| 01/12/2016 | **Service Document**   Doc ID# 112 | |
| | *Certificate of Service of Order Denying Application for Court-Appointed Attorney and Order Denying Motion to Withdraw Guilty Plea* | |
| 01/29/2016 | *CANCELED*  Motion/Hearing  (1:30 PM) (Judicial Officer Kleven, Debbie) | |
| | *Other* | |
| | *Motion To Withdraw Guilty Plea* | |

---

**FINANCIAL INFORMATION**

---

| | | |
|---|---|---|
| | Defendant Dubray, Nathan G | |
| | **Total Financial Assessment** | 1,000.00 |
| | **Total Payments and Credits** | 1,000.00 |
| | **Balance Due as of 04/19/2016** | 0.00 |
| 10/04/2013 | Transaction Assessment | 1,000.00 |
| 10/04/2013 | Waived | (1,000.00) |

ORIGINAL

DISTRICT COURT, GRAND FORKS COUNTY, NORTH DAKOTA

State of North Dakota,

        Plaintiff,

v

Nathan Gene Dubray,

        Defendant.



FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

AUG 6 2012

REBECCA ABSEY, CLERK

BY_____

Deputy

**INFORMATION**
Court No.
SA#121086   18-2012CR 1960

M. Jason McCarthy, ND Bar ID #05656 in and for the County of Grand Forks, in the State of North Dakota, gives this Court to understand and be informed:

**COUNT I:**

That between the 2nd day of January, 2012, and the 3rd day of January, 2012, within the County of Grand Forks in the State of North Dakota, one **Nathan Gene Dubray** did commit the crime of **GROSS SEXUAL IMPOSITION**, in violation of Sections 12.1-20-03(1)(d), 12.1-20-03(3)(a) and 12.1-32-01(1) of the North Dakota Century Code, a Class AA Felony, by then and there being an actor at least twenty two years of age and engaging in or causing another to engage in a sexual act with a victim less than fifteen years of age; To wit: That Nathan Gene Dubray, being an actor at least twenty two years of age did engage in or cause another to engage in a sexual act when the Defendant engaged in a sexual act with an 8 year old juvenile victim including but not limited to sexual contact between the Defendant's exposed penis and the victim's face and the Defendant's hand and the victim's vulva. This taking place at 2839 20th Avenue South, Building D, in Grand Forks, North Dakota.

**COUNT II:**

That on or about the 2nd day of January, 2012, within the County of Grand Forks in the State of North Dakota, one **Nathan Gene Dubray** did commit the crime of **GROSS SEXUAL IMPOSITION**, in violation of Sections 12.1-20-03(1)(d), 12.1-20-03(3)(a) and 12.1-32-01(1) of the North Dakota Century Code, a Class AA Felony, by then and there being an actor at least twenty two years of age and engaging in or causing another to engage in a sexual act with a victim less than fifteen years of age; To wit: That Nathan Gene Dubray, being an actor at least twenty two years of age, did engage in or cause another to engage in a sexual act when the Defendant engaged in a sexual act with an 8 year old juvenile victim including contact between the Defendant's exposed penis and the victim's hand and the Defendant's hand and the victim's vulva. This taking place at 2839 20th Avenue South, Building D, in Grand Forks, North Dakota.

Names of all witnesses for the prosecution known to State's Attorney at this date:

Jeremy Moe, Grand Forks Police Department
Travis Michael Benson, Grand Forks Police Department
Brett Johnson, Grand Forks Police Department



EXHIBIT
2

**Shawn Thompson, Grand Forks Police Department**
**Wesley Vert III, Grand Forks Police Department**
**DaLee M Wilkinson, Grand Forks Police Department**
**Gerald White Jr., Bureau of Indian Affairs**
**Mario Alcon**
**Bobby Joe Bull**
**Arne H. Graff MD**
**Tori Killscrow**
**Yvonne Killscrow**
**Tammy C. Knudson LSW**
**Carrie Simonson R.N.**
**Shelby Joleen Weist**
**Juvenile M.I.W.**
**Altru Hospital Personnel**
**Grand Forks County Social Services Personnel**
**Bureau of Indian Affairs Personnel**

This contrary to the statute and against the peace and dignity of the State of North Dakota.

Dated at Grand Forks, North Dakota, this **2nd day of August, 2012.**

States Attorney's Office
Grand Forks County, North Dakota

IR#201200059
jlf

IN DISTRICT COURT,   GRAND FORKS COUNTY,   NORTH DAKOTA

STATE OF NORTH DAKOTA,                    )AFFIDAVIT OF PROBABLE CAUSE

      Plaintiff,                                    )GRAND FORKS POLICE DEPARTMENT

                                               )ICR #: 201200059

     vs.                                       )CHARGE: Gross Sexual Imposition

      Dubray, Nathan Gene

      Homeless, New Town, ND

    SSAN: 5

    DOB:   9-12-1985

            Defendant.

*Handwritten:* Jason #21086

*Handwritten:* 18 - 2012CR 1960

FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

AUG – 6 2012

REBECCA ABSEY, CLERK
BY_____
                      Deputy

RECEIVED
MAR 1 5 2012

STATE  OF  NORTH  DAKOTA )

COUNTY  OF  GRAND  FORKS )

Comes now, Cpl. J. Moe #650 , being first duly sworn, deposes and states to the Court as follows:

    1)    That your Affiant is a Police Officer with the Grand Forks Police Department.

    2)    That your Affiant has reviewed the attached investigative reports, which expressly incorporated

herein by reference, and states upon information and belief that there is probable cause to believe that a

criminal offense has been committed by the Defendant, and for the issuance of a warrant for the arrest of

the Defendant.

            **FURTHER YOUR AFFIANT SAYETH NOT.**

            DATED this 15th day of March, 2012

                                             _____
                                       Cpl. J. Moe,  Investigating Officer

Subscribed and sworn to before me this 15th day of March, 2012

                                _____
                          Notary Public, Grand Forks County, North Dakota
                          My Commission Expires:

WILLIAM J. MACKI
Notary Public
State of North Dakota
My Commission Expires Feb. 8, 2018

Office of State
 Grand Forks County
Grand Forks, North Dakota

# *Grand Forks Police Department*

122 South Fifth Street, P.O. Box 5058, Grand Forks, ND 58206-5058
(701) 787-8000    FAX (701) 780-8253

## <u>INCIDENT SUMMARY</u> - District Court

<u>Grand Forks Police Department ICR #:</u> 201200059

<u>Date:</u> 1-3-2012

<u>Location:</u> 2839 20th Ave. S. Building D

<u>Investigating Officer's Name:</u> Cpl. J. Moe #650

<u>Reviewing Supervisor Name:</u> Sgt. Macki #414

<u>Adult Suspect's Name/DOB:</u> Dubray, Nathan Gene/9/12/1985

**Based upon the information in the below synopsis, this investigating officer believes probable cause exists that Dubray, Nathan Gene has committed the crime of Gross Sexual Imposition or other violations of law.**

## <u>Synopsis</u>

The facts present to support a charge of Gross Sexual Imposition, a AA Felony, against Nathan Dubray are:

- Juvenile female M.W., DOB 1-23-2003, reported Nathan Dubray, 26 years of age, woke her and brought her to the living room of her and her mother's residence where he "was rubbing my private" during the early morning hours of January 3, 2012.
- Juvenile female M.W. stated that Dubray "unzipped his pants" and "tried to make me lick his bottom".
- Juvenile female M.W. identified a penis as a males "bottom" by use of pictures.
- Juvenile female M.W. identified a vagina as a females "bottom" by use of pictures.
- Juvenile female M.W. stated someone knocked on the door and she began walking down the hallway to her room when Dubray wanted her to kneel in front of him. Juvenile female M.W. stated there was another knock on the door causing Dubray to put his penis back in his pants and her to go to bed.
- Checking with dispatch, Officers were sent to the residence to complete a welfare check on Dubray at approximately 0300 hours.
- Juvenile female M.W. stated she was again awakened by Dubray when the sun was up on the morning of January 3, 2012.
- Juvenile female M.W. stated Dubray again brought her to the living room and she was sitting on his lap when Dubray took his "bottom" from his pants and "made" her touch his penis with her hand. Juvenile female M.W. stated Dubray wanted her to do something with her hand and she made a back and forth motion with her hand.

_____                    _____
**Investigating Officer's Signature**                    **Reviewing Supervisor's Signature**

# *Grand Forks Police Department*

122 South Fifth Street, P.O. Box 5058, Grand Forks, ND 58206-5058
(701) 787-8000   FAX (701) 780-8253

- Juvenile female M.W. stated that Dubray had his hand down her pants while doing this and was touching her "bottom" with his hand rubbing up and down.
- On 1-3-2012, I interviewed Dubray who stated that on 1-3-2012 he was awakened by Shelby Weist, the mother of Juvenile female M.W., yelling at him that he touched Juvenile female M.W.
- When Dubray was told of the allegation that he touched Juvenile female M.W. private area, he stated "I would never do that", but when asked why Juvenile female M.W. would say that, Dubray responded "usually a child that age, they are telling the truth".
- Dubray was told that Juvenile female M.W. stated he asked her to touch his privates, Dubray put his hands over his eyes and began to weep, stating "if I did, I'm sorry" and stated "I honestly don't know".
- Dubray stated he "blacked out" and does not remember what he did exactly but remembers going to Joe Bull's residence between 0300 and 0800 hours.
- Dubray stated "I don't know if I did or if I didn't", "if I did I don't know" when again told of the accusation by Juvenile female M.W.
- On 2-9-2012 at 0800 hours, I spoke to Tori Killscrow, who was staying at the residence of Shelby Weist on 1-3-2012, and reported that she woke in the middle of the night to Nathan Dubray attempting to "have sex" with her.
- On 2-15-2012 at approximately 1400 hours, I met with Bobby Joe Bull, who also goes by Joe Bull. Bull stated that Dubray left his residence at approximately 0200 hours to 0230 hours at which time he shut and locked the door. Bull stated that he is "pretty sure" that Dubray attempted to return but could not as the door was locked.

---

Investigating Officer's Signature

414
Reviewing Supervisor's Signature

DISTRICT COURT, GRAND FORKS COUNTY, NORTH DAKOTA

State of North Dakota,

        Plaintiff,

v

Nathan Gene Dubray,

        Defendant.



FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

JAN 2 ? 2013

REBECCA ABSEY, CLERK
BY_____
                        Deputy

**AMENDED INFORMATION**
Court No.  18-2012-CR-01960/001, 18-2012-CR-01960/002
SA#121086

    **M. Jason McCarthy, ND Bar ID #05656** in and for the County of Grand Forks, in the State of North Dakota, gives this Court to understand and be informed:

**COUNT I:**

    That between the 2nd day of January, 2012, and the 3rd day of January, 2012, within the County of Grand Forks in the State of North Dakota, one **Nathan Gene Dubray** did commit the crime of **GROSS SEXUAL IMPOSITION**, in violation of Sections 12.1-20-03(1)(d), 12.1-20-03(3)(a), and 12.1-32-01(1) of the North Dakota Century Code, a **Class AA Felony, by then and there being an actor at least twenty two years of age and engaging in or causing another to engage in a sexual act with a victim less than fifteen years of age;To wit: That Nathan Gene Dubray, being an actor at least twenty two years of age did engage in or cause another to engage in a sexual act when the Defendant engaged in a sexual act with an 8 year old juvenile victim including but not limited to sexual contact between the Defendant's exposed penis and the victim's face and the Defendant's hand and the victim's vulva.  This taking place at 2839 20th Avenue South, Building D, in Grand Forks, North Dakota.**

**COUNT II:**

    That on or about the 3rd day of January, 2012, within the County of Grand Forks in the State of North Dakota, one **Nathan Gene Dubray** did commit the crime of **GROSS SEXUAL IMPOSITION**, in violation of Sections 12.1-20-03(1)(d), 12.1-20-03(3)(a), and 12.1-32-01(1) of the North Dakota Century Code, a **Class AA Felony, by then and there being an actor at least twenty two years of age and engaging in or causing another to engage in a sexual act with a victim less than fifteen years of age; To wit:  That Nathan Gene Dubray, being an actor at least twenty two years of age, did engage in or cause another to engage in a sexual act when the Defendant engaged in a sexual act with an 8 year old juvenile victim including contact between the Defendant's exposed penis and the victim's hand and the Defendant's hand and the victim's vulva.  This taking place at 2839 20th Avenue South, Building D, in Grand Forks, North Dakota.**

Names of all witnesses for the prosecution known to State's Attorney at this date:

**Travis Michael Benson, Grand Forks Police Department**
**Brett Johnson, Grand Forks Police Department**

1



EXHIBIT
**3**

Filed - Clerk of District Court
12/31/2012 5:21:36 PM
Grand Forks County, ND

Jeremy Moe, Grand Forks Police Department
Caitlin Prelip, Grand Forks Police Department
Shawn Thompson, Grand Forks Police Department
DaLee M Wilkinson, Grand Forks Police Department
Wesley Vert III, Grand Forks Police Department
Gerald White Jr., Bureau of Indian Affairs
Bureau of Indian Affairs Personnel
Grand Forks County Social Service Center Personnel
Altru Hospital Personnel
Carrie Simonson, R.N.
Arne H. Graff, M.D.
Tammy C. Knudson LSW
Mario Alcon
Bobby Joe Bull
Tori Killscrow
Yvonne Killscrow
Juvenile M.I.W.
Shelby Joleen Weist

This contrary to the statute and against the peace and dignity of the State of North Dakota.

Dated at Grand Forks, North Dakota, this 31st day of **December, 2012.**

States Attorneys Office
Grand Forks County, North Dakota

IR#201200059
Ah

2

```
1  STATE OF NORTH DAKOTA                     IN DISTRICT COURT

2  COUNTY OF GRAND FORKS      NORTHEAST CENTRAL JUDICIAL DISTRICT

3

4  State of North Dakota,            )
                                     )
5            Plaintiff,              )
                                     )
6     v.                             )   Case No. 18-2012-CR-01960
                                     )
7  Nathan Gene Dubray,               )
                                     )
8            Defendant.              )

9

10                       T R A N S C R I P T

11                               of

12                     P R O C E E D I N G S

13     Change of Plea      July 15, 2013      10:05 A.M.

14     TAKEN AT:    Grand Forks County Courthouse
                    Grand Forks, North Dakota

15     BEFORE:      HONORABLE DEBBIE G. KLEVEN

16     ---------------------------------------------------------

17                   A P P E A R A N C E S

18     FOR THE STATE:      M. JASON MCCARTHY
                           State's Attorney's Office
19                         P.O. Box 5607
                           Grand Forks, ND  58206-5607
20
       FOR THE DEFENDANT:  BLAKE D. HANKEY
21                         Attorney at Law
                           405 Bruce Ave., Ste 100
22                         Grand Forks, ND  58201

23                         ADAM FLEISCHMAN
                           Attorney at Law
24                         405 Bruce Ave., Ste 100
                           Grand Forks, ND  58201

25
```

**EXHIBIT 4**

tabbies

Marsha Allmaras
Registered Professional Reporter
Grand Forks, North Dakota

1

1   WHEREUPON,

2       the following proceedings were had, to-wit:

3           THE COURT:   This is the time set for a status

4   conference in the case captioned State of North Dakota

5   versus Nathan Dubray.

6           This microphone is not working.

7           (Pause in proceedings.)

8           THE COURT:   You're able to hear me okay?

9           MR. MCCARTHY:   Yes.

10          MR. HANKEY:   (Nodding.)

11          THE COURT:   Okay.   This case is set for a jury

12  trial to commence tomorrow morning.

13          The record should reflect the State is

14  represented by Assistant State's Attorney Jason McCarthy.

15  The defendant, Nathan Dubray, is present and is

16  represented by Attorneys Blake Hankey and Adam Fleischman.

17          And do we have Dawnita Nilles present?

18          MRS. NILLES:   Yes, ma'am.

19          THE COURT:   And Dawnita Nilles is the

20  court-appointed guardian ad litem for the minor child in

21  this case.

22          Mr. Dubray, I show that you previously appeared

23  on this case, and you were advised of rights and penalty

24  provisions.   Do you have any questions about your rights

25  in this case?

```
1              NATHAN DUBRAY:  No, Your Honor.
2              THE COURT:  Or would you like me to go through
3    those rights with you again?
4              NATHAN DUBRAY:  No.
5              THE COURT:  Okay.  Then, as far as the jury trial
6    for tomorrow, are both sides intending to proceed to
7    trial?
8              MR. HANKEY:  Your Honor, if I can.  I spoke with
9    Mr. McCarthy, I guess, briefly last week.  We had --
10             Nathan was able to take a train.  Obviously, he
11   was always going to come to court, but the earliest he
12   could get here was this morning.  I've had a chance to
13   talk with him.
14             Further discussions with him -- it's our
15   intention to do a change of pleas at this time.
16             And Mr. McCarthy gave his recommendation the
17   State would offer.  We certainly know it's an open plea.
18   And, also, just for the Court's information, this will be
19   an Alford plea.
20             And there's plenty on the record, and I can
21   certainly go through it more if the Court would like as to
22   why we need to do an Alford basis on this case.
23             THE COURT:  Okay.  Mr. Dubray, is it your intent
24   to enter a guilty plea to these two counts today?
25             NATHAN DUBRAY:  Yeah.
```

1          THE COURT:  And, Mr. Dubray, do you understand

2     that if you enter an open guilty plea, the State is not

3     bound -- or the Court is not bound by any plea agreement?

4          NATHAN DUBRAY:  Yes.

5          THE COURT:  And do you understand that in this

6     case this is a class double A felony; so the maximum

7     penalty that may be imposed is anything up to life

8     imprisonment?

9          NATHAN DUBRAY:  Yes.

10         THE COURT:  And, then, Mr. Dubray, I do want you

11    to understand that with an open guilty plea, a life

12    imprisonment sentence could include -- I guess the Court

13    decides whether you get the opportunity for parole or not.

14    That would be the maximum, is life without parole.

15         But if I would impose a sentence of life

16    imprisonment with parole, that you do have to serve at

17    least 30 years, less any sentence reduction earned for

18    good conduct, before you could be considered for parole.

19    So that would be the absolute maximum sentence.

20         Do you understand?

21         NATHAN DUBRAY:  Yes.

22         THE COURT:  So either life imprisonment with or

23    without parole, but if it's with parole, you still have to

24    serve 30 years, less any good time.

25         There are minimum mandatory penalties, though,

1  that do apply in this case, and those are set forth in

2  section 12.1-20-03(3)(a).

3          On a double A felony, when the actor was at least

4  22 years of age at the time of the commission of the

5  offense and the child or the victim was under the age of

6  15, the Court must impose a minimum sentence of 20 years

7  imprisonment with probation supervision to follow the

8  incarceration, unless the Court finds that the sentence

9  would impose a manifest injustice as defined by North

10 Dakota law and that you have accepted responsibility for

11 the crime or cooperated with law enforcement.

12          So if you do plead guilty, that would be

13 accepting responsibility, and it would allow the Court to

14 deviate if -- from the 20-year sentence if it would impose

15 a manifest injustice, but you would still have to serve at

16 least five years.

17          Do you understand that --

18          NATHAN DUBRAY:  Yes.

19          THE COURT:  -- Mr. Dubray?  Okay.  Then,

20 Mr. Dubray, at this time I'm going to ask you for your

21 plea on each count.

22          Count 1 alleges that between January 2nd and

23 January 3rd of 2012, you were at least 22 years of age and

24 you did engage in or cause another to engage in a sexual

25 act when the -- when you engaged in the sexual act, the

1   victim in this case was an eight year old, and it included

2   sexual contact between your exposed penis and the victim's

3   face and your hand and the victim's vulva.

4        This taking place at 2839 20th Avenue South,

5   Building D, in Grand Forks, North Dakota.  Again, a Class

6   double A felony.

7        Your plea to the charge, Mr. Dubray?

8        MR. HANKEY:  I guess maybe I had given him the

9   wrong information, but we were basing the Alford basis --

10  we were admitting there was enough facts, that, you know,

11  if we went forward, that a jury would convict Mr. Dubray.

12       So I just wanted to clarify that.  I think that's

13  the question that Nathan had.  It's on the Alford basis.

14       THE COURT:  Okay.  But your plea to the charge?

15       NATHAN DUBRAY:  Guilty.

16       THE COURT:  Okay.  Count 2 is the allegation that

17  on January 3rd of 2012, you were at least 22 years of age,

18  and you did engage in a sexual act with an eight-year-old

19  juvenile, including contact between the defendant's

20  exposed penis and the victim's hand and the defendant's

21  hand and the victim's vulva.

22       This taking place at 2839 20th Avenue South,

23  Building D, in Grand Forks, North Dakota.  Also a Class

24  double A felony.

25       Your plea to the charge?

```
 1              NATHAN DUBRAY:  Guilty.
 2              THE COURT:  Mr. Dubray, are your pleas of guilty
 3      to these charges made freely and voluntarily?
 4              NATHAN DUBRAY:  Yes.
 5              THE COURT:  Have there been any threats or
 6      promises made to you in order to get you to plead guilty?
 7              NATHAN DUBRAY:  No.
 8              THE COURT:  Do you understand by pleading guilty
 9      you are giving up your right to have a trial on the
10      charges?
11              NATHAN DUBRAY:  Yes.
12              THE COURT:  And do you understand that we are
13      prepared to proceed to jury trial tomorrow and that we
14      have summoned, I believe, over 60 jurors in for this case
15      and had them complete questionnaires.  So we're ready to
16      go.  Do you understand that?
17              NATHAN DUBRAY:  Yes.
18              THE COURT:  And do you understand that by
19      pleading guilty you are waiving your right to a jury
20      trial?
21              NATHAN DUBRAY:  Yes.
22              THE COURT:  And you're waiving your right to face
23      the witnesses the State may have against you?
24              NATHAN DUBRAY:  Yes.
25              THE COURT:  And to call any witnesses in your own
```

1   behalf?

2            NATHAN DUBRAY:  Yes.

3            THE COURT:  And do you understand the only other

4   proceedings that will take place in this case will be

5   sentencing?

6            NATHAN DUBRAY:  Yes.

7            THE COURT:  And, Mr. Dubray, since this is an

8   open guilty plea, again, I'll consider any recommendations

9   from counsel.  Also, I'll consider the presentence

10  investigation report and any statements that you make.

11           But I do have to impose a sentence of at least

12  five years, and it can be anything up to life imprisonment

13  without parole.  You understand that?

14           NATHAN DUBRAY:  Yes.

15           THE COURT:  And, Mr. Dubray, do you feel you've

16  had sufficient time to discuss this case with your

17  attorneys?

18           NATHAN DUBRAY:  Yes.

19           THE COURT:  And are you satisfied with the

20  representation that you have received from your attorneys?

21           NATHAN DUBRAY:  Yes.

22           THE COURT:  And, Mr. Dubray, are you under the

23  influence of any alcohol or drugs at this time?

24           NATHAN DUBRAY:  No.

25           THE COURT:  And, Mr. Dubray, do you take any

1    prescription medication?

2         NATHAN DUBRAY:  No.

3         THE COURT:  And when was the last time you

4    consumed any alcohol?

5         NATHAN DUBRAY:  A month ago.

6         THE COURT:  Okay.  So you haven't had any in the

7    last 24 hours?

8         NATHAN DUBRAY:  No, ma'am.

9         THE COURT:  Nor have you taken any medication

10   prescription -- or something that's prescribed, or

11   something that wasn't prescribed but it's still a

12   prescription medication?

13        NATHAN DUBRAY:  No.

14        THE COURT:  Okay.  Then, I'm going to ask the

15   State for the factual basis, and then I'm going to hear

16   from your attorney as to the reason for the Alford plea.

17        And, Mr. Dubray, do you understand an Alford plea

18   means that you don't really remember what happened, but

19   you're satisfied that there are enough facts that you

20   could be proven that -- facts that can be proven that

21   would convict you of this offense?

22        NATHAN DUBRAY:  Yes.

23        THE COURT:  Okay.  Mr. McCarthy.

24        MR. MCCARTHY:  Thank you, Your Honor.  On

25   January 3rd of 2012, juvenile female M.W., date of birth,

1   XXX███████████ of 2003, reported that Mr. Dubray,

2   26 years of age, woke her up and brought her to the living

3   room of her and her mother's residence, where he rubbed

4   her private during the early morning hours of January 3rd

5   of 2012.  This residence, Your Honor, was an apartment

6   here in the City of Grand Forks in Grand Forks County.

7       She reported that Mr. Dubray unzipped his pants

8   and tried to make him (sic) lick his bottom.  She,

9   subsequently, through the use of pictures through the

10  Children's Advocacy Center and, subsequently, in speaking

11  with Dr. Graff, identified a penis as a male's bottom.

12  She also indicated that she identified a vagina as a

13  female's bottom by the use of pictures.

14      She stated that during their first encounter,

15  someone knocked on the door, and she began walking down

16  the hallway to her room when Dubray wanted her to kneel in

17  front of him.  She stated there was another knock on the

18  door, causing Dubray to put his penis back in his pants

19  and her to go to bed.

20      Law enforcement did check with dispatch, Your

21  Honor, and learned that officers were sent to that

22  apartment to complete a welfare check on Dubray at

23  approximately 3:00 o'clock that morning.

24      The female stated she was again awakened by

25  Dubray, this time after the sun came up the morning of

January 3rd of 2012.  She stated that he brought her into the living room, and she was sitting on his lap when Mr. Dubray took his bottom from his pants and made her touch his penis with her hand.

She stated that he wanted her to do something with her hand, and she made a -- described it as a back-and-forth motion during her Children's Advocacy Center interview.  She stated that Mr. Dubray did have his hand down her pants while doing this and was touching her bottom or her vaginal area with his hand rubbing up and down.

Mr. Dubray was interviewed the afternoon of January 3rd of 2012 by Detective Moe.  He indicated that that -- late that morning he was awakened by the juvenile female's mother yelling at him and telling him that he had touched juvenile female.  When Dubray was told of the allegation that he touched the juvenile female's private area, he stated, "I would never do that."

Detective Moe asked why the juvenile female would say that or make it up.  Dubray's response was, "Usually with a child that age, they are telling the truth."

Dubray was told by Detective Moe that juvenile female stated he asked her to touch his privates.  Dubray put his hands over his eyes and began to weep, stating, "If I did, I'm sorry," and stated, "I honestly don't

```
1    know."
2            He stated that he blacked out and doesn't
3    remember what exactly he did but does remember going to
4    Joe Bull's residence somewhere between 3:00 and 8:00 in
5    the morning.
6            Dubray stated, "I don't know if I did or if I
7    didn't.  If I did, I don't know," when again told of the
8    accusation.
9            Our investigation revealed, Your Honor, that
10   Mr. Dubray told Detective Moe that he had been drinking UV
11   Vodka that evening, smoking marijuana, and we're aware of
12   at least him drinking one Budweiser beer.
13           THE COURT:  Mr. Dubray, do you agree with these
14   facts?
15           NATHAN DUBRAY:  Yes.
16           THE COURT:  And, Mr. Hankey, do you wish to state
17   anything with respect to the plea and the Alford plea?
18           MR. HANKEY:  Well, Your Honor, I think
19   Mr. McCarthy basically covered what I was going to say.
20   There was, at the very least, a half of a pint of UV Vodka
21   drank, admission of marijuana usage, and admission of
22   drinking at least one Budweiser.
23           And throughout his whole initial interview on
24   January 3rd of 2012, he does say that, you know, "I don't
25   know.  I don't think that happened."  Goes on to say that
```

1    he was blacked out.  Goes on to say that "I don't know if

2    I did or if I didn't.  I don't know."

3         And Mr. Dubray has been very consistent with me

4    in our office as to the same statements that he made back

5    on January 3rd of 2012.

6         And that's been the hang-up and why we are on the

7    eve of trial and are now just changing the pleas.  He does

8    now admit, given the facts and as outlined, that there's

9    enough here on an Alford basis, but he has no recollection

10   of doing this act.  The reason he's having so much trouble

11   and is so emotional right now is it's not his character.

12   It's not how he's made up.

13        And although a lengthy sentencing, we would ask

14   for and present our case on that.  But that is why he's

15   having such a hard time is he really has no recollection,

16   no history of anything like this.  And that's why we're

17   using an Alford basis.  He really has no recollection.

18        THE COURT:  And, Mr. Dubray, do you admit that

19   you were under the influence of alcohol and other

20   substances to the point that you don't recall what

21   happened on January -- let me see.  I forgot the dates

22   here.

23        MR. MCCARTHY:  2nd and 3rd, Your Honor.

24        THE COURT:  January 2nd and 3rd; is that correct,

25   Mr. Dubray?

1    NATHAN DUBRAY:  Yes.

2    THE COURT:  Where had you been earlier that day?

3    NATHAN DUBRAY:  Trying to get money so I can get

4 alcohol.

5    THE COURT:  Okay.  The Court finds the

6 defendant's guilty plea is made freely and voluntarily and

7 that a factual basis exists for the plea.

8    What we'll do is we will order a presentence

9 investigation.  That will require that Mr. Dubray complete

10 a psychological assessment through Northeast Human Service

11 Center, and it's going to take a little while to get all

12 that completed.

13    Mr. Dubray, where are you living at this time?

14    NATHAN DUBRAY:  I was staying with a friend in

15 Minnesota, but I came back here because I had -- well,

16 because of all this.

17    MR. HANKEY:  Just so the Court knows, he's

18 currently in a treatment program in Minnesota right now

19 for alcohol.

20    THE COURT:  Okay.

21    MR. HANKEY:  Where is it again?

22    NATHAN DUBRAY:  It's in Goodhue County in Red

23 Wing, Minnesota.

24    MR. HANKEY:  He's living in Red Wing, Minnesota.

25 It's Goodhue County, and that's where he's in the

1    treatment program.

2          THE COURT:  What's the name of the treatment

3    program?

4          NATHAN DUBRAY:  It's just like outpatient group

5    that meets up at the armory every Tuesday and Thursday.  I

6    forgot the name of it, but it's through Goodhue's County

7    Social Services.

8          THE COURT:  You said what county again?

9          MR. HANKEY:  Goodhue.

10          THE COURT:  Goodhue?  Where are you from

11    originally?

12          NATHAN DUBRAY:  Fort Berthold.

13          THE COURT:  So you took a bus to get here?

14          NATHAN DUBRAY:  I took a train, Your Honor.

15          THE COURT:  Mr. Dubray, I show that you've posted

16    a $50,000 surety bond through a bonding agency.

17          NATHAN DUBRAY:  Yes, Your Honor.

18          THE COURT:  Did someone help you post that money?

19          NATHAN DUBRAY:  Yes, Your Honor.

20          THE COURT:  And who did that?

21          NATHAN DUBRAY:  My father-in-law.

22          THE COURT:  Your father-in-law?

23          NATHAN DUBRAY:  Yes, Your Honor.

24          THE COURT:  Okay.  So I assume you're married,

25    then?

1          NATHAN DUBRAY:  Yes.

2          THE COURT:  And where does your spouse reside?

3          NATHAN DUBRAY:  Here in Grand Forks.

4          THE COURT:  Will you be staying with her now?  Or

5    do you have children?

6          NATHAN DUBRAY:  We have children.

7          THE COURT:  Okay.  I assume, then, you're not to

8    be residing there.

9          NATHAN DUBRAY:  It's up to her, honestly.

10         THE COURT:  Is that what Social Services says?

11         NATHAN DUBRAY:  Yeah.

12         THE COURT:  What is the State's position with

13   respect to bond?

14         MR. MCCARTHY:  We discussed this, Your Honor, and

15   I indicated to Mr. Hankey we wouldn't seek an adjustment

16   on bond.  We don't have any reports that he's violated the

17   no contact order.

18         I think there may be some open warrants out of

19   Bismarck on some misdemeanor-type sentencing issues like

20   community service or that type of thing.  So I'm not sure

21   how he wants to -- I think he's got to appear on them

22   also.

23         THE COURT:  Okay.  So, Mr. Dubray, is it your

24   intention to return to the treatment center?

25         NATHAN DUBRAY:  Yes.

1           THE COURT:  And you'll be living with your
2      friend?
3           NATHAN DUBRAY:  Yes.
4           THE COURT:  What's your friend's name?
5           NATHAN DUBRAY:  Austin Owen.  (Phonetic)
6           THE COURT:  Austin Owen?
7           NATHAN DUBRAY:  Yes, ma'am.
8           THE COURT:  Does Mr. Dobmeier have you call in
9      once a week?
10          NATHAN DUBRAY:  Yes.
11          THE COURT:  And you've made all those calls?
12          NATHAN DUBRAY:  Yeah, every Monday.
13          THE COURT:  And, Mr. Hankey, I'm not aware that
14     you've had any trouble keeping in touch with Mr. Dubray.
15          MR. HANKEY:  No.  In fact, he even has
16     Mr. Fleischman's cell phone number, and they text
17     sometimes too; so there's been no issues with our office.
18          THE COURT:  Okay.  Mr. Dubray, I'm going to
19     continue bond.  We'll give you a sentencing date here.
20          MR. HANKEY:  Just for the Court's information, we
21     do plan on, as part of our recommendation, getting
22     Dr. Benson to come up and testify and doing -- I know the
23     State is going to do an evaluation.  We were going to get,
24     I guess, maybe another evaluation from Dr. Benson.
25          And I know there's going to be multiple witnesses

1    Mr. Dubray would like to call.  And so maybe a half day,

2    if we could get that, and just so we have plenty of time.

3    I don't know if the State is going to be having any

4    witnesses testify and -- or at least maybe two hours.

5         And if we could get some time to get the

6    evaluation from Dr. Benson completed, and then give her

7    time to get up here to testify.  That would be what we had

8    planned on presenting at sentencing.

9         THE COURT:  How about October 4th, the morning?

10   We could set it at 9:00.

11        MR. MCCARTHY:  That works for the State, Your

12   Honor.

13        MR. HANKEY:  Yes, that would be fine, Your Honor.

14        THE COURT:  Okay.  What I will need is Mr. Dubray

15   to go to the Parole and Probation office today so they can

16   make arrangements for that presentence investigation.

17   Also that psychological evaluation should be scheduled

18   through Northeast before he leaves town, because he'll

19   have to make arrangements to get back here for that.

20        MR. HANKEY:  Okay.  We'll make sure that gets

21   done today, Your Honor.

22        THE COURT:  Okay.  And, then, obviously it takes

23   a while to get all those reports done.  So maybe you can

24   go ahead and start working with Dr. Benson to get that all

25   arranged.

1          MR. HANKEY:  Okay.  Will do.

2          THE COURT:  Does the State have anything further

3    at this time?

4          MR. MCCARTHY:  No, Your Honor.  Thank you.

5          THE COURT:  Or Mr. Hankey?

6          MR. HANKEY:  No, Your Honor.  Thank you.

7          THE COURT:  Okay.  And, then, Mr. Dubray, just so

8    you know, I have accepted the guilty plea; so we'll call

9    off the jury, and it means you can't decide at

10   5:00 o'clock today you want to go to a trial.  Okay?  It's

11   done now.  You understand that?

12         NATHAN DUBRAY:  Yes, Your Honor.

13         THE COURT:  Any questions at all about that?

14         NATHAN DUBRAY:  No, ma'am.

15         THE COURT:  Okay.  Then, we will see everyone

16   October 4th at 9:00 a.m.  Thank you.

17         MR. MCCARTHY:  Thanks, Judge.

18         (The proceedings were concluded at 10:31 a.m.)

19

20

21

22

23

24

25

1          <u>CERTIFICATE OF COURT REPORTER</u>

2

3     STATE OF NORTH DAKOTA )
                            ) ss.
4     COUNTY OF GRAND FORKS )

5

6          I, Marsha Allmaras, a duly appointed official

7     court reporter,

8          CERTIFY that I recorded in shorthand the

9     foregoing proceedings had and made of record at the time

10    and place indicated.

11         I FURTHER CERTIFY that the foregoing and attached

12    19 typewritten pages contain an accurate transcript of my

13    shorthand notes then and there taken.

14         Dated at Grand Forks, North Dakota, this 8th

15    day of October, 2014.

16

17                     *Marsha Allmaras*

18         --------------------------
                   Marsha Allmaras
19            Official Court Reporter

20

21

22

23    THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT
      APPLY TO THE REPRODUCTION OF THE SAME BY ANY MEANS,
      UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE
24    CERTIFYING COURT REPORTER.

25

State of North Dakota

Grand Forks County

District Court

Northeast Central Judicial District

## State of North Dakota vs. Nathan G Dubray

Count: 1   Amended Criminal Judgment

Count: 2   Criminal Judgment

Case Number: 18-2012-CR-01960

| CURRENT DEFENDANT INFORMATION | | |
|---|---|---|
| Known Address:   314 State St<br>Grand Forks, ND 58201 | Correspondence Address: | 314 State St<br>Grand Forks, ND 58201 |
| DOB: 09/12/1985 | | |

| CASE CHARGES | | | |
|---|---|---|---|
| Ct | Statute | Description | Degree |
| 1 | 12.1-20-03 | Gross Sexual Imposition | Felony AA |
| 2 | 12.1-20-03 | Gross Sexual Imposition | Felony AA |

FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

JAN - 3 2014

REBECCA ABSEY, CLERK
BY _____
Deputy

### TERMS OF DISPOSITION:  COUNT 1

Disposition Date: 10/04/2013

Offense Information:

| Ct | Statute | Description | Degree | Offense Disposition |
|---|---|---|---|---|
| 1 | 12.1-20-03 | Gross Sexual Imposition | Felony AA | Pled Guilty |

Disposition Details:

Commitments:

| Commited to: Department of Corrections and Rehabilitation<br>Term: 30 years<br>Suspended: 15 years<br>Probation: 10 years |
|---|

Fees:

| Criminal Administration Fee | $900.00 | Waived |
|---|---|---|
| Defense/Facility Admin Fee | $100.00 | Waived |

Order of the Court and Conditions:

Defendant is placed under the following conditions:

| Conditions of Probation | Location | End Date | Comment |
|---|---|---|---|
| Notify Court of Address Change | | | |
| Violate No Criminal Laws | | | |
| Restitution | | | Restitution in the amount of $5,265.53 at this time, with restitution being left open through the period of supervised probation, to be paid in full prior to the expiration of supervised probation. |

*Additional Conditions and Order of the Court.*

Credit for time served from September 25, 2012 through October 9, 2012.

No contact with the victim or family members.

Defendant will successfully complete the sex offender treatment program before being released.



EXHIBIT
5

Defendant is placed on supervised probation for a period of 10 years from the later of the following dates: (a) the order imposing probation; (b) release from incarceration; or, (c) termination of Defendant's parole. The Defendant will report to a Parole/Probation Officer with the Parole and Probation Division of the North Dakota Department of Corrections and Rehabilitation. The probationary conditions are either set forth below or in an attached Appendix A or Certificate to this Criminal Judgment.

### TERMS OF DISPOSITION:  COUNT 2

**Disposition Date:  10/04/2013**

**Offense Information:**

| Ct | Statute | Description | Degree | Offense Disposition |
|----|---------|-------------|--------|---------------------|
| 2 | 12.1-20-03 | Gross Sexual Imposition | Felony AA | Pled Guilty |

**Disposition Details:**

**Commitments:**

Committed to: Department of Corrections and Rehabilitation
Term: 30 years
Suspended: 15 years
Probation: 10 years
Concurrent with Case #: Count 1

**Fees:**

**Order of the Court and Conditions:**

Defendant is placed under the following conditions:

| Conditions of Probation | Location | End Date | Comment |
|-------------------------|----------|----------|---------|
| Notify Court of Address Change | | | |
| Violate No Criminal Laws | | | |

*Additional Conditions and Order of the Court.*
Credit for time served from September 25, 2012 through October 9, 2012.
No contact with the victim or family members.
Defendant will successfully complete the sex offender treatment program before being released.
Defendant is placed on supervised probation for a period of 10 years from the later of the following dates: (a) the order imposing probation; (b) release from incarceration; or, (c) termination of Defendant's parole. The Defendant will report to a Parole/Probation Officer with the Parole and Probation Division of the North Dakota Department of Corrections and Rehabilitation. The probationary conditions are either set forth below or in an attached Appendix A or Certificate to this Criminal Judgment.

**Total amount owed:**

| Assessed | Waived | Suspended | Total |
|----------|--------|-----------|-------|
| $1,000.00 | $1,000.00 | $0.00 | $0.00 |

Hon. Debbie Kleven

_____
Defendant's Signature

Disposition pronounced on October 04, 2013 by District Court Judge

Clerk of Court:  Rebecca Absey

701-787-2700

_____
Date

*If you have questions regarding the terms of your disposition, please contact your attorney, your probation agent or Clerk of Court's Office.  All payments to be made to the Clerk of Court at:  Grand Forks County District Court, 124 S. 4TH STREET, PO BOX 5979, GRAND FORKS, ND 58206.*

*The Clerk of District Court's Office accepts Visa, MasterCard, or Discover Cards in person or via telephone. Payments can also be made online at http://www.ndcourts.gov/publicsearch*



**JUDGMENT AND COMMITMENT CONDITIONS**
NORTH DAKOTA DEPARTMENT OF CORRECTIONS AND REHABILITATION
FIELD SERVICES DIVISION
SFN 14671 (Rev. 6-13)

## RECOMMENDED CONDITIONS FOR SENTENCE TO PROBATION, DEFERRED OR SUSPENDED SENTENCE IN THE CASE OF

### State of North Dakota v. Nathan G. Dubray

### Criminal Case No. 18-2012-CR-01960 -- Grand Forks County

### By Order of the Court:

1. It is a violation of probation for you to violate any federal, tribal, state, county or municipal criminal law or ordinance during the period of probation.

2. It is a violation of probation for you to own, purchase, borrow, possess, use or carry any type of firearm, destructive device or dangerous weapon while on probation.

3. It is a violation of probation for you to willfully defraud a urine test administered as a condition of probation.

4. You shall continue your present employment or seek and maintain suitable employment; you may pursue a vocational or educational course of study that will lead to future or better employment.

5. It is a violation of probation for you to use or possess any alcoholic beverage, or to enter any liquor, beer or wine establishment during the period of time you are under probation supervision, unless otherwise authorized by your parole/probation officer.

6. It is a violation of probation for you to use or possess any non-prescribed controlled substances while on probation supervision. It is a violation of probation to knowingly associate with users or traffickers in narcotics, marijuana, or other controlled substances.

7. You are not to associate with any known felons without prior permission from your parole/probation officer.

8. It is a violation of probation for you to possess or use any type of surveillance equipment such as audio, video, and motion detectors, scanners or any type of surveillance or counter surveillance equipment without prior written permission from your parole/probation officer.

9. You shall inform your parole/probation officer in the manner that they direct of any changes in your place of residence and employment, and other pertinent activities. You shall answer truthfully all reasonable inquiries by the parole/probation officer and report to them as directed. This information must be furnished to the parole/probation officer by written report, telephone, or a personal visit to their office. Your parole/probation officer may visit your residence or place of employment at reasonable hours. You shall report within twenty-four hours to the **Grand Forks Parole/Probation Office, 311 South 4th Street, #101, Grand Forks, ND 58201, (701) 795-3873.**

1

10. You shall submit your person, place of residence and vehicle, or any other property to which you may have access, to search and seizure at any time of day or night by a parole/probation officer, with or without a search warrant.

11. You shall not leave the State of North Dakota without prior permission from your probation officer.

12. You shall waive extradition to the State of North Dakota from any jurisdiction in or outside the United States where you may be found, and you also agree not to contest any effort by any jurisdiction to return you to the State of North Dakota while this probation is in effect.

13. You shall support your dependents.

14. You shall regularly attend weekly self-help groups such as Alcoholic Anonymous/Narcotics Anonymous, Sex Addicts Anonymous, Sexaholics Anonymous as recommended by your probation officer.

15. You shall submit to a medical examination or other reasonable testing to include breath, blood, saliva, or urine samples for the purpose of determining the use of alcohol or controlled substances whenever requested by any parole/probation officer. It is a violation of probation for you to use any adulterants that may affect the results of a breath, blood, saliva or urine test.

16. You shall receive a chemical dependency/addiction evaluation and comply with all treatment recommendations, subject to your right to a hearing before the court if you disagree with any treatment recommendation.

    a. You shall pay restitution in an initial amount to be determined with 90 days plus restitution for any ongoing treatment or therapy for the minor victim.

17. You shall pay a supervision fee in the amount of $55.00 each month to the Division of Field Services, as required by N.D.C.C. § 12.1-32-07 (2).

18. You shall pay the amount of $50.00 to the North Dakota Division of Parole and Probation, also known as the Division of Field Services, as required by N.D.C.C § 12.1-32-02 (10) and (11), for preparation of the pre-sentence investigation report.

19. You shall undergo various agreed-to community constraints as intermediate measures of the Department of Corrections and Rehabilitation to avoid revocation under N.D.C.C § 12.1-32-07 (3).

20. You shall submit to fingerprinting at the direction of your parole/probation officer.

21. It is a violation of your probation for you to telephone or write to the victim(s) or her family members, or contact the victim(s) or her family members through third parties or be within 100 yards of the victim(s) and her family members without written permission of your parole/probation officer.

22. It is a violation of your probation for you to enter onto the premises, travel past, or loiter near where the victim(s) or her family members reside without written permission of your parole/probation officer.

2

23. You shall provide a sample of blood or other body fluid for DNA law enforcement identification purposes and inclusion in law enforcement identification databases as required by N.D.C.C. ch. 31-13. You shall pay the cost of the collection and processing of the DNA sample.

24. You shall attend, participate in, and successfully complete a cognitive restructuring program at the request of your probation officer.

25. You shall submit to placement on an electronic surveillance system, including Global Positioning System (GPS), Electronic Monitoring Surveillance (EMS), or if it is a condition of your probation supervision that you not consume alcohol, Alcohol Monitoring Surveillance (AMS). It is a violation of this condition to tamper with, damage, destroy, or remove any GPS, EMS, or AMS equipment, including transmitters, bracelets, modems, cellular phones, cables, or other peripheral and supporting equipment, or to fail to be within the range of the GPS, EMS, or AMS Equipment for monitoring, reporting or surveillance purposes. You shall be responsible for reimbursement to the ND DOCR for the actual cost of replacement of any tampered with, damaged, destroyed, or lost or misplaced GPS, EMS, or AMS Equipment.

### The Following are Sex Offender Conditions:

26. You shall attend, participate in, cooperate with and successfully follow and complete all sex offender treatment program rules and requirements and admit responsibility for your offense(s) as part of the treatment requirements. You shall attend aftercare if recommended by the parole/probation officer or treatment staff.

27. You shall register your residential address, employment or school in accordance with NDCC Section 12.1-32-15 with the law enforcement in the county or city of your intended residence as a sex offender or a felony offender against children within three (3) days of the date of the criminal judgment or your release from physical custody. If you change your name, school, residential address or employment, you shall inform the law enforcement agency with whom you are registered within ten (10) days before the change. If you change your school, residential address, or place of employment, you shall also register at the law enforcement agency having jurisdiction of the new place of residence, school, or employment within three (3) days after the change. If you change your name, vehicle information, email address, or online name, you must notify the registering law enforcement agency within three (3) days of the effective date of that change.

28. You shall not initiate, establish or maintain contact, directly or indirectly, with any child under the age of 18, or attempt to do so, except under circumstances approved in advance and in writing by your parole/probation officer.

29. You may only reside at a place of residence approved by your parole/probation officer. You may not move from your place of residence or sleep elsewhere overnight without your parole/probation officer's knowledge and permission and those with whom you reside must know that you are a sex offender.

30. You shall maintain employment at only such places as are approved by your parole/probation officer. It is a violation of probation for you to work outside the State of North Dakota or leave the State of North Dakota without permission under the Interstate Compact for the Supervision of Adult Offenders.

31. It is a violation of your probation for you to go to or loiter near schoolyards, parks, playgrounds, arcades, or other places primarily used or visited by minors.

32. It is a violation of your probation for you to obtain employment with any agency or place of business that provides services for the care or custody of minors and you may not operate a business that provides such services without written permission of your parole/probation officer.

33. It is a violation of your probation for you to purchase, possess, or use sexually stimulating materials of any kind or to use 900 telephone numbers.

34. It is a violation of your probation for you to subscribe to any Internet service provider, by modem, LAN, DSL or any other manner. You may not use another person's Internet or use Internet through any commercial venue until and unless approved in writing by your parole/probation officer.

35. It is a violation of your probation for you to possess children's items, including, but not limited to, children's clothing, toys, games, pictures and books, without written permission from your parole/probation officer.

36. It is a violation of your probation for you to date or socialize with anybody who has children under the age of 18 without written permission of your parole/probation officer.

37. You shall notify your parole/probation officer of any new and existing romantic or sexual relationships in which you may be involved.

38. You shall submit to any program of psychiatric, psychological or physiological assessment approved by the court.

39. You shall be financially responsible for all costs related to assessments, polygraphs and any treatment programming ordered by the court.

Dated: October 4, 2013

By the Court,

Debbie Kleven
District Judge

The above conditions of probation have been read and explained to me and I fully understand each one. I shall follow the conditions that the Court has listed or checked; and I understand that failure to follow any one or more of those conditions may result in a revocation of probation and that the Court may re-sentence me to any sentence

4

that was available to the Court at the time of the initial sentencing.  I acknowledge receipt of a copy of the Judgment.

Dated this __4__ day of __October__ , 20 __13__

_____
Probationer

The probation conditions have been read and explained to my client by the Court.  I attest that my client has stated that he/she understands each one of the court ordered probation conditions.

Dated this __4__ day of __Ocober__ , 20 __13__ .

_____
Defense Attorney

Original to Court file

____1  Certified copy to Warden/Superintendent of NDSP, TRCU, MRCC -- if imprisonment is ordered

____1  Certified copy to Sheriff/Jail Administrator -- if county imprisonment is ordered

____1  Copy to Defendant

____1  Copy to State's Attorney

____1  Copy to Local Probation Officer -- if on supervised probation

5

STATE OF NORTH DAKOTA                    IN DISTRICT COURT

COUNTY OF GRAND FORKS         NORTHEAST CENTRAL JUDICIAL DISTRICT

State of North Dakota,          )
                                )
                Plaintiff,      )
                                )
        v.                      )   Case No. 18-2012-CR-01960
                                )
Nathan Gene Dubray,             )
                                )
                Defendant.      )

                T R A N S C R I P T

                        of

              P R O C E E D I N G S

    Sentencing        October 4, 2013        9:12 A.M.

    TAKEN AT:     Grand Forks County Courthouse
                  Grand Forks, North Dakota

    BEFORE:     HONORABLE DEBBIE G. KLEVEN

    --------------------------------------------------------

                A P P E A R A N C E S

    FOR THE STATE:        MEREDITH LARSON
                          State's Attorney's Office
                          P.O. Box 5607
                          Grand Forks, ND  58206-5607

    FOR THE DEFENDANT:   BLAKE D. HANKEY
                         Attorney at Law
                         405 Bruce Ave., Ste 100
                         Grand Forks, ND  58201

                         ADAM FLEISCHMAN
                         Attorney at Law
                         405 Bruce Ave., Ste 100
                         Grand Forks, ND  58201

**EXHIBIT 6**
tabbies

                    Marsha Allmaras                        1
                Registered Professional Reporter
                  Grand Forks, North Dakota

```
 1    WHEREUPON,

 2         the following proceedings were had, to-wit:

 3              THE COURT:  We'll go ahead and go on the record

 4    in the case of State of North Dakota versus Nathan Dubray,

 5    Case No. 18-2012-CR-1960.  The record should reflect the

 6    State is represented by Assistant State's Attorney

 7    Meredith Larson, and Mr. Dubray is present and is

 8    represented by Attorney Adam Fleischman.

 9              And I believe we have the mother of the victim

10    participating by phone.  And can I just have you state

11    your name, ma'am.

12              MS. W.          :  S.W.                        .

13              THE COURT:  Okay.  And, Ms. W.        , I know that

14    we're -- I believe the State had asked that you

15    participate by phone, and so I don't know if they'll be

16    calling on you to make a statement of any kind.

17              So I'll just ask that if you can't hear anyone,

18    to just indicate so.  Everybody that speaks will need to

19    speak directly into the microphone so that she should be

20    able to hear us.  Okay?

21              MS. W.        :  Okay.

22              THE COURT:  I just have one more matter to take

23    care of here first.

24              (Pause in proceedings.)

25              Okay.  Is the State ready to proceed to
```

1    sentencing in this matter?

2           MS. LARSON:  I am, Your Honor.  And just for the

3    record, if I could also note that the guardian ad litem is

4    here today.

5           THE COURT:  Thank you.

6           MS. LARSON:  And so is the stepmother of the

7    victim.

8           THE COURT:  Okay.

9           MS. LARSON:  As well as the crime victim witness

10   advocate, Peggy love.

11          THE COURT:  Thank you.  I should have noted that.

12   I appreciate that.

13          And, Mr. Hankey, are you ready to proceed?

14          MR. HANKEY:  We're not, Your Honor.  I spoke with

15   Mr. Dubray this morning, and he informed me that he wanted

16   to withdraw the pleas that he had entered back in July.

17          I've looked at the rule.  It looks like

18   11(d)(B)(ii) covers, I guess, what he's asking for.

19          I believe that the Court has accepted his plea,

20   but he hasn't been sentenced; so he would need to show a

21   fair and just reason for the withdrawal.

22          And I guess that's kind of what his wishes are

23   and where he is -- where he is at as far as being prepared

24   for sentencing today.

25          I guess I've reviewed the PSI.  Mr. Dubray has

1   reviewed the PSI.  I planned on going forward today, but

2   like I said, Mr. Dubray informed me that he was wanting to

3   withdraw his plea.  We pulled the rule, and I believe what

4   we'd need to do is set it on for, I guess, a briefing

5   schedule.

6           THE COURT:  Okay.  Ms. Larson, do you have any

7   comment?

8           MS. LARSON:  Other than the State will be

9   objecting to that, Your Honor.  And I would like to

10  address the matter of bond as well.

11          THE COURT:  Okay.  You know, it's my intent --

12  and I'm well aware of the rule and the case of State

13  versus Kevin Moore that affirmed a decision of mine in

14  2005 or '06, I believe.

15          I will -- I'm going to proceed to sentencing

16  today.  I think that we owe that to the victim to bring

17  this to an end, because it's just drug out.

18          The defendant can file the motion, brief it,

19  attach affidavits, and we'll consider it, but that will

20  give the State a chance to respond.

21          But it is my intent to just proceed to sentencing

22  today to address the matter, and, then, if I would allow

23  him to withdraw his guilty plea -- but checking my notes

24  here, there was a factual basis established back on

25  July 15th, open guilty plea to both counts.  I determined

1     the plea was made freely and voluntarily.

2          So I guess if he can show why a fair and just

3     reason for the withdrawal at a later time, I'll allow him

4     to, but we'll proceed to sentencing.

5          MR. HANKEY:  Okay.  And if I could address one

6     thing, and maybe we just need to have a quick hearing

7     before we get to the sentencing.  Mr. Dubray indicated,

8     when I asked him that question this morning, that he had

9     felt pressured by Mr. Fleischman and myself to go forward.

10          And so I don't know that I feel -- unless we

11     address that issue first, that I feel comfortable

12     proceeding to sentencing, if the grounds for his

13     withdrawal are the fact that Mr. Fleischman and I had

14     somehow pressured him into entering the plea, and then I

15     go forward with the sentencing.

16          So maybe we could just try to address that issue,

17     I guess, before we proceed to sentencing.

18          THE COURT:  Okay.

19          MR. HANKEY:  I don't know if the Court

20     understands the predicament that I have but...

21          THE COURT:  Mr. Dubray, you clearly told me you

22     made this decision freely and voluntarily.

23          NATHAN DUBRAY:  Yes, ma'am.

24          THE COURT:  You told me nobody made any threats

25     or promises to you.

1               NATHAN DUBRAY:  Nobody did.

2               THE COURT:  Okay.  So, then, what's the issue?

3               NATHAN DUBRAY:  I feel I owe an explanation to my

4   children; so I want to take it to trial to prove to them

5   that I didn't do this.

6               THE COURT:  Okay.  State have any further

7   response?

8               MS. LARSON:  No, Your Honor.

9               THE COURT:  I'm going to deny the request.  We're

10  proceeding today.  I think your attorneys are quite

11  capable of arguing what the appropriate sentence is, and

12  when we're done with this, you can file whatever motion

13  you want.

14           But the victim does deserve some conclusion to

15  this case.  And I'm thinking at the time of the offense

16  the victim was eight years old.  And we've already been

17  waiting since July 15th to bring this to a conclusion.

18           Part of the issue here was there was going to be

19  an independent psychological evaluation done, and you

20  didn't show up at Dr. Benson's office; correct?

21              NATHAN DUBRAY:  Yeah, but they had told me that

22  that was, you know, not, like -- as -- I can't think of

23  the word, but they said that --

24              MS. W.█████:  Your Honor, I can't hear him.

25              THE COURT:  Oh.  Okay.  I'm sorry.  Go ahead.

```
 1    You'll need to speak directly -- pull that right up to

 2    you, Mr. Dubray.

 3            Okay.  What was the issue with the --

 4    Dr. Benson's office?

 5            NATHAN DUBRAY:  I thought I only had to make the

 6    appointment with Andy in Fargo.  I didn't know it was

 7    mandatory for me to meet with Dr. Benson.

 8            THE COURT:  Well, it wasn't.  I thought that was

 9    your request.  It isn't mandatory.  So I just thought

10    that's what you wanted to do.

11            NATHAN DUBRAY:  Well, I had met with Andy first

12    and --

13            THE COURT:  Okay.

14            NATHAN DUBRAY:  -- I thought it was the same

15    thing.

16            THE COURT:  Okay.  I just thought you wanted your

17    own independent evaluation.  But I'm -- we do have the

18    evaluation we need.  Okay.  So you don't have to go to

19    Dr. Benson or another person.  I just thought you had

20    requested that.

21            NATHAN DUBRAY:  I understand.

22            THE COURT:  Okay.  We're going to go ahead and

23    proceed to sentencing today.

24            And I will ask, Mr. Dubray, have you had a chance

25    to go through this presentence investigation with your
```

1 attorney?

2    NATHAN DUBRAY:  Yes, Your Honor.

3    THE COURT:  And have -- I'll need you to use the

4 microphone.

5    NATHAN DUBRAY:  Yes, Your Honor.

6    THE COURT:  Okay.  And have you had a chance to

7 discuss the recommendation that your attorney intends to

8 make in this case with your attorney?

9    NATHAN DUBRAY:  Yes, Your Honor.

10    THE COURT:  Is there anything that you have not

11 been able to discuss with your attorney concerning the

12 sentencing aspect of this case?

13    NATHAN DUBRAY:  No.

14    THE COURT:  So are you ready to proceed to

15 sentencing today with the understanding you can file

16 whatever motions you need after today?

17    NATHAN DUBRAY:  Yes, Your Honor.

18    THE COURT:  Okay.  Does the State have any

19 additions or corrections to the presentence investigation?

20    MS. LARSON:  No, Your Honor.

21    And just as a procedural matter, is it okay if we

22 sit so we can speak into the microphone?

23    THE COURT:  I would ask everybody just to remain

24 seated and use the microphone.  Thank you.

25    Mr. Hankey, you've had a chance to go through the

1    presentence investigation with Mr. Dubray?

2            MR. HANKEY:  Yes, Your Honor.

3            THE COURT:  And do you have any additions or

4    corrections?

5            MR. HANKEY:  We don't.

6            THE COURT:  Okay.  And, Mr. Dubray, do you have

7    any additions or corrections that you would like to make

8    to the presentence investigation?

9            NATHAN DUBRAY:  No, Your Honor.

10            THE COURT:  Okay.  Then, does the State wish to

11    present any testimony at this time?

12            MS. LARSON:  No, Your Honor.

13            THE COURT:  Mr. Hankey, do you wish to present

14    any testimony or call any witnesses?

15            MR. HANKEY:  No, Your Honor, just an argument.

16            THE COURT:  Okay.  Then, let's go ahead and we'll

17    hear from the State, and then we'll hear from Mr. Hankey,

18    and then Mr. Dubray can add anything he would like to add

19    too.

20            Go ahead, Ms. Larson.

21            MS. LARSON:  Thank you, Your Honor.  In

22    preparation for the hearing today, Your Honor, the Court

23    considered a couple of things.  First of all -- or the

24    State did, considered a few things.

25            First of all, the State considered the factors

1    that are set forth in 12.1-32-04, and I have some

2    information I'd like to briefly go through.

3          But, secondly, we also considered prior sentences

4    in similar cases.

5          With respect to the first matter the State

6    considered, we looked at the factors set forth in

7    12.1-32-04.  Your Honor, with respect to the first factor,

8    the defendant -- whether the defendant caused significant

9    harm.  In this case, as the Court previously noted, the

10   child was an eight-year-old little girl, and the defendant

11   certainly caused significant harm to her.

12         This event in this child's life set off a chain

13   reaction that is almost uncomparable to other cases that

14   I've had.  Her life was completely disrupted.  She ended

15   up moving.  Her mom lost custody.

16         It's a very, very traumatic episode, not only in

17   the sexual act alone but also in her personal life in

18   almost every aspect.

19         For an eight-year-old child, that -- I don't

20   think saying "significant harm" or "serious harm" is

21   stating it enough.

22         Factor No. 2 is whether the defendant planned or

23   expected that his criminal conduct will cause or threaten

24   serious harm to another person.  I think even the

25   defendant could acknowledge that, based on the reports

1   that we have and the interview that he did with law

2   enforcement.  The defendant indicated repeatedly the

3   effect this would have on a child and that children of

4   this age typically don't make this type of thing up.

5           Further, from the presentence investigation, it

6   appears that this is at least the third time the defendant

7   has been alleged to have committed a similar type event.

8           And so whether or not he's been convicted of such

9   previous episodes, at the very least, the defendant knows

10   the significant impact these types of allegations have and

11   the significant harm that can be caused to a child who's

12   been molested.

13           The presentence investigation also indicates the

14   defendant acknowledged having had done some previous type

15   of sex offender therapy related to a previous allegation,

16   and so that again would lead the Court to believe, at

17   least from the State's perspective, that the defendant

18   certainly would expect that type of behavior causes harm

19   to a child.

20           Number 3, the defendant did not act under strong

21   provocation.

22           Four, there was no grounds to justify or excuse

23   his behavior legally.

24           No. 5, again, it just doesn't apply in a case of

25   a child.  A child cannot induce or facilitate such

1    conduct.

2         No. 6, I think it's important to note always in

3    these cases, but especially in this case, there's nothing

4    the defendant can do to make reparation or restitution in

5    this case.

6         This child was an eight-year-old girl who was

7    innocent at the time, and in just one moment -- or two

8    moments, in this case -- the defendant took that away, and

9    that can never be returned to her.

10        No. 7, whether the defendant has any prior

11   history of delinquency or criminal activity or has led a

12   law-abiding life for a substantial period of time.  The

13   Court has his prior criminal history.  While it's not

14   significant, I think there are some concerning aspects of

15   the presentence investigation regarding his previous

16   conduct and whether it was, in fact, law-abiding.

17        No. 8, whether the circumstances are unlikely to

18   recur.  This is the troubling part of this case.  The

19   defendant entered an Alford plea.  First all, you do have

20   information that the defendant has been alleged to have

21   committed prior events like this one.

22        And when you combine that with the fact that the

23   defendant will not admit fully what he did to this child,

24   it's impossible to state that the defendant won't do it

25   again.  A person can't indicate that they won't perpetrate

1        when they won't admit that they have previously.

2                Again, it's also important to note that the

3        defendant claims he was in a blackout state during this

4        episode.  However, when you look at the presentence

5        investigation and the information he provided to the

6        evaluator, the defendant provided information about when

7        law enforcement came to the door that evening, and it is

8        very important in the timeline to note that the child was

9        molested right at that time period.

10               So, for some reason, the defendant can remember

11       everything that happened except the relevant portion of

12       being -- molesting that child.

13               Further, the child's mother indicates

14       unequivocally that the defendant did have a recollection

15       and was not blacked out when she was socializing with him

16       that evening.

17               No. 9, it pairs into No. 8, whether his

18       character, history, or attitude indicate he's unlikely to

19       commit another crime.  But I would also ask you to

20       consider his cooperation with not only his own expert but

21       the State's presentence investigator.  The defendant

22       refused to cooperate with them.

23               Number 10, the State's position based on some of

24       that uncooperativeness with the PSI writer and the

25       evaluator's position about his appropriateness for

1    probation is that the defendant is not particularly likely

2    to respond affirmatively to probation.

3           Eleven does not apply in this case and neither

4    does twelve.

5           Thirteen, whether the defendant abused the

6    position -- a public position of responsibility or trust.

7    I think it's very clear in the presentence investigation

8    what the relationship was with this family and the

9    defendant.

10           This child viewed the defendant as her uncle.

11    She held him out in a position of trust very much so, and

12    so did the mother.  It was very apparent to the State,

13    during witness preparation, that the child loved the

14    defendant and probably still does.  And it's a very -- it

15    makes this case even more sad having -- the defendant had

16    violated that relationship.

17           Number 14, whether the defendant cooperated with

18    law enforcement.  Again, the defendant did do an

19    interview.  He did make incriminating statements, but it

20    has been limited throughout in that the defendant denies

21    recollection of the one or two moments in time that are

22    relevant to this case.  And that continued -- his behavior

23    continued similarly with the presentence investigation.

24           The second aspect that the State considered when

25    formulating a sentencing recommendation is previous cases.

1     And I believe the recommendation the State is going to

2     make is consistent with previous cases, which I could

3     detail for the Court, but many of them you've presided

4     over, Your Honor.  And the State does have the benefit of

5     having, really, prosecuted these cases exclusively for

6     multiple years.

7           And so I believe the recommendation of 30 years

8     at the North Dakota Department of Corrections with

9     15 years suspended for ten years; 10 years of supervised

10    probation; no contact with the victim or her mother; sex

11    offender treatment and follow through with any

12    recommendations; and registration pursuant to 12.1-32-15

13    is an appropriate sentence recommendation, Your Honor.

14          I also would like to request restitution.  There

15    is continual accruing restitution because the child is in

16    therapy.  Further, the stepmom drove here and stayed

17    overnight last night so she could be present today.

18          And I don't have that information, so I guess I

19    would ask if the Court would perhaps consider giving me 30

20    or 60 days just to make sure we have all our ducks in a

21    row on restitution and maybe provide some guidance for me

22    as to how to address the continual restitution occurring

23    for treatment.  I know we've done that in previous

24    judgments.

25          He really does not have credit, Your Honor.  He

1    has credit; I mean not significant.  It looks like he has

2    credit from September 25th, 2012, to October 9th of 2012.

3              THE COURT:  Thank you.

4              Mr. Hankey?

5              MR. HANKEY:  Thank you, Your Honor.  In getting

6    to know Mr. Dubray and taking a look at his upbringing and

7    family history, I mean, it really starts out as a tragic

8    situation.  Never knows his father.  Mother dies in a car

9    accident when he was two.  Then he goes to live with an

10   aunt who dies of cancer.  Anybody who's ever been close to

11   him has committed suicide, died in some way.

12             Then he turns to addiction.  And I take a look at

13   this case, and I guess it's kind of a -- the State's

14   position is that Mr. Dubray knew what was going on and was

15   not in a blackout state.  It's certainly been our position

16   all along that he was in a blackout state.  That's why we

17   did the Alford pleas and proceeded that way.

18             Certainly, reading Ms. W.'s███████ letter, which

19   I'm sure the Court has, I mean, she certainly does not

20   have that belief or opinion.

21             But I will say that Mr. Dubray did plead guilty.

22   The Court went through a full factual basis, went through

23   an understanding of his rights.  And Mr. Dubray did not

24   and is not making this victim go through the process of

25   trial.

1           I take a look at his criminal history, and it is

2     very minor:   fleeing police back when he was a juvenile;

3     and we have a DUI in 2009; controlled substance,

4     marijuana, in 2011; DUS 2011; and violation of probation

5     for marijuana back in 2011.  And that's it.

6           And then, all of a sudden, now we jump up to two

7     double A felonies.  So there is a very limited or minor

8     criminal history, which I think is important.

9           I would note that he did graduate from high

10    school.  Did some secondary education.  He went to Brown

11    University for video game design.  Went to University of

12    North Dakota.  Was just one year away from graduating,

13    according to the PSI, when he was in a fight, that got --

14    that got kicked out.

15          He does have a history that he has worked and has

16    been employed.  I know as of recently he's had difficulty

17    finding a job, as the PSI reflects, because of the pending

18    charges.  Was -- and even tried to get into the Air Force,

19    but because of the eye exam he was not able to do so.

20          Taking a look at what his current wife has to

21    say, and that's kind of an interesting situation as the

22    PSI reflects.  But, you know, when he's not using

23    controlled substances, not having addiction issues, he's

24    loving, he's a good father, there's no particular issues

25    with Mr. Dubray.

1         And I think that it is not appropriate to look at

2    the prior events that there were no convictions for and

3    just allegations, saying that this is maybe the third time

4    around for Mr. Dubray.  There's been no prior convictions

5    of anything like this.

6         Certainly it's been our position all along that

7    Mr. Dubray was under the influence, and that's why he

8    committed the offense that he pled guilty to.  Not that

9    he's some kind of a deviant sexual predator but simply

10   that he more stems from intoxication and from controlled

11   substances than anything else.

12        In taking a look at the risk assessment, he does

13   come back more towards the moderate risk category.  I show

14   that it's either -- I don't -- I don't think it comes back

15   high in any of the evaluations.  Comes back as moderate.

16        Certainly, I do know that part of what the report

17   indicates was that Mr. Dubray was not accepting

18   responsibility.  He was kind of dinged for that.  And

19   because of the chemical usage, that was also a factor in

20   the risk assessment.

21        So if we could get rid of those two factors, I

22   think that, you know, it would obviously -- as the report

23   indicates, he would be a lower risk.

24        Taking a look at the factors that we have here, I

25   would certainly point out that factor No. 2, it's been our

1    position that the defendant did not plan or expect that --

2    to even do this criminal act.  It's been our position all

3    along that he was in a blackout state, and although he may

4    have pled guilty that these things happened, he didn't

5    plan for this conduct to happen, didn't seek this victim

6    out.

7           As the reports indicate, seems to be that he was

8    intoxicated that night and actually went into another --

9    another person's room that night too without knowing what

10   he was doing.  So I think there's certainly an issue with

11   his controlled substance usage and drinking and using

12   marijuana to the point where he blacks out.

13          Would point out that No. 7, although there is

14   history -- I'm looking at 12.1-32-04 -- although there is

15   a history, it is very limited.

16          Would point out that No. 14, the defendant did

17   cooperate.  I mean, he's denied this incident.  I mean, I

18   shouldn't say "denied."  He said he'd been in a blackout

19   state this whole time.  He's never wavered from that

20   position.

21          He did interview with law enforcement.  He did

22   say some very incriminating things in there, such as, you

23   know, a girl that age, being eight, would have no reason

24   to lie.  I mean, he does say very incriminating things in

25   that statement.

1    I believe that to be very candid.  I don't think
2    that he was trying to hide the ball and spin things.  I
3    think he was very honest and said some very hurtful
4    things, which very much limited our ability of going
5    forward to trial, part of the reason that we ended up
6    pleading guilty pursuant to the open plea.
7         The State is asking for restitution.  I would
8    point that out that that is a factor that would go to
9    his -- in his favor if he were to pay -- to pay
10   restitution.
11        With that, Your Honor, I would certainly ask that
12   the defendant be sentenced to, I guess, a much lesser term
13   than the State is asking for.  As I look at what the
14   statute is, I believe the minimum mandatories to be five
15   years.
16        I would ask that Mr. Dubray be sentenced to --
17   and we're fine with a lengthy period of probation and a
18   lengthy period of time hanging over his head -- but it
19   would be 30 years with 25 of those years suspended. He
20   would serve the minimum mandatory five years.
21        The ten years of supervised probation we wouldn't
22   object to.  We wouldn't object to no contact order.  The
23   registration is a requirement.  And we wouldn't object to
24   the restitution.
25        As I -- I guess as I look at this case,

```
 1        Mr. Dubray needs chemical dependency treatment more so

 2        than he needs anything else.  I think that stems from

 3        everything -- and all of his delinquent behavior stemmed

 4        from what happened on the night in question.  He's never

 5        wavered from the position that that is exactly what

 6        happened and why this incident happened.

 7               He said to me all along that he, you know,

 8        loved -- loved Ms. W.██████.  Thought of her as almost like

 9        a second mother.  Had loved this victim.  Would never

10        intentionally do anything to harm this child.  Somebody he

11        thinks about every day.  He regrets every day.

12               He's wavered back and forth, because in his

13        mind -- and he'll speak to this a little bit -- he never

14        thinks he ever could have done or committed an act like

15        this to someone like that that he loves.

16               And so he has very much struggled with this, as

17        Mr. Fleischman and I know, you know, in coming to the

18        realization of pleading guilty with the facts that we were

19        given and the cards that we were -- that we had to play.

20               And would ask for leniency from the Court, that

21        he's not a predatory offender, did not plan this criminal

22        conduct.  This was the result of intoxication, which he's

23        never wavered from -- and allow him a more lenient

24        sentence.  Thank you.

25               THE COURT:  Thank you.  Mr. Dubray, do you wish
```

1    to state anything?

2           THE DEFENDANT:  I can never see myself doing

3    something so heinous, and I'm sorry that M.██████ had to go

4    through all this.  That's all I have to say.

5           THE COURT:  Mr. Dubray, is there anything that

6    you think I should know that either you haven't told me or

7    your attorney has not stated today?

8           (An off-the-record discussion was held between

9    the defendant and his attorney.)

10          NATHAN DUBRAY:  No, Your Honor.

11          THE COURT:  Mr. Dubray, here's what I don't

12    understand is you want to blame your actions on alcohol

13    and drugs.  But you were in treatment in Red Wing,

14    Minnesota, and you were discharged for noncompliance.  Why

15    is that?

16          NATHAN DUBRAY:  I missed two sessions.  One was

17    to come down here for court, and the other one I just -- I

18    was extremely tired, and I slept through it, and they

19    kicked me out of the program.

20          THE COURT:  How can you be tired?  You weren't

21    working, were you?

22          NATHAN DUBRAY:  No, Your Honor.

23          THE COURT:  Then what were you tired from?

24          NATHAN DUBRAY:  I was just tired.  I didn't show

25    up.  I was irresponsible.

1          THE COURT:  Okay.  So this says you would show up
2     late for sessions and leave sessions early without
3     permission.  Staff also stated they suspecting -- they
4     suspected you were using, but they were not able to test
5     due to your lack of attendance.
6          And, then, Mr. Dubray, we have -- you continued
7     to drink until at least a month prior to the presentence
8     interview.  So if drinking would --
9          For one thing, I will tell you, I don't buy that
10    drinking or using drugs has anything to do with
11    perpetrating a sexual offense on a child.  I have dealt
12    with many drug and alcohol addicts in my life, and this
13    just isn't something that's common for them.
14         But even giving you the benefit of the doubt, why
15    would you continue to drink or terminate -- be terminated
16    from a treatment program when you were facing this kind of
17    issue?
18         NATHAN DUBRAY:  (No response.)
19         THE COURT:  Did you drink last night?
20         NATHAN DUBRAY:  No, Your Honor.
21         THE COURT:  Did you smoke pot last night?
22         NATHAN DUBRAY:  No, Your Honor.
23         THE COURT:  Did you use any illegal substances in
24    the last week?
25         NATHAN DUBRAY:  No.

```
 1              THE COURT:  When was the last time you drank
 2    alcohol?
 3              NATHAN DUBRAY:  June.
 4              THE COURT:  Okay.  So you're not under the
 5    influence of any kind of substance today?
 6              NATHAN DUBRAY:  No, Your Honor.
 7              THE COURT:  Are you on any prescription
 8    medication?
 9              NATHAN DUBRAY:  No.
10              THE COURT:  When is the last time you saw your
11    children?
12              NATHAN DUBRAY:  About four months ago.
13              THE COURT:  So your ex-wife -- and I -- pardon
14    me, I -- if it -- I don't know if you're divorced yet or
15    just have been separated, but she said that your contact
16    with the kids is not very frequent.  Is that correct?
17              NATHAN DUBRAY:  That's not my choice.  It's by
18    her choice.
19              THE COURT:  Okay.  That's not the -- how I took
20    it.  I took it that you just aren't very reliable.
21              NATHAN DUBRAY:  I try to see them.  I ask her if
22    I can see them, and sometimes she won't even let me talk
23    to them on the phone.
24              THE COURT:  Is that because of your current state
25    maybe at the time?
```

1      NATHAN DUBRAY:  I have no idea.

2      THE COURT:  So what were you drinking on the

3  night of this offense?

4      NATHAN DUBRAY:  Vodka and Jagermeister, some

5  beers.

6      THE COURT:  Is there anything more you would like

7  to state at this time?

8      NATHAN DUBRAY:  No, Your Honor.

9      THE COURT:  Ms. Larson, do you wish to add

10  anything more?

11      MS. LARSON:  No, Your Honor.

12      THE COURT:  Mr. Dubray, I have considered the

13  facts of this case, the presentence report, and also the

14  similar cases, and I am going to accept the State's

15  recommendation in this case, and it's considerably less

16  than what I have given in the last two, three -- I don't

17  remember -- gross sexuals.

18      But the reason why I'm doing that is because you

19  did accept responsibility, which we had this case well

20  prepared for trial with juror questionnaires and the rest.

21  But at least you accepted responsibility and did not make

22  the eight year old -- and I'm just saying "eight" because

23  that was how old she was at the time of the offense -- you

24  did not make her take the stand.

25      Obviously, if I would allow you to withdraw your

1   guilty plea and you're convicted and we'd gone to trial,

2   that sentence will be considerably different.

3          So what I'm going to do, Mr. Dubray, is impose a

4   sentence of 30 years with the North Dakota Department of

5   Corrections, with 15 years suspended for ten years and ten

6   years of supervised probation.  I will give you credit for

7   time served from September 25th through October 9th of

8   2012.

9          You'll be on supervised probation for two

10  years -- or for ten years, excuse me.  I'll go over those

11  conditions with you.  But they will provide that you are

12  to have no contact with the minor victim or her family

13  members.  So that will include any brothers or sisters, a

14  mother, any stepfather, the father, and any stepmother,

15  absolutely no contact.  And I don't want you to have any

16  other person contact them for you.

17         You will have to successfully complete sex

18  offender treatment before you're considered for release.

19         And, then, you will have to register as a sex

20  offender as required by North Dakota law.

21         I am going to leave -- I am going to order

22  restitution in an initial amount to be determined within

23  90 days.  But, then, restitution for any treatment for

24  that -- the minor child is ongoing, and that will continue

25  throughout the supervised probation period until this case

1    expires.

2           So that means the State is going to have to

3    frequently provide updates as to the restitution figures

4    so that we can enter judgments to include those amounts.

5           And in imposing this sentence, Mr. Dubray, I have

6    considered that your criminal conduct did cause serious,

7    irreparable harm to the eight-year-old child.  She will

8    never be the same.  She'll never be an innocent

9    eight-year-old child again, because she had to endure

10   things that an eight year old should never have to even

11   hear about, let alone experience.

12          I don't find that you planned this out, but I

13   certainly do find that you could expect that this would

14   result because of your conduct.  You yourself admitted

15   that children don't normally lie about these things.  You

16   have a prior history of allegations of sex offenses and

17   were even in a treatment program in the past.

18          There was no reason, no strong provocation for

19   this.  Even if I buy your story that you were in a

20   blackout state, that was self-induced intoxication and use

21   of chemicals.  There were no grounds at all that would

22   justify or excuse your conduct.  Obviously, an

23   eight-year-old child can do nothing to induce or

24   facilitate a crime.

25          And I find it unlikely that you can ever make any

1   monetary restitution based on your lack of stable

2   employment.  But you just simply can't make restitution or

3   reparation to a child for what happened to her in this

4   case.

5          I also already indicated, I considered your --

6   the prior allegations of sexual abuse that were disclosed

7   in the presentence report.  I do find that your conduct is

8   likely to recur unless you receive treatment and take this

9   seriously, and that's based on the prior history.  It's

10  also based on the fact that you tend to blame this all on

11  the use of alcohol and drugs.

12         Your history and attitude at this time indicate

13  that the crime is likely to occur again also.  You didn't

14  want to cooperate with the presentence investigator, and

15  now today you want to withdraw a guilty plea, even though

16  we clearly accept -- I clearly accepted your guilty plea

17  that was previously entered.

18         At this time I don't think you're going to

19  respond affirmatively to probationary treatment, and I

20  don't think you will until you will admit your offense and

21  accept responsibility for it.

22         I don't -- you're not elderly.  You're not in

23  poor health.

24         If this doesn't cause an undo hardship to you, it

25  certainly does to your children.  But from what I can

1   glean from the presentence investigation, you haven't been

2   too involved in your children's lives lately, even though

3   it's pretty clear your oldest son thinks the world of you.

4           I do find that you abused a position of

5   responsibility or trust just by the fact that -- alone

6   that you were an adult and this is a child, but also you

7   were a close family friend, and the child viewed you as an

8   uncle.

9           Now, with respect to No. 14, and I have

10  considered this, and that's why I'm giving you a lesser

11  sentence than I would normally give, is that I do feel at

12  this point, having accepted your guilty plea and

13  proceeding to sentencing, that you did cooperate when you

14  entered a guilty plea, and you cooperated by speaking to

15  law enforcement when they interviewed you at -- shortly

16  after this incident.

17          So we will also go over conditions of probation

18  at this time.  Do you want a copy to follow along?

19          MR. HANKEY:  We have the one from the PSI, Your

20  Honor.

21          THE COURT:  And I'll just probably -- actually,

22  it should be pretty much the same; so...

23          MR. HANKEY:  Okay.

24          THE COURT:  So, Mr. Dubray, Mr. Hankey and

25  Mr. Fleischman do have a copy of the conditions of

1    probation.  I'm going to go through those, if you want to

2    follow along.

3            Do you have those in front of you?

4            NATHAN DUBRAY:  Yes.

5            THE COURT:  While on probation you cannot violate

6    any federal, tribal, state, county, or municipal criminal

7    law or ordinance.  You cannot own, purchase, borrow,

8    possess, use, or carry any type of firearm, destructive

9    device, or dangerous weapon.

10           I'm going to stop right there and just go back

11   for the clerk's benefit.  On the mandatory fines and fees,

12   I'm going to waive those as well as -- are you privately

13   retained?

14           MR. HANKEY:  I am.

15           THE COURT:  Okay.  So allegation -- or the third

16   condition, we'll go back to that, is that you cannot

17   defraud a urine test administered as a condition of

18   probation.

19           And once you're released from incarceration, you

20   will have to seek or maintain suitable employment or

21   pursue a vocational or educational course of study that

22   will lead to future or better employment.

23           You cannot use or possess any alcoholic beverage

24   or enter any liquor, beer, or wine establishment unless

25   authorized by your probation officer.

1    You cannot use or possess any non-prescribed

2    controlled substances, and it is a violation of probation

3    for you to knowingly associate with users or traffickers

4    in controlled substances.

5    You cannot associate with any known felons

6    without prior permission from your probation officer.

7    And you cannot use or possess any surveillance or

8    countersurveillance equipment without written permission

9    from your probation officer.

10    You will have to keep your probation officer

11    informed in the manner they direct of any changes in your

12    place of residence, employment, and other pertinent

13    activities.

14    Your probation officer will have the right to

15    visit your residence or place of employment or -- and

16    place of employment at reasonable hours.

17    Within 24 hours of your release from the

18    Department of Corrections, whether you're paroled or

19    released to probation, you will have -- have to report to

20    the parole or probation office as they instruct.

21    You will submit your person, your place of

22    residence, your vehicle, and any other property to which

23    you may have access to search and seizure at any time of

24    the day or night by a probation officer, with or without a

25    search warrant.

1       You will not leave the state of North Dakota

2   without permission from your probation officer, and you

3   will waive extradition to the state of North Dakota from

4   any jurisdiction where you may be found.  And you will not

5   contest the efforts of the State of North Dakota to return

6   you to this jurisdiction while your probation is in

7   effect.

8       You will support your dependents.

9       And you will regularly attend weekly self-help

10  groups as recommended by your probation officer; so that

11  could be Alcoholics Anonymous, Narcotics Anonymous, or Sex

12  Addicts Anonymous, or sexual -- Sexaholics Anonymous.

13      You will submit to any medical examination or

14  other reasonable testing at the request of your probation

15  officer for the purpose of determining whether you are

16  using drugs or alcohol.  And it is a violation of

17  probation for you to use any adulterants that may affect

18  the results of that test.

19      You will receive a chemical dependency evaluation

20  and comply with all treatment recommendations, subject to

21  your right to a hearing before the Court if you disagree

22  with those recommendations.

23      You will have to pay restitution.  And the

24  restitution, again, the initial amount, will be determined

25  within 90 days, plus you'll be responsible for paying the

1  costs for ongoing treatment or therapy for the minor

2  victim.  And if at any time you disagree with the amounts,

3  you will have 30 days once you receive the requested

4  amount to request a hearing.

5          The Department of Corrections will have the right

6  to require you to pay a supervision fee of $55 per month

7  while on supervised probation, and they will also charge

8  you $50 for completion of the presentence investigation.

9          The Department of Corrections does have the

10  authority to impose community constraints as intermediate

11  measures to avoid revocation.

12          You will have to submit to fingerprinting at the

13  direction of your probation officer, and you will have to

14  provide a sample of DNA for inclusion in the DNA database.

15          Mr. Dubray, it is a violation of your probation

16  for you to telephone or write to the victim and her family

17  members or contact the victim's -- contact the victim or

18  her family members or be within 100 yards of any of them

19  without written permission from your probation officer.

20  And you cannot enter onto the premises, travel past, or

21  loiter near where the victim or her family members reside

22  without written permission from your probation officer.

23          You will participate in and successfully complete

24  a cognitive restructuring program if requested by your

25  probation officer.

1     And your probation officer will have the right to

2  place you on an electronic surveillance system at any

3  time.

4     And, then, you'll have to participate in and

5  successfully complete all sex offender treatment program

6  rules and requirements and admit responsibility for your

7  offense as part of the treatment requirements.  And you

8  will attend aftercare if recommended by your probation

9  officer or treatment staff.

10     You will have to register your residential

11  address, employment, or school in accordance with North

12  Dakota Century Code section 12.1-32-15 with the law

13  enforcement in the county or city of your intended

14  residence as a sex offender or a felony offender against

15  children within three days of the date of the criminal

16  judgment or your release from physical custody; so in this

17  case it will be your release from physical custody.

18     If you change your name, your school, your

19  residential address or employment, you shall inform the

20  law enforcement agency within -- with whom you are

21  registered within ten days before the change.  And if you

22  change your school, residential address, or place of

23  employment, you shall also register at the law enforcement

24  agency having jurisdiction of the new place of residence,

25  school, or employment within three days after the change.

1    If you change your name, your vehicle

2    information, your e-mail address or online name, you must

3    notify the registering law enforcement agency within three

4    days of the effective date of that change.

5    You shall not initiate, establish, or maintain

6    contact directly or indirectly with any child under the

7    age of 18 or attempt to do so, except under circumstances

8    approved in advance and in writing by your probation

9    officer.

10    You may only reside at a place of residence

11    approved by your parole or probation officer, and you may

12    not move from your place of residence or sleep elsewhere

13    overnight without your parole or probation officer's

14    knowledge and permission, and those with whom you reside

15    must know that you are a sex offender.

16    You shall maintain employment at only such places

17    as are approved by your parole or probation officer, and

18    it is a violation of probation for you to work outside the

19    state of North Dakota or leave the state of North Dakota

20    without permission under the interstate compact for the

21    supervision of adult offenders.

22    You cannot go to or loiter near schoolyards,

23    parks, playgrounds, arcades, or other places primarily

24    used or visited by minors.  It is a violation of probation

25    for you to obtain employment with any agency or place of

1  business that provides services for the care or custody of

2  minors, and you may not operate a business that provides

3  such services without written permission of your probation

4  officer.

5  You cannot purchase, possess, or use sexually

6  stimulating materials of any kind or use 900 telephone

7  numbers.

8  You cannot subscribe to any Internet service

9  provider by modem, land, DSL, or any other manner, and you

10  may not use another person's Internet through any

11  commercial venue until and unless approved in writing by

12  your probation officer.

13  You cannot possess children's items including,

14  but not limited to, children's clothing, toys, games,

15  pictures, and books without written permission from your

16  probation officer.

17  It is a violation of your probation for you to

18  date or socialize with anybody who has children under the

19  age of 18 without written permission of your probation

20  officer.

21  You will notify your probation officer of any new

22  and existing romantic or sexual relationship in which you

23  may be involved.

24  And you shall submit to any program of

25  psychiatric, psychological, or physiological assessment

1    approved by the Court.

2            You will be financially responsible for all costs

3    related to assessments, polygraphs, and treatment

4    programming ordered by the Court.

5            Ms. Larson, do you have anything further?

6            MS. LARSON:  No, Your Honor.

7            THE COURT:  Mr. Hankey?

8            MR. HANKEY:  No, Your Honor.

9            THE COURT:  Mr. Dubray, do you have any questions

10   at all?

11           NATHAN DUBRAY:  No.

12           THE COURT:  Mr. Dubray, I'm going to have you

13   sign the conditions of probation, but before you do that,

14   I do want you to know that you have the right to appeal

15   this decision.  Any notice of appeal needs to be filed

16   within 30 days of the date of the judgment.

17           So the judgment will be dated today.  That will

18   start the 30 days.  And also -- so you'll want to discuss

19   that right to appeal with Mr. Hankey, along with your

20   motion to withdraw your guilty plea.  And, then, once

21   those have been filed, we'll take a look at them.

22           With respect to these two counts, I forgot to

23   state that they do run concurrently.

24           I will remand Mr. Dubray to the custody of the

25   Grand Forks County Correctional Center for transportation

1  to the Department of Corrections.

2       I'm just going to ask Mr. Hankey if you know

3  that -- I mean, I'll give you a chance to discuss

4  everything that's happened with Mr. Dubray --

5       MR. HANKEY:  Okay.

6       THE COURT:  -- but if you're going to file a

7  motion for a new trial and you'll need testimony from him

8  and just need him kept here for just, say, 60 to 90 days,

9  even if you withdraw and he gets another attorney for that

10  purpose, just let me know so we can let the correctional

11  center know, because my guess is they'll start working on

12  the paperwork to get him transported.

13       MR. HANKEY:  Okay.

14       (The document is signed.)

15       MR. HANKEY:  May I approach, Your Honor?

16       THE COURT:  Yes.

17       (Handing to the Court.)

18       THE COURT:  Thank you.  Mr. Hankey, I'm going

19  to -- I have the criminal judgment done --

20       MR. HANKEY:  Sure.

21       THE COURT:  -- so I'm going to have you take a

22  look at it, and we'll give it to Ms. Larson, just to see

23  if you see any corrections before it does get filed.

24       (The attorneys examine the document.)

25       MS. LARSON:  May I approach, Your Honor?

1         THE COURT:  Yes.

2         MS. LARSON:  I didn't notice anything.

3         THE COURT:  And you didn't notice anything?

4         MS. LARSON:  No.

5         MR. HANKEY:  We didn't either, Your Honor.

6         THE COURT:  Okay.  Mr. Dubray is remanded to the

7 custody of the Grand Forks County Sheriff's Department at

8 this time for transportation to the correctional center.

9         We will get copies of the judgments to counsel

10 and the conditions of probation and also to Mr. Dubray.

11         MR. HANKEY:  Okay.

12         MS. LARSON:  Thank you.

13         THE COURT:  This hearing is adjourned, and we'll

14 go ahead and disconnect the phone.

15         (The proceedings were concluded at 10:13 a.m.)

16

17

18

19

20

21

22

23

24

25

1  CERTIFICATE OF COURT REPORTER

2

3  STATE OF NORTH DAKOTA )
                         ) ss.
4  COUNTY OF GRAND FORKS )

5

6       I, Marsha Allmaras, a duly appointed official

7  court reporter,

8       CERTIFY that I recorded in shorthand the

9  foregoing proceedings had and made of record at the time

10 and place indicated.

11      I FURTHER CERTIFY that the foregoing and attached

12 39 typewritten pages contain an accurate transcript of my

13 shorthand notes then and there taken.

14      Dated at Grand Forks, North Dakota, this 9th

15 day of October, 2014.

16

17                      *Marsha Allmaras*

18            ---------------------------
                    Marsha Allmaras
19              Official Court Reporter

20

21                      .

22

23 THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT
   APPLY TO THE REPRODUCTION OF THE SAME BY ANY MEANS,
24 UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE
   CERTIFYING COURT REPORTER.

25

Page 1 of 2

Skip to Main Content  Logout  My Account  My Cases  Search Menu  New Civil Search  Refine Search  Back
Location : Northeast Central District   Images  Help

## REGISTER OF ACTIONS
### CASE NO. 18-2014-CV-00960

| Nathan G Dubray vs. State of North Dakota | § § § § § § § | Case Type: | **Post Conviction Relief** |
|---|---|---|---|
| | | Date Filed: | **07/14/2014** |
| | | Location: | |
| | | Judicial Officer: | **Kleven, Debbie** |
| | | Supreme Court Docket Number: | **20140428** |

---

### RELATED CASE INFORMATION

**Related Cases**
18-2012-CR-01960 (Related Case)

---

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| Petitioner | Dubray, Nathan G<br>#39395<br>2521 Circle Drive<br>Jamestown, ND 58401<br>DL: NDDUB857102 | Male Indian<br>DOB: 1985<br>SSN: XXX-XX-7603<br>6' 0", 200 lbs | **Monty Grant Mertz**<br>*Retained*<br>701-298-4640 x0000(W) |
| Respondent | State of North Dakota | | **Mark Jason McCarthy**<br>*Retained*<br>701-780-8281 x0000(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 07/14/2014 | Application   Doc ID# 1 | |
| | *for Post-Conviction Relief* | |
| 07/14/2014 | Brief   Doc ID# 2 | |
| | *in Support of Application for Post-Conviction Relief* | |
| 07/14/2014 | Request   Doc ID# 3 | |
| | *for Hearing on Petitioner's Application for Post-Conviction Relief* | |
| 07/14/2014 | Notice of Assignment and Case Number   Doc ID# 4 | |
| 07/14/2014 | Service Document   Doc ID# 5 | |
| 07/18/2014 | Notice of Hearing   Doc ID# 6 | |
| | *Notice to Appear - Post Conviction Hearing* | |
| 07/18/2014 | Service Document   Doc ID# 7 | |
| | *Certificate of Service* | |
| 07/21/2014 | Application for Appointed Defense Services   Doc ID# 8 | |
| 07/21/2014 | Notice of Eligibility for Appointed Counsel   Doc ID# 9 | |
| 07/24/2014 | Answer   Doc ID# 10 | |
| | *Answer to Petitioner's Application for Post-Conviction Relief* | |
| 07/24/2014 | Service Document   Doc ID# 11 | |
| | *Affidavit of Service by Mail* | |
| 07/30/2014 | Assignment   Doc ID# 12 | |
| | *Conflict Re-assignment-Post Conviction (Monty Mertz)* | |
| 08/11/2014 | Stipulation / Agreement   Doc ID# 13 | |
| | *Stipulation to Continue Evidentiary Hearing* | |
| 08/11/2014 | Proposed Order   Doc ID# 14 | |
| | *Order to Continue Evidentiary Hearing* | |
| 08/11/2014 | Service Document   Doc ID# 15 | |
| | *Affidavit of Service by Electronic Filing* | |
| 08/15/2014 | Order   Doc ID# 16 | |
| | *to Continue Evidentiary Hearing* | |
| 08/15/2014 | Continuance | |
| | *Per Order to Continue Evidentiary Hearing* | |
| 08/15/2014 | Notice of Hearing   Doc ID# 17 | |
| | *Continued Notice of Evidentiary Hearing* | |
| 08/15/2014 | Service Document   Doc ID# 19 | |
| | *Certificate of Service* | |
| 09/15/2014 | Service Document   Doc ID# 20 | |
| | *Affidavit of Service By Electronic Filing* | |
| 09/15/2014 | Notice   Doc ID# 21 | |
| | *Notice of Change of Assignment of Attorney* | |
| 09/16/2014 | Sheriff's Return Served   Doc ID# 22 | |
| | *Sheriff's Return of Service-subpoenas* | |
| 09/18/2014 | Request   Doc ID# 23 | |
| | *Request for Transcript* | |
| 09/18/2014 | Proposed Order   Doc ID# 24 | |
| | *Proposed Order for Transcript* | |
| 09/18/2014 | Service Document   Doc ID# 25 | |

**EXHIBIT**

**7**

|            |                                                                                                       |
|------------|-------------------------------------------------------------------------------------------------------|
|            | *Certificate of Service on M. Jason McCarthy* |
| 09/22/2014 | <u>Order</u>     Doc ID# 26 |
|            | *Order for Transcript* |
| 10/10/2014 | <u>Service Document</u>     Doc ID# 28 |
|            | *Certificate of Service* |
| 10/13/2014 | <u>Motion</u>     Doc ID# 29 |
|            | *Motion for Order for Transportation* |
| 10/13/2014 | Proposed Order     Doc ID# 30 |
|            | *Order for Transportation* |
| 10/13/2014 | <u>Service of Motion</u>     Doc ID# 31 |
|            | *Certificate of Service on M. Jason McCarthy* |
| 10/14/2014 | <u>Order Disposing of Motion</u>     Doc ID# 32 |
|            | *Order for Transportation* |
| 10/20/2014 | <u>Post-Conviction Hearing</u>  (11:00 AM) (Judicial Officer Kleven, Debbie) |
|            | *Steno Notes MA 10-20-14* |
|            | *08/21/2014 Continued to 10/20/2014 - Continuance - Other - Dubray, Nathan G* |
|            | Result: Hearing Ended |
| 10/21/2014 | <u>Exhibit</u>     Doc ID# 33 |
|            | *Exhibit #: 1. Exhibit Description: Correspondance in the Criminal Case. (Received)* |
| 10/21/2014 | Exhibit     Doc ID# 34 |
|            | *Exhibit #: 2. Exhibit Description: Documentation Sent to Defendant. (Received)* |
| 11/20/2014 | <u>Order</u>     Doc ID# 35 |
|            | *Order Denying Application for Post-Conviction Relief* |
| 12/03/2014 | <u>Notice</u>     Doc ID# 36 |
|            | *Of Appeal - For Transcript - Forwarded To The Clerk Of Supreme Court On December 4, 2014* |
| 12/03/2014 | <u>Request</u>     Doc ID# 37 |
|            | *For Transcript - Forwarded To The Court Reporter/Recorder And Clerk Of Supreme Court On December 4, 2014* |
| 12/04/2014 | <u>Notice</u>     Doc ID# 39 |
|            | *Notice of Appeal by Nathan Dubray (duplicate filing to docket #36)* |
| 12/04/2014 | <u>Notice of Filing the Notice of Appeal</u>     Doc ID# 40 |
|            | *Notice of Filing Notice of Appeal* |
| 12/04/2014 | <u>Service Document</u>     Doc ID# 41 |
|            | *Affidavit of Service for Notice of Appeal* |
| 01/02/2015 | <u>Clerk's Certificate on Appeal</u>     Doc ID# 42 |
| 01/09/2015 | <u>Clerk's Certificate on Appeal</u>     Doc ID# 43 |
|            | *Amended* |
| 02/19/2015 | <u>Application for Appointed Defense Services</u>     Doc ID# 44 |
|            | *For Judges Review* |
| 02/20/2015 | <u>Application for Appointed Defense Services</u>     Doc ID# 45 |
|            | *Appointed* |
| 02/20/2015 | <u>Notice of Eligibility for Appointed Counsel</u>     Doc ID# 46 |
| 02/23/2015 | <u>Assignment</u>     Doc ID# 47 |
|            | *Notice of Eligibility for Appointed Counsel to Monty Mertz* |
| 03/09/2015 | Transcript     Doc ID# 48 |
|            | *Redacted Text Key of Post-Conviction Relief Hearing held on 10-20-2014* |
| 03/09/2015 | Transcript     Doc ID# 49 |
|            | *Transcript of post-conviction relief hearing held on 10-20-2014* |
| 11/12/2015 | <u>Supreme Court Judgment/Opinion</u>     Doc ID# 50 |
|            | *Opinion - Affirmed* |
| 11/12/2015 | <u>Supreme Court Judgment/Opinion</u>     Doc ID# 51 |
|            | *Judgment* |
| 11/12/2015 | <u>Transcript</u>     Doc ID# 52 |
|            | *Post-Conviction Relief Hearing dated October 20, 2014* |
| 11/12/2015 | Confidential Information Form     Doc ID# 53 |
|            | *Redaction Key October 20, 2014* |



FILED IN THE ___ OF
CLERK OF DIST ___ COURT
GRAND FORKS CO ___ N. DAK. ON

JUL 1 4 2014

REBECCA ABSEY, CLERK

BY_____

IN DISTRICT COURT, COUNTY OF GRAND FORKS, STATE OF NORTH DAKOTA

NATHAN G. DUBRAY,        )   APPLICATION FOR
   Petitioner,    )   POST-CONVICTION RELIEF
   vs.    )
STATE OF NORTH DAKOTA, )   Civil no. K-2014-CV-00900
   Respondent.   )   Related Crim.no. 18-2012-CR-01960

 The Petitioner, Nathan G. Dubray, ("petitioner"), pro se, Respectfully makes application for post-conviction Relief and hearing pursuant to N.D.CC. 29-32.1   And in support there of Represents And shows to the court:

I.

 That Judgement was entered and sentence imposed in Grand Forks County, CASE NO. 18-2012-CR-01960, by the Honorable Debbie Kleven, District Court Judge, on the 4th day of October, 2013, for the offense's of Gross Sexual Imposition. (see, criminal Judgement of October, 4, 2013, Summary Index #78; see Also Amended criminal Judgement of January 3, 2014 summary Index #88).

II<br>(1)



EXHIBIT
8

That said sentence was for a period of Thirty (30) years, with all but fifteen (15) years suspended for a period of Ten (10) years with credit for time served of fourteen (14) days, on Count-1, Gross Sexual Imposition, A Class AA Felony And count-2, Gross Sexual Imposition, A Class AA Felony, with both counts concurrent to one-Another.

## III.

That petitioner deems himself Aggrieved by said Judgement And sentence upon the following specific And independent grounds.

1.) Petitioner recieved ineffective Assistance of Counsel during the original proceeding, outside the range of competence demanded of Attorneys in a criminal case, in violation of the sixth Amendment of the United States Constitution And even greater possible protection pursuant to Artical I. Section 12 of the North Dakota Constitution.

(2)

2.) Petitioners counsel failed to interview or depose: Bobby Joe Bull; Torey Lynn Killscrow; Shelby Joleen Weist; Thomas Weist; or Mario Alcon, each of whom would be essential to his defense for trial. This failure was outside the range of competence demanded of attorneys in a criminal case, in violation of the Sixth Amendment of the United States Constitution and even greater possible protections pursuant to Article I. Section 12 of the North Dakota State Constitution

3.) Petitioner's counsel failed to hire an expert to determine if the evidence given by the alleged child victim, during the forensic interview on January 9, 2012 at 0900 hours, and conducted by Tammy Knudson of the Grand Forks County Social Services, was tainted by "concerned" adults. This failure was outside the range of competence demand of attorneys in a criminal case, in violation of the Sixth Amendment of the United States Constitution and even greater possible protections pursuant to Article I. Section 12 of the North Dakota Constitution,

(3)

4.) The prosecution erred in charging Petitioner with two Class AA Felony's in which he did not commit; prejudicing Petitioner. There by contributed to his wrongfull conviction, in violation of the Fifth Amendment to the United States Constitution and even greater possible protection pursuant to Article I, Section 12 of the North Dakota Constitution.

## IV

That the petitioner, has taken no other actions, to secure relief from said judgement of conviction and sentence.

Dated this 8th day of July, 2014

NATHAN G. DUBRAY
JRCC
2521 circle Drive
Jamestown, North Dakota  58401

(4)

IN DISTRICT COURT, COUNTY OF GRAND FORKS, STATE OF NORTH DAKOTA

NATHAN G. DUBRAY,   )   BRIEF IN SUPPORT OF
   Petitioner,   )   APPLICATION FOR
   VS.   )   POST-CONVICTION RELIEF
STATE OF NORTH DAKOTA,   )   Civil no. __18-2014-CV-00900__
   Respondent,   )   Related Crim. no. 18-2012-CR-01960

FILED BY STATE AGENCY
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. D.

JUL 1 4 2014

REBECCA ABSEY, CLERK

BY _____
   Deputy

## BACKGROUND

[¶1.] Petitioner, Nathan G. Dubray, ("Petitioner"), was charged with the offense's of: ① Gross Sexual Imposition, Count-1, a Class AA felony, and ② Gross Sexual Imposition, Count-2, a class AA felony, by information. SEE, Summary Index #2.

[¶2.] That on October 4th, 2013, on advice of counsel, Petitioner pled guilty to both offenses of Gross Sexual Imposition, and was subsequently sentenced, by the Honorable Debbie Kleven, District Court Judge ("Court"). To a term of fifteen (15) years incarceration, North Dakota Department of Corrections and Rehabilitation. Followed by a term of ten (10) years probation, on each count, and to run concurrent to one-another.

(1)

EXHIBIT
tabbies
9

2

SEE, Criminal Judgement, Summary Index-#78;
SEE Also, Amended Criminal Judgement, Summary Index-#88.

[¶3.] Petitioner has filed no other post-Conviction Relief applications, appeals or motions to secure Relief from the Judgement of conviction And sentence in this matter.

[¶4.] Petitioner reserves his rights to Amend, Add Additional grounds, Add supplemental information or affidavits in support thereof, After the Appointment of counsel on this Application for Post-Conviction Relief ("Application"), or At Any time during the proceeding.

[¶5.] The North Dakota Century code § 29-32.1-01 States that a person may apply for Post-Conviction Relief for several reasons. Applicable to this case is that: ① The conviction was obtained or the sentence was imposed in violation of the laws or the Constitution of the United States or the laws or Constitution of North Dakota; ② the Court that rendered the Judgement of Conviction And sentence

( 2 )

WAS without Jurisdiction over the person
of the Application or the Subject matter;
③ The sentence is not Authorized by law;
④ Evidence, not previously presented and heard,
Exists Requiring vAction of the conviction or
sentence in the interest of Justice; ⑤ The
Applicant is otherwise unlawfully in Custody
or Restrained. SEE, N.D.C.C. § 29-32.1-01 (a),
(c), (d), And (g). Following Are the Grounds
petitioner brings before the court for
Post-Conviction Relief:

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

[86.] Article 1, section 12 of the North Dakota
Constitution guarantees A criminal defendant
Effective Assistance of counsel. SEE, Heckelsmiller
v. State, 2004 ND 191, ¶3, 687 N.W.2d 454.
In Accord with the test established by the
United States Supreme Court in Strickland
v. Washington, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984), A defendant claiming
ineffective Assistance of counsel must prove
① Counsel's Representation fell below An

(3)

objective Standard of Reasonableness, And
② the defendant was prejudiced by
Counsel's deficient performance. Id.

[¶6.] "Effectiveness of counsel is measured
by an 'Objective Standard of Reasonableness'
Considering 'prevailing professional norms.'"
Id., (quoting Strickland, 466 U.S. At 688, 104
S. Ct. 2052). The defendant must first
overcome the "Strong presumption that
Counsel's Conduct falls within the wide
Range of Reasonable professional Assistance."
Id., (quoting Strickland 466 U.S. At 689, 104
S. Ct. 2052). Trial Counsel's Conduct is presumed
to be Reasonable And courts consciously
Attempt to limit the distorting effect of
hindsight. Id.

[¶7] The prejudice element Requires A
defendant to Establish A Reasonable
probability that, but for his counsel's errors,
the Result of the proceeding would have
been different" Id. At ¶4. Not only does A
criminal defendant have "the heavy, demanding

(4)

burden of proving counsel's assistance was ineffective." Id. (quoting Mertz v. State, 535 N.W. 2d 834, 836 (N.D. 1995). A defendant claiming ineffective assistance of counsel "must specify how and where trial counsel was incompetent and the probable different result." Id. (quoting State v. Palmer, 2002 N.D. 5, ¶11, 638 N.W. 2d 18. A "Reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. (quoting Strickland, 466 U.S. At 649, 104 S.Ct. 2052). If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id (quoting Strickland, 466 U.W. At 697, 104, S.Ct. 2052)

[¶8] The North Dakota supreme court has indicated and adopted the same two prong test on a claim of ineffective assistance of counsel in a Post-Conviction Relief proceeding, and on a claim of ineffective assistance of counsel, the

(5)

following must be proven:

    1.) [c]ounsel's Representation fell below an objective Standard of Reasonableness and

    2.) the petitioner was prejudiced by Counsel's deficient performance.

SEE, Clark v. State, 2008 N.D. 234, ¶12. 758 N.W. 2d 900 (citations omitted). Effectiveness of counsel is measured by an 'objective Standard of Reasonableness' considering 'prevailing professional norms.'" Id., at ¶12 (citing Lenge v. State, 522 NW. 2d 179, 181 (N.D. 1994), (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052.)

[¶9] the prejudice element requires a showing of "Reasonable probability that, but for Counsel's errors, the Result of the proceeding would have been different." SEE, Flanagan v. State 2006 ND. 76, P7, ¶17, 712, NW 2d 602 (citing Heckelsmiller v. State, 2004 ND 191, ¶4, 687 NW. 2d 454.) A Reasonable probability is a probability sufficient to undermine confidence in the Outcome. Id.

[¶10] In the present matter Petitioners Counsel's Representation fell below an Objective Standard of Reasonableness. It is Required that petitioner overcome a strong presumption that counsel's performance fell within the "wide Range" of Reasonable professional Assistance prompting Counsel's performance to fall below and objective standard of Reasonableness SEE, Johnson v. State, 2006 ND. 122, ¶20, 714 NW. 2d 832, 841.

[¶11] It would have been Reasonable for an Attorney Representing petitioner to:

①  conduct a full and complete investigation of all Relevant facts himself, or hire an investigator to conduct the investigation Had Counsel conducted this investigation, Counsel would have discovered that evidence given by the Alleged child Victim, during the forensic Interview on January 9, 2012, which was conducted by Tammy Knudson, of the Grand Forks

(7)

County Social Services, was tainted
by "Concerned" Authority figures, including
but not limited to: Anxious parents
and other adult family members,
School teachers, police officials, social
worker therapists. Further, counsel
would have discovered that the forensic
interview was conducted seven (7)
days after the alleged incident, and that
during this seven (7) days, prior to the
forensic interview the alleged child
victim had been repeatedly questioned
by several authority figures in different
Settings, and this repeated questioning,
interviewing and counseling tainted
the alleged child victim such that the
alleged child victim is not competent under
the Rules of evidence, as the alleged child
victim's memory of the events has been
tainted by this questioning, interviewing,
or counseling. This evidence of tainted
memory would have raised reasonable concern
as to whether the alleged child victim
would be able to testify by memory,

Clearly a highly advanced inquiry into the atmosphere and demeanor surrounding verbal interactions between the alleged child victim and concerned adults.

The notion that a child witness is peculiarly susceptible to influence, while comporting with our intuition and common experience, is in fact an extensively well-researched topic. In this regard, courts across the nation are recognizing this phenomenon and are taking concerted action to ascertain children's evidentiary competency. SEE, State v. Huss, 506 N.W. 2d 290 (Minn. 1993); People v. Meeboer, 439 Mich. 310, 324-325, 484 N.W. 2d 621 (Mich. 1992); Pyron v. State, 237 Ga. App. 198, 199, 514 S.E. 2d 51, 52 (Ga. Ct. App. 1999); Felix v. State of Nevada, 849 P. 2d (Nev. 1993); New Jersey v. Michaels, 136 N.J. 299, 624 A. 2d 1372 (N.J. 1994).

Failure to investigate or conduct any research into the fact that the alleged child victim's memory may have been

(9)

tainted by adult authority figures fell
below what is expected and required by
a reasonable attorney in this situation.
SEE, Johnson v. State, 2006 ND 12, ¶20,
714 N.W. 2d 832, 841. Had counsel not
failed in it's duty to investigate relevant
matter, the court would have been informed
that the reliability of the statements from
the alleged child victim raises reasonable
concern and petitioner would have insisted
on going to trial, and would not plead
out on advice of counsel. This error was
so serious that petitioner was not accorded
the counsel quaranteed by the Sixth Amendment
of the United States Constitution, and cleary
below the "Objective Standard of Reasonableness"
Considering" prevailing professional norms."
SEE, Strickland v. Washington, 466 US 668,
104 S.Ct. 2052, 80 L.Ed. 2d 624 (1984);
Clark v. State, 2008 ND. 234, ¶12, 758
N.W. 2d 900; see also, North Dakota Rules
of Professional Conduct.

②  Determine, whether the Prosecuting

(10)

Authority knew or should have known that
Charging petitioner with multiple offenses
was multiplicity, highly suspicious and
based on fabricated or tainted evidence,
therefore violating petitioners Due Process
Clause of the fifth Amendment of the
United States Constitution, which is imposed
on the State of North Dakota through the
fourteenth Amendment and Article I,
Section 12 of the North Dakota Constitution.

Counsel failed in it's duty to show the
Court that the prosecuting Authority knowingly
disregarded it's obligations, which was an
Abuse of it's professional discretion and
A violation of petitioner's due process Rights,
And which was an improper method designed
to induce a wrongful plea of guilty. SEE,
BERGER V. U.S., 78, 88 (1935)

③ Promply comply with petitioner's
Reasonable Requests for information,
documents, papers, reports, notes and
Communications As Required pursuant

(11)

To Rule 1.4 of the North Dakota Rules of Professional Conduct ("N.D.R. Prof. Conduct").

Counsel failed to supply petitioner with sufficient information to participate intelligently in discussions concerning the Representation and the entering of the plea of guilty, during the original proceeding. Therefore, petitioner was unable to make an intelligent decision as whether to plead out or go to trial. SEE, N.D.R. Prof. Conduct Rule 1.4.

④ Hire an expert to determine if the evidence given by the Alleged child victim, during the forensic interviews on January 9, 2012, which was conducted by Tammy Knudson of the Grand Forks County Social Services, was susceptible to influence through coercive, suggestive, or even apparently benign questioning. Also, this expert could have determined the capacity of Tammy Knudson and her interview process to distort the Recollection

(12)

Of the Alleged Child Victim, And to further
determine if Mrs. Knudson's interview
practices were sufficiently suggestive
or coercive to alter irremediably the
perceptions of the Alleged Child Victim.

Counsel had at it's disposal; in it's own
"Backyard" An Expert, Namely:
   Dr. Troy W. Ertelt, Ph.D, Licensed
   Psychologist Assessment And Therapy
   725 Homline St.
   Grand Forks No. Dak. 58201

⑤ Represt petitioner with his skill,
thoroughness, legal Knowledge, preparation
(competence), diligence And with proper
communication As is Required of A
Reasonable Attorney And the prevailing
professional norms, pursuant to Rule (1.1),
(1.3) and (1.4) N.D.R. Prof conduct.

Counsel failed in each of his Afore-
mentioned duties in the proceeding. Had
Counsel even done A perfunctary Job,

(13)

There is more than a reasonable probability that the outcome would have been different, but for these unprofessional errors of counsel. SEE, STATE v. BURKE, 2000 ND 24, ¶36, 606 N.W. 2d 108, SEE ALSO, N.D.R. Prof. Conduct.

(6.) Interview and/or depose: Bobby Joe Bull; Torey lynn Killscrow; Shelby Joleen Weist; Thomas Weist; or Mario Alcon, to determine if the statements, which they made to law enforcement were misleading as to the facts of the underlying offense(s) in this matter.

[¶12] The North Dakota Rules of Professional Conduct set out the foundation and basic duties which are required of a reasonable attorney. It is clear in the present matter Counsels failed in these "principles" and "basic duties" during both the original proceeding by failing to investigate the statements made by the alleged child victim and the witnesses.

(14)

[¶13] The question under the first test in STRICKLAND is whether or not the failure to conduct any Relevant investigation OR to hire an expert to investigate the statements made by the alleged child victim and the witnesses by counsel is deficient conduct. SEE, Strickland, at 687. Petitioner argues that it is. Counsel is presumed to have prepared and investigated and then communicated all options with petitioner.

[¶14] Investigating all known facts, statements and evidence are simply a basic part of practicing law. By failing to do any investigation on his own or hiring an expert to investigate, was deficient below the standard in the community.

[¶15] The second test in Strickland, is essentially that petitioner was prejudiced by counsel's lack of knowledge, investigation and advice, and would that prejudice have made a difference in the outcome. SEE, STRICKLAND at 694.

(15)

Petitioner argues that he was prejudiced, and counsel's errors and advice did make a difference in the outcome. When representing a defendant counsel must be competent in the basic part(s) of practicing law, such as investigating all known facts, statements and evidence.

[¶16] When negotiating a guilty plea, knowledge of the relevant facts, statements and evidence and an investigation into all underlying facts is essential, and counsel's failure here was unreasonable and prejudiced petitioner.

[¶17] The prejudice occured as petitioner would have more thoughtfully considered trying the case before a Jury, but for counsel's failure to prepare, investigate, hire an expert and communicate with petitioner, and upon advice of counsel this option was effectively denied to petitioner. Had petitioner known that counsel had failed in his duties, Petitioner

(16)

would have replaced him, and put the
State to the test at trial, and disputed
the case as charged. The uninformed
And poor advice of counsel made a
difference in the outcome of the case
And sentence, and the outcome would
have been different had counsel given
accurate and informed advice and
information to petitioner. Petitioner
was inherently misled and uninformed
by counsel's deficiant performance and advice.

[¶18] In the context of a guilty plea,
the prejudice prong of the <u>strickland</u>
test governing a claim of ineffective
assistance of counsel is satisfied if
the petitioner shows that there is a
reasonable probabilty that, but for counsel's
errors, petitioner would not have pleaded
guilty and would have insisted on going
to trial. <u>see</u>, <u>Patten v. State</u>, 2008, ND 29,
<u>¶9</u>, 745 NW. 2d 626. In the present case
petitioner would not have plead guilty,
but for the advice of counsel.

(17)

Therefore, the adversarial process itself was presumptively unreliable during the proceeding. SEE, U.S. v. Cronic, 466 U.S. at 659 (1984). It is clear in this situation prejudice occured and an inquiry is necessary, to determine whether a manifest injustice exists, which is necessary to correct, in the interest of justice.

[¶19] Petitioner would request the court to withdraw his guilty plea, which was based on ineffective advice from counsel. This request should not be barred. SEE, Rule 32(2) N.D.R. Crim. P. which states: "A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations there in, and is not necessarily barred because made subsequent to judgement or sentence".

[¶20] Petitioner has established fair and just reasons why his plea of

(18)

guilty in the original proceeding should be withdrawn, and petitioner has shown a manifest injustice has resulted from the plea of guilty on ineffective advise of counsel, and therefore the court abused it's discretion and was without jurisdiction to sentence petitioner to a term of incarcerations. SEE, NORTH CAROLINA v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970); State v. McKay, 234 NW.2d 853 (ND 1975). Therefore, there is a reasonable probability that but for these unprofessional errors of counsel, the result of the original proceeding would have been different. Petitioner has demonstrated with specificity, on some of the issues, how and where counsel was incompetant. SEE, STATE V. BURKE, 2000 ND 24 ¶36, 606 N.W. 2d 108. Had counsel, during the original proceeding, done even a perfunctary job there is a very good chance petitioner would not have plead guilty.

[¶21] Clearly petitioner did not enter his plea knowingly or intelligently And thus, the withdrawl of the plea is necessary to correct a manifest injustice. SEE, STATE v. BARNES, 2007 N.D. 15, ¶16, 726, NW.2d 595.

[¶22] Each claim of Ineffective Assistance of counsel here supports ineffectiveness on their own, as each error is sufficiently egregious and prejudicial. SEE, United States v. Cronic, 466 U.S. 648; SEE Also, MURRAY v. CARRIER, 477 US. 496, 91 L.Ed. 2d 397, 106 S.ct. 2639 (1968). Clearly there were multiple errors here, which each on their own prejudiced petitioner, And made Counsel's performance Constitutionally defective.

## CONCLUSION

[¶23] Petitioner was not Accorded the Counsel guaranted by the Sixth Amendment. And clearly below the "Objective

(20)

Standard of Reasonableness" "Considering Prevailing professional norms." SEE, Strickland v. Washington; 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Clark v. State, 2008 ND 234, ¶12, 758 NW.2d 900, SEE Also N.DR. Prof. Conduct.

[¶24] In the present case the claim of ineffective Assistance of counsel is based on Matters ocurring outside the court room Record or transcripts, And therefore, the Record and transcripts are not adequate to decide the claim and an evidentiary hearing must be held to consider other evidence beyond the Record. SEE, Henke v. State 2009 ND 117, 767, NW.2d 881; Wong v. State, 2010 ND 219, 790 N.W.2d 757.

[¶25] while petitioner believes that his Fifth, Sixth And fourteenth Amendment protections Are enough, he believes that he should be Afforded even greater Constitutional protection under Artical I,

(21)

Section 12 of the North Dakota Consitution, especially Regarding his due process Rights And Right to Effective Assistance of counsel, SEE, State v. Klodt, 298 N.W. 2d 783 (ND 1980). The emphasis of Artical I, Section 12 of the North Dakota Constitution should be on protecting An individuals Right to due process And Effective Assistance of counsel, Rather than simply just guaranteeing it. SEE, State v. Rydberg 519, N.W. 2d 306, 310 (N.D. 1994).

Dated this  9th  Day of July, 2014

*Nathan DuBray*

NAthAN G. DubRAY
JRCC
2521 CiRclE DRive
JAmestown, NoRth DAkotA 58401

(22)

## VERIFICATION

State of North Dakota ) ss
County of Stutsman )

NATHAN G. DuBRAY, being first duly sworn on oath, deposes and says that he is the petitioner in the above-entitled action, that he has read the fore-going Application and knows the contents there of and that the same is true, and such can be treated as an Affidavit, except as to matters stated upon information and belief and as to those matters he states that he believes them to be true

```
JULIE MUNKEBY
Notary Public
State of North Dakota
My Commission Expires June 11, 2015
```

Notary Public

Dated this day of ___9th___, July, 2014

IN DISTRICT COURT, GRAND FORKS COUNTY, NORTH DAKOTA

**Nathan G. Dubray,**

      Petitioner,

v.

**State of North Dakota,**

      Respondent.

**ANSWER TO PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF**
Civil No. 18-2014-CV-00960
Criminal No. 18-2012-CR-01960
SA#121086

[¶1] Respondent, State of North Dakota, by and through the undersigned Assistant State's Attorney, answers to the Application for Post-Conviction Relief as follows:

1.  Respondent denies each and every allegation of the Application for Post-Conviction Relief not hereinafter admitted.

2.  Respondent admits the statements set forth by Petitioner in Section II Paragraph 1.

3.  Respondent specifically denies the allegations set forth by Petitioner in Section III Paragraph 1, 2, and 3 in that the respondent specifically denies that the Petitioner received ineffective assistance of counsel, that additional interviews or depositions of witnesses beyond law enforcement's interviews set forth in Section III Paragraph 2 were necessary or crucial to this case, and that an expert as alleged in Section III Paragraph 3 was necessary and that failure to hire one resulted in effective assistance.

4.  Respondent asserts that this was a case involving child molestation in which only two parties were present for the crime, the Petitioner and the juvenile victim.

5.  Respondent asserts that the Petitioner, after being Mirandized, made incriminating comments during an interview with law enforcement acknowledging that there would be no reason the juvenile victim would make up such an allegation and children typically are honest regarding such types of allegations.

**EXHIBIT**

tabbies

*10*

1

6.  Respondent asserts that the relevant witnesses to this case were all interviewed by law enforcement and those interviews were provided to Petitioner's counsel in discovery.

7.  Respondent asserts that the juvenile child was interviewed pursuant to protocol followed by the Red River Valley Child Advocacy Center.

8.  Respondent asserts that the interview was conducted by a trained and certified forensic interviewer.

9.  Respondent asserts that the interview was videotaped and provided to Petitioner's attorney for review in the discovery process.

10. Respondent specifically denies the allegation set forth by Petition in Section III Paragraph 4 in that the Defendant was charged with two distinct and separate sexual contacts he perpetrated upon the juvenile victim; one that took place between January 2 and January 3, 2012 in the early morning hours in which the Petitioner's hand made contact with the juvenile victim's vulva as well as for contact the Petitioner's exposed penis made with the juvenile victim's face and the other that took place later in the morning on January 3, 2012 in which the Petitioner's penis made contact with the juvenile victim's hand and the Petitioner's hand had contact with the juvenile victim's vulva.

11. Respondent asserts that these allegations were set forth clearly in the State's Amended Information which was filed on December 31, 2012 and Affidavit of Probable Cause which was filed on August 6, 2012.

12. Respondent asserts that the Petitioner pled guilty to such offenses on July 15, 2013.

13. Respondent acknowledges that the North Dakota Supreme Court has indicated that generally summary disposition is inappropriate in claims of ineffective assistance of counsel and Petitioners must be permitted a reasonable opportunity to present relevant materials regarding such claims. Wilson v. State, 1999 ND 222, 603 N.W.2d 47.

14.    Respondent, however, also acknowledges that N.D.C.C. §29-32.1-09 has recently been
       amended to allow the Court to dismiss an application on its own motion for various
       reasons, to include when the claims in the application are meritless, providing that an
       applicant be given notice and an opportunity to submit evidence before the court
       considers any evidence outside the pleading to determine the application's merit.
       <u>Chisholm vs. State</u>, 2014 WL 2866997 (N.D.).

15.    Respondent acknowledges the Petitioner filed a brief in support of his Petition for Post-
       Conviction Relief.  Respondent generally denies the assertions contained therein and
       again puts the Petitioner upon his proof.

[¶2] Wherefore Respondent prays that the Court enter a Judgment denying Petitioner's
Application for Post-Conviction Relief.

DATED this ___ day of July, 2014.

                                    Meredith H. Larson
                                    ND Bar ID #06206
                                    Assistant State's Attorney
                                    124 South 4th Street
                                    PO Box 5607
                                    Grand Forks, ND 58206-5607
                                    (701) 780-8281
                                    E-Service Address:  sasupportstaff@gfcounty.org

sh

3

1   STATE OF NORTH DAKOTA                          IN DISTRICT COURT

2   COUNTY OF GRAND FORKS          NORTHEAST CENTRAL JUDICIAL DISTRICT

3

4   Nathan Dubray,                     )
                                       )
5             Petitioner,              )
                                       )
6       v.                             )   Case No. 18-2014-CV-00960
                                       )
7   State of North Dakota,             )
                                       )
8             Respondent.              )

9       _____

10                  T R A N S C R I P T

11                        of

12               P R O C E E D I N G S

13             Post-Conviction Relief Hearing
14                 October 20, 2014
                     11:12 A.M.
15

16  TAKEN AT:      Grand Forks County Courthouse
                   Grand Forks, North Dakota
17
    BEFORE:        HONORABLE DEBBIE G. KLEVEN
18
    ------------------------------------------------------
19                  A P P E A R A N C E S

20  FOR THE PETITIONER:  MONTY G. MERTZ
                         Attorney at Law
21                       Fargo Public Defender Office
                         912 Third Avenue South
22                       Fargo, ND  58103

23  FOR THE RESPONDENT:  DAVID JONES
                         State's Attorney's Office
24                       P.O. Box 5607
                         Grand Forks, ND  58206-5607
25

                        Marsha Allmaras                        1
                 Registered Professional Reporter
                  Grand Forks, North Dakota

**EXHIBIT**
tabbies
**11**

<u>WITNESSES</u>

Page

| | |
|---|---|
| NATHAN DUBRAY | |
| Direct Examination by Mr. Mertz | 4 |
| Cross-Examination by Mr. Jones | 15 |
| BLAKE HANKEY | |
| Direct Examination by Mr. Jones | 25 |
| Cross-Examination by Mr. Mertz | 38 |
| Redirect Examination by Mr. Jones | 46 |
| Recross-Examination by Mr. Mertz | 48 |

<u>RESPONDENT'S EXHIBITS</u>

| <u>NO.</u> | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 1 | Billing statement from Attorney Hankey's office | 28 | 28 |
| 2 | E-mails and letters in regard to Nathan Dubray | 28 | 28 |

1    WHEREUPON,

2        the following proceedings were had, to-wit:

3        THE COURT:  Okay.  We'll go ahead and go on the

4    record.  This is the time set for a post-conviction

5    hearing in Case No. 18-2014-CV-960.  It's captioned Nathan

6    Dubray versus the State of North Dakota.

7        Mr. Dubray is present and represented by Attorney

8    Monty Mertz, and the State is represented by Assistant

9    State's Attorney David Jones.

10       Are both sides ready to proceed?

11       MR. JONES:  The State is prepared, Your Honor.

12       MR. MERTZ:  Yes, Your Honor.

13       THE COURT:  Okay.  Then, this is the time set for

14   an evidentiary hearing.

15       And, Mr. Mertz, do you wish to proceed first?

16       MR. MERTZ:  I certainly can, Your Honor.

17       THE COURT:  Or, Mr. Jones, were you planning --

18       MR. JONES:  Well, I believe the burden is --

19       THE COURT:  It's -- the burden's on the --

20       MR. JONES:  Correct.

21       THE COURT:  -- plaintiff; so that's how we'll

22   proceed.

23       MR. MERTZ:  Your Honor, I'll call Mr. Dubray as a

24   witness.

25       **NATHAN DUBRAY**, called as a witness, being first

1    duly sworn, was examined and testified as follows:

2         THE COURT:  You may go ahead, Mr. Mertz.

3    DIRECT EXAMINATION BY MR. MERTZ:

4         Q.   Would you state your full name for the record.

5         A.   Nathan Gene Dubray.

6         Q.   And, Mr. Dubray, you have filed with this Court

7    an application for post-conviction relief; is that

8    correct?

9         A.   Yes, sir.

10        Q.   And in that application for post-conviction

11   relief, your primary claim is that you received

12   ineffective assistance of counsel; is that correct?

13        A.   Yes, sir.

14        Q.   And in this case, you were represented by

15   Attorney Blake Hankey; is that correct?

16        A.   Yes, sir.

17        Q.   Okay.  Mr. Dubray, when you were working with

18   Mr. Hankey, did you -- were you aware of whether or not he

19   hired a private investigator?

20        A.   I believe he did.

21        Q.   He did?  Did not?

22        A.   Did not.

23        Q.   Okay.  Did Mr. Hankey take any depositions of any

24   of the State's witnesses?

25        A.   No, sir.

1      Q.   To your knowledge did Mr. Hankey interview any of

2   the State's witnesses?

3      A.   No, sir.

4      Q.   To your knowledge did Mr. Hankey explore the

5   possibility of any defense witnesses?  Any witnesses on

6   your behalf?

7      A.   Not that I can think of.

8      Q.   Okay.  Now, it's my understanding that you

9   entered an Alford plea basically on the eve of the jury

10   trial; is that correct?

11      A.   Yes, sir.

12      Q.   Would you explain to the Court what Mr. Hankey

13   did with you to prepare you for trial?  What kinds of

14   things did you do with him?

15      A.   Basically went over my discovery; and, I mean,

16   that was basically it.

17      Q.   He did share the discovery material with you?

18      A.   Yeah.

19      Q.   Did that include recordings and video recordings?

20      A.   Yeah, I was handed everything.

21      Q.   And it's my understanding that most of the time

22   pretrial you were not in custody, were you?

23      A.   No.

24      Q.   Here were you living during the pretrial process?

25      A.   In Red Wing, Minnesota.

1      Q.   And the trial was going to be here in Grand

2  Forks?

3      A.   Yes, sir.

4      Q.   Do you know how many times you had face-to-face

5  conferences with Mr. Hankey?

6      A.   Not to be exact, but I think three.

7      Q.   Okay.  Just prior to the trial, did you meet to

8  prepare for your trial?

9      A.   Yeah.

10     Q.   I'll go back.  Let me go back to -- he actually

11 gave you copies of the recordings and the videos?

12     A.   Yeah.

13     Q.   And were you able to watch those and listen to

14 those recordings?

15     A.   Yeah.

16     Q.   Okay.  When you met with Mr. Hankey, did you

17 develop a theory of a defense in your case?

18     A.   (No audible response.)

19     Q.   Do you know what I mean by that?

20     A.   Not quite sure.

21     Q.   Okay.  When you were ready to try the case, I

22 think you entered your guilty plea just before the trial;

23 correct?

24     A.   Yes.

25     Q.   Okay.  What was your understanding of your theory

1    of defense at the trial?

2        A.   I'm not sure.

3        Q.   Okay.  Did Mr. Hankey prepare you to testify?

4    Did you discuss the possibility that you would testify at

5    your trial?

6        A.   Yes.

7        Q.   Okay.  And did you feel that you were prepared to

8    testify at your trial?

9        A.   Yeah.

10       Q.   Okay.  But there wasn't a trial, was there?

11       A.   No.

12       Q.   Okay.  Had there been plea bargains or plea

13   negotiations leading up to the day you pled guilty?

14       A.   I believe there was.  That morning there was, and

15   I took a plea agreement that morning of the trial.

16       Q.   Okay.  Now, I think the records would show -- or

17   Mr. Hankey's records would show that the State had sent a

18   written plea agreement or made a plea offer prior to that

19   time, hadn't they?

20       A.   Yeah.

21       Q.   And that plea offer was or was not acceptable?

22       A.   Yeah.  I mean, I accepted it.

23       Q.   You ultimately accepted the plea based on an

24   offer by the State?

25       A.   I believe so.

1      Q.  Okay.  Well, it's just my understanding -- I'm

2  not trying to confuse you, but it's my understanding that

3  it's the practice of the State's Attorney's Office to send

4  a written plea offer prior to a deadline set by the Court.

5  Do you remember getting a plea offer?

6      A.  Yes, I do.

7      Q.  Okay.  Do you remember what the first plea offer

8  was?

9      A.  I do not.

10      Q.  Okay.  But, ultimately, there was an offer made

11  just before the trial?

12      A.  Yes.

13      Q.  And it's my understanding -- and I did have

14  transcripts prepared -- that you entered a guilty plea

15  under the Alford decision; isn't that correct?

16      A.  Yes, sir.

17      Q.  And do you feel you understand what that means,

18  what the Alford decision means?

19      A.  It's no contest --

20      Q.  Okay.

21      A.  -- from what I understand.  They had enough

22  evidence to charge me guilty.

23      Q.  Okay.  Okay.  Now, Mr. Dubray, as part of your

24  discussions with Mr. Hankey and in the presentence

25  investigation and discovery and all the materials in your

1    case, there were two prior incidents in your past, two

2    incidents in your past prior to this case, where you had

3    been accused of sexual misconduct; is that right?

4         A.   There was one.  The other one was a lie.

5         Q.   Okay.  Well, but stay with me here.  There was

6    one incident when you were a juvenile --

7         A.   Yes.

8         Q.   -- where you were accused of touching a younger

9    cousin, a female cousin; is that right?

10        A.   Yes.

11        Q.   Okay.  And as a result of that accusation, in

12   juvenile court you actually entered an admission at some

13   point; didn't you?

14        A.   I never -- I never went to court for it.

15        Q.   Okay.  But you ended up getting some kind of

16   classes for sexual offenders?

17        A.   Yes.

18        Q.   Now, how did that come about?  How did you end up

19   doing those classes?

20        A.   I would do them every Tuesday and Thursday in

21   Minot.

22        Q.   Okay.  But -- no.  How did you end up being

23   required to do those classes?

24        A.   Basically, they said that if I didn't admit to

25   the act that I would be sitting in the Boys Ranch until I

Nathan Dubray-Direct by Mertz

1    was 21, unless I admitted it and got help; and "help"

2    being the classes that I was required to take for, I

3    believe it was, like, 13 -- 13 sessions, 14 sessions.

4         Q.   So what did you choose to do?

5         A.   I admitted it.

6         Q.   Did you do it?

7         A.   No.

8         Q.   Okay.  Well, why would you admit it if you didn't

9    do it?

10        A.   Because I was almost 18.

11        Q.   Okay.  Were you represented by an attorney when

12   you made that admission?

13        A.   No.

14        Q.   Okay.  So that first accusation that you had

15   touched your young female cousin, you're telling this

16   Court that you did not do that?

17        A.   I did not.

18        Q.   Okay.  Then, there was other -- in the materials

19   in this case, there was an investigation or an allegation

20   that you had actually raped a minor child, a female girl,

21   I think age 14, in New Town; right?

22        A.   Yeah.

23        Q.   There was an accusation?

24        A.   There was.

25        Q.   Okay.  Did you rape a girl in New Town?

1    A.    I did not.

2    Q.    Okay.  In fact, when that supposedly occurred,

3    where were you living?

4    A.    California.

5    Q.    Okay.  So any suggestion in this case by anyone

6    that you had a history of prior sexual misconduct, was it

7    true or was it false?

8    A.    (No audible response.)

9    Q.    Do you understand my question?

10    A.    Not quite.

11    Q.    Okay.  There's these two incidents we just talked

12    about.

13    A.    Yeah.

14    Q.    Okay.  You're saying to this Court that you did

15    not touch your young cousin; correct?

16    A.    Correct.

17    Q.    You did not rape a girl in New Town?

18    A.    Correct.

19    Q.    Okay.  Now, when you were talking to Mr. Hankey

20    about the plea offer and about this trial, did these other

21    incidents come into play in the discussions?

22    A.    They did.

23    Q.    In what way?

24    A.    I mean, the first one, it was -- I'm not quite

25    sure if Hankey knew about it or if the Court knew about

1    it, but it was brought to the attention by -- I believe

2    Mario Alcon had said something about it.

3         And the second one was from Shelby saying that

4    Mario had told her that I raped some girl on a school bus

5    in New Town, and that's how it came about.

6         Q.   But how did that then factor into the discussions

7    about whether or not you would plead guilty?  Was there

8    some implication that those accusations would be used

9    against you in your trial in this case?

10        A.   Yes.

11        Q.   Okay.  Did that enter into your consideration of

12   whether or not to plead guilty?

13        A.   Yes.

14        Q.   Mr. Dubray, did you feel coerced or forced into

15   pleading guilty in this case?

16        A.   I felt like there wasn't any other choice but to

17   take the agreement.

18        Q.   Well, that isn't my question.  I mean, there are

19   plenty of cases where the defendant doesn't have any other

20   choice, Mr. Dubray.  What's important in this case is

21   whether or not you feel you entered a voluntary -- a

22   voluntary, freely -- you know, of your own free will that

23   you pled guilty in this case, voluntarily and of your own

24   free will.

25        A.   I felt like I was led to believe that I was going

1  to be determined guilty no matter what.  So I took --

2      Q.   Whether you were or not?

3      A.   Yes.

4      Q.   Okay.  In fact, the day of your sentencing, you

5  actually asked the Court if you could withdraw your guilty

6  pleas; isn't that correct?

7      A.   I did.

8      Q.   And that was because you felt that you were

9  forced into pleading guilty, in essence?

10     A.   Yeah.

11     Q.   Okay.  Now, in your petition for post-conviction

12 relief, you were specifically alleging that Mr. Hankey did

13 not provide adequate defense to you; is that correct?

14     A.   Yes.

15     Q.   Okay.  And we've already talked about things like

16 not -- well, I didn't ask you before.  Did he hire any

17 kind of an expert witness to address the issues of a child

18 victim?

19     A.   I'm not sure.  I think he did.  He may have.

20     Q.   Okay.  Did you discuss that with him?  Who was

21 the expert?

22     A.   I think it was Stacey Benson.

23     Q.   Okay.  Now, remember, Stacey Benson, you were

24 supposed to have an evaluation by her after you pled

25 guilty.

1      A.   Oh, yeah, that --

2      Q.   So don't get confused.  This is all before you

3   pled guilty.  That's all we're concerned about here today.

4   Do you understand?

5      A.   I believe he didn't.

6      Q.   Okay.  Because you're still maintaining that you

7   don't believe you molested this child; is that correct?

8      A.   Yes.

9      Q.   Okay.

10          THE COURT:  Can I have you not lead him so much?

11          MR. MERTZ:  Sure.

12          THE COURT:  All I'm really getting out of it is

13   your testimony; so...

14          I kind of want to know what he has to say.

15          MR. MERTZ:  That's fair, Your Honor.  Thank you.

16      Q.   (Mr. Mertz continuing)  So what are you asking --

17   just tell us in your own words what you're asking the

18   Court to do for you in this case.

19      A.   Go back to trial.

20      Q.   And why should the Court allow you to do that?

21      A.   I just believe I'm innocent.

22      Q.   How -- can you explain to the Court how

23   Mr. Hankey could have done something differently in this

24   case that would change the outcome?

25      A.   Cross-examination of witnesses.  I mean, I

1    just -- hire a specialist.  I just felt there was numerous

2    different things he could have done to help me to show my

3    innocence.

4         Q.   Give us as many examples as you can think of.

5         A.   Like I said, cross-examination of witnesses

6    where, you know, you could find Shelby and Mario in a lie;

7    Joe Bull lying.  If -- I don't have that many, I guess.

8         Q.   Okay.  Thank you.

9              MR. MERTZ:  I have no further questions.

10             THE COURT:  Mr. Jones.

11   **CROSS-EXAMINATION BY MR. JONES:**

12        Q.   Let's go back and visit July 15th, 2014,

13   Mr. Dubray.  That was the occasion of your change of plea.

14        A.   Yes, sir.

15        Q.   That was your decision?

16        A.   Yes.

17        Q.   It wasn't anyone else's decision?

18        A.   No, it wasn't.

19        Q.   I believe the Court did a pretty thorough job in

20   asking you about that, and one of the questions was

21   whether you had sufficient time to discuss this with your

22   attorneys and whether you were satisfied with your

23   attorneys.  Do you recall your response to that question?

24        A.   I do not.

25        Q.   Well, your response was yes, you were satisfied

1  with your attorneys and had sufficient time to discuss

2  this with your attorneys.

3  What's changed between July 15th and now, other

4  than the fact you were sentenced?

5  A.   Just the amount of time I got, I guess.

6  Q.   All right.   You're frustrated with your sentence?

7  A.   Yes.

8  Q.   I understand that.   And the Court gave, and

9  you -- you gave an explanation of the Alford plea, and

10  your understanding of an Alford plea is it comes in when

11  an individual can't really remember what took place and

12  believes the State has sufficient evidence to prove the

13  charges against you.   Does that sound about right?

14  A.   Yes, it is.

15  Q.   Do you remember making statements in your case

16  that, when asked about this, "If I did it, I'm sorry.   I

17  don't know"?   Do you recall making that statement?

18  A.   Yeah, I recall it.

19  Q.   All right.   Do you recall making the statement,

20  "I don't know if I did it or not.   I blacked out"?

21  A.   Yes, I do.

22  Q.   And you're aware that law enforcement and we were

23  all well aware of your statements along those lines, as

24  was your defense attorneys.   You're aware of that?

25  A.   Yes.

1     Q.   Is it true, then, that you, in your change of

2    plea, stated that you were too drunk to remember, would be

3    an accurate statement?

4     A.   Yes.

5     Q.   Now, let's move ahead to October 4th of 2014,

6    proceeding to sentencing.  The Court asked you

7    specifically, "Do you agree whether or not you were

8    pressured by attorneys to plead guilty?"  Do you recall

9    your response to that question?

10     A.   No, I don't.

11     Q.   All right.  Your response was you were not

12    coerced.  And in a follow-up you said, "I owe it to my

13    children to withdraw my plea," is what you tried to do.

14    What did you mean by that?

15     A.   I owe it to them to prove to them that I'm

16    innocent.

17     Q.   In spite of the fact that you're on the record at

18    least two times stating you can't remember what happened?

19     A.   Yes.

20     Q.   Do you remember making the statement to the

21    mother of the child that "If she says it happened, it's

22    probably true"?

23     A.   No.

24     Q.   All right.  Do you remember stating that a child

25    at that age is probably not going to lie?

1       A.   Yes.

2       Q.   All right.  Now, you're aware that if a person

3   makes a decision not to go to trial, there's not going to

4   be the presentation of witnesses.  That's specifically one

5   of the questions the Court asks you.  You're aware that

6   you won't be able to present witnesses?

7       A.   Yes.

8       Q.   So once you change your plea to guilty, you're

9   arguing to the Court that there was no chance to

10  cross-examine any -- examine these witnesses.  You knew

11  that when you entered your change of plea, there's going

12  to be no cross-examination.

13      A.   I just thought it would have been done prior

14  to -- I thought it would have been done before I even went

15  to a pretrial.

16      Q.   So you thought there was going to be a trial

17  before the trial?

18      A.   No.  I just thought he would have, you know, took

19  time out of his schedule to talk to these people.

20      Q.   You had those copies and discovery provided to

21  you of the individuals that you listed; did you not?

22      A.   Yes, I did.

23      Q.   Specifically, a statement of Tori Killscrow --

24      A.   Yes.

25      Q.   -- where, in her statement, she indicated you

Nathan Dubray-Cross by Jones

1    tried to have sex with her prior to the -- that same

2    night?  That same morning?

3         A.   Yes.

4         Q.   Her statement was not relating to factual

5    representation of having observed the allegations that

6    you're before the Court on.  It's a separate matter.  Do

7    you understand that?

8         A.   Yes.

9         Q.   In other words, she's not a factual witness to

10   the events involving the eight-year-old child.

11        A.   Yes.

12        Q.   And I think it's your cousin, Mario Alcon, stated

13   he knew about a prior history?

14        A.   Yeah.

15        Q.   And we agree he knew about a prior history, but

16   he wasn't stating he saw this incident either, was he?

17        A.   No.

18        Q.   Neither was the mother of the child, Shelby

19   W.███████.  But when she confronted you -- do you recall

20   when she confronted you about this?

21        A.   Yeah.

22        Q.   When was it?

23        A.   The morning.

24        Q.   Within how much time of you getting up that

25   morning?

1   A.   She woke me up.

2   Q.   Okay.  And you're well aware that these

3   allegations are that they would have taken place the 2nd

4   to the 3rd of January, and at some point on that morning

5   you were being contacted by the mother of an eight year

6   old who's very upset with you?

7   A.   Yes.

8   Q.   What was your response?

9   A.   I told her I didn't.

10  Q.   I think you cried?

11  A.   Yeah.  Because -- I started crying, because I

12  didn't -- I didn't know what she was talking about.  I

13  went to sleep that morning.

14  Q.   So you had a chance to review the forensic

15  interview in this case between Tammy Knudson and the

16  eight-year-old victim, didn't you?

17  A.   Yes.

18  Q.   You had a chance to review that, either with your

19  attorneys or on your own.  I believe a copy was provided

20  to you?

21  A.   Yes.

22  Q.   So you're well aware that in this case, this

23  eight-year-old child provided this information to her

24  mother within hours of the event taking place.  There was

25  no gap in time between her stating what happened -- to her

1    mother -- was there?

2        A.    I guess not.

3        Q.    Her mother is confronting you, in fact, getting

4    you up in the morning and shooshing (phonetic) you out of

5    the house, she's so upset about the whole thing.  That's

6    what took place; isn't it?

7        A.    Yeah.

8        Q.    So where is it that you're saying that somehow or

9    another there would have been some planting of seed or

10   memory issue with regard to mother and child on the events

11   that took place?

12       A.    Because I remember all three of us sitting in the

13   living room before I passed out, and there was no

14   awkwardness or any state of confusion coming from either

15   one of us around her mom or to anybody else.

16       Q.    Because her mother wasn't aware of what was

17   taking place after that point in time when you're

18   confronted by her?

19       A.    I'm sorry.  What?

20       Q.    Withdraw the question.

21             Did you provide the names of any witnesses to

22   Mr. Hankey that could potentially provide information or

23   insight as to what took place between the 2nd and 3rd of

24   January 2012?

25       A.    The only person who could have was Joe Bull, and

1    he was a witness for Shelby.

2         Q.    And Joe Bull was there and, in fact, was

3    interviewed twice, was he not?

4         A.    Yes.

5         Q.    And you had those interviews?

6         A.    Yes.

7         Q.    And Joe Bull's statements had nothing to do with

8    him stating he observed you taking those steps, you

9    molesting the child?  He wasn't saying that either, was

10   he?

11        A.    No.

12        Q.    So what were you going to gain from Joe Bull's

13   statement?

14        A.    Just that I was at his house.  I was at his

15   house.  He knew that me and Monica were arguing.  I went

16   to the hospital.  Nothing for the allegations, though, I

17   guess.

18        Q.    I know that this is somewhat out of context.

19   Because you did enter the guilty plea, and there were

20   going to be some steps taken for you to assist yourself in

21   your sentencing, weren't there?  You were going to be

22   going into a treatment -- an outpatient treatment program

23   in Red Wing?

24        A.    Yes.

25        Q.    That didn't work out, did it?

1    A.   No, it didn't.

2    Q.   You made about five of those anticipated 20; so

3    you were discharged from the program?

4    A.   Yes.

5    Q.   You didn't help yourself there?

6    A.   I tried, but transportation was hard.

7    Q.   Okay.  You were set up to actually have some

8    assistance with a psychologist down in Fargo, were you

9    not?

10   A.   Yes, I was.

11   Q.   In fact, I believe a family member assisted, and

12   Mr. Blake Hankey sent a $2,500 check down to that doctor

13   in order to set up your interview and allow you to obtain

14   that expert opinion and support.  Do you recall that?

15   A.   Yes, I do.

16   Q.   Did you ever meet with that psychologist?

17   A.   I did not because of transportation.

18   Q.   So you couldn't do it?  You couldn't get from Red

19   Wing, or you couldn't get someone else here to assist

20   yourself, in spite of the fact that you were looking at a

21   minimum five years to a possibility of life in prison?

22   A.   Yes.

23   Q.   Was that your attorney's responsibility to bus

24   you there or to hold your hand getting you there?

25   A.   No, I never said it was.

1    Q.   Your attorneys, as you're well aware, have been

2    in the process of dealing -- and have been licensed for

3    ten plus years in this jurisdiction and dealt with many of

4    these cases.  Do you agree with that?  Did you discuss

5    that with them?

6    A.   Yes.

7    Q.   And you're aware that they'd represented

8    individuals under similar circumstances and seen

9    situations where there's been forensic interviews with

10   children?

11   A.   Yes.

12   Q.   So you have a -- they have a responsibility to

13   you to review all of these things and to give you their

14   considered advice on how to proceed?

15   A.   Yes.

16   Q.   And you were satisfied with that?

17   A.   (No audible response.)

18   Q.   Well, you're on the record saying you were

19   satisfied with it.

20        You indicated you maybe had three face-to-face

21   contacts with Mr. Hankey?

22   A.   Yeah.

23   Q.   Would it surprise you to see that it's about

24   double that and that there are multiple other occasions to

25   attempt to reach you by text, telephone, or letter?

1    A.   Yes.

2    Q.   That would surprise you?

3    A.   I -- I can't recall how many times we did meet;

4  but, yeah, that does surprise me.

5         MR. JONES:  I don't have any further questions,

6  Your Honor.

7         THE COURT:  Mr. Mertz?

8         MR. MERTZ:  No further questions, Your Honor.

9         THE COURT:  Okay.  Thank you, Mr. Dubray.  You

10 may be seated.

11         (The witness was excused.)

12         MR. MERTZ:  Your Honor, I don't have any other

13 witnesses, but I do anticipate cross-examining Mr. Hankey,

14 at least.

15         THE COURT:  Okay.

16         Mr. Jones?

17         MR. JONES:  State would call Mr. Hankey, Your

18 Honor.

19         **BLAKE HANKEY**, called as a witness, being first

20 duly sworn, was examined and testified as follows:

21         MR. JONES:  May I approach the witness, Your

22 Honor?

23         THE COURT:  Yes.

24 **DIRECT EXAMINATION BY MR. JONES:**

25    Q.   Mr. Hankey, I show you what's been marked for

1   identification as State's Exhibits 1 and State's Exhibits

2   2.  Could you describe for the Court what the substance of

3   State's Exhibit 1 is?

4        A.   Yes.  It's a billing sheet translated into an

5   Excel form for the purposes of, I guess, today's hearing.

6   But it's indicative of the majority of time my office had

7   on the Dubray case.  It's got my time, Mr. Fleischman's

8   time, it's got my paralegal's time.  Also has a certified

9   law clerk's time in here as well.

10       Q.   All right.  And is that an accurate business

11  record?

12       A.   (Examining.)  It is.  The last page would also

13  be -- so the first -- to be accurate, one -- the first

14  four pages are the Excel spreadsheet.  The last page are

15  the phone logs we were able to get back from -- from our

16  carrier, which Midcontinent Communications -- we were able

17  to get a spreadsheet.

18       And I guess the reason that not all of these are

19  on the bill log is because if we couldn't get ahold of

20  Mr. Dubray or left a message, we didn't -- we wouldn't

21  bill for that time.

22       Q.   So these would be contacts that wouldn't have

23  necessarily went through?

24       A.   Some might be on there, some might not.  But if

25  we didn't get ahold of him, we didn't charge him.

1    Q.   I show you what's been marked for identification

2    as State's Exhibit No. 2.  Can you describe that, please.

3    A.   I can.  The first five pages are cover letters

4    from my office which was -- which is how our office -- or

5    they're instructed to send out different materials that

6    are received from the State or from another source.  Looks

7    like these cover sheets all have somebody else's initials

8    circled other than mine; so...

9         Our office policy is when the materials come into

10   the office, a photocopy is made for the client, a cover

11   letter is generated by the support staff; and before I

12   even see the materials, they're sent off to the client.

13   That's how we do it so they immediately get it.  And the

14   first five sheets be indicative of those cover letters.

15        The -- the 6th page would be the treatment center

16   report that my office would have received about

17   Mr. Dubray's treatment.

18        The 7th page, another -- it's a letter from my

19   office to Dr. Benson's office with the retainer amount for

20   the evaluation she was going to do.

21        The next two pages are communications between

22   myself and Stacy Benson's office about trying to set up an

23   appointment for Mr. Dubray to get his evaluation done.

24        That would be -- that would be the remaining --

25   there's some other ones with Dr. Benson directly about the

1    evaluation.

2        Q.    All right.   And are those regularly kept business

3    or in the course of your representation of Mr. Dubray?

4        A.    They are.

5            MR. JONES:   Your Honor, copies have been provided

6    counsel.   At this time I would offer.   And I did these

7    cumulative rather than go through each page; so I do have

8    them together.

9            MR. MERTZ:   I have no objection, Your Honor.

10           THE COURT:   Okay.   And that's Exhibits 1 and 2?

11           MR. JONES:   Correct.

12           THE COURT:   Exhibits 1 and 2 are received.

13       Q.   (Mr. Jones continuing)   Mr. Hankey, I don't want

14   to go through all of this.   I think that when we -- when

15   you go through a fair reading of Mr. Dubray's argument, is

16   there's a general argument of ineffective assistance.

17           What he's essentially breaking it down to, I

18   believe, is his allegation or thought that there was a

19   failure to retain an expert as would relate to the

20   forensics interview or assisting him in his behalf.

21           Can you respond to the Court on -- first of all,

22   was an expert hired?

23       A.   Only for -- well, was never officially hired, I

24   guess.   There was a --

25       Q.   -- an attempt?

1      A.   -- an attempt.  But, so, no expert was hired, no.

2      Q.   And what were the dynamics as relating to the

3  possibility of retaining an expert specifically relating

4  to the Tammy Knudson interview of the victim?

5      A.   Right.  And I guess before I go -- and I just

6  want to be pretty guarded in what I say right now.  I

7  don't believe privilege has been waived in any form at

8  this point.  So I can kind of give a general -- my

9  analysis, but I can't go very deep into things.

10      MR. JONES:  And I believe that there's -- yeah,

11  it does present an issue, Your Honor.  We probably do need

12  to do that if we're going to go into any detail.

13      THE COURT:  Mr. Dubray, are you willing to waive

14  your attorney/client privilege with Mr. Hankey?

15      NATHAN DUBRAY:  Sure.

16      THE COURT:  Okay.  Then, we'll go ahead, and I'll

17  allow you to answer the --

18      MR. HANKEY:  Okay.

19      THE COURT:  -- questions.

20      A.   You know, I guess the long answer is I looked at

21  the video; Mr. Fleischman looked at the video.  You know,

22  I don't know an exact number, but I've handled numerous

23  cases like this.

24      The one that really stands out to me is a federal

25  case I had, and it's to this day the one trial that I lost

1    that I really firmly believe my client was innocent, and I

2    should have won.

3           And so I guess I'm familiar with, you know, what

4    a known sample is of an appropriate way -- at least what I

5    believe is an appropriate way to interview a child

6    witness.  It seemed like Ms. Knudson handled everything

7    appropriately.  Didn't see a need to get another witness.

8    I guess one of the things that I don't try and do is spend

9    money needlessly that doesn't need to be there.  I didn't

10   see a need.

11          My recollection of the interview and conversation

12   with Mr. Dubray was the child witness was in a room alone

13   with Ms. Knudson.  She wasn't asked leading questions.

14   She was actually giving descriptions as to what was

15   happening.  She described what Mr. Dubray had done:  was

16   touching her bottom, which she indicated was her vagina or

17   vaginal area, and that, you know, I mean, she described in

18   pretty good detail.  And I guess my position was I didn't

19   need to get an expert.

20          And, you know, quite frankly, there had been a

21   lot of money expended, and, I mean, I know the source of

22   the money was coming from my client's father-in-law, and I

23   wasn't going to take money that didn't need to be spent.

24        Q.   (Mr. Jones continuing)  When you review this

25   question of a need, one of the factors is how soon or how

1   the timing of the reporting of an incident to a parent, to

2   a law enforcement, to a doctor, to a teacher?

3       A.   Right.  And that's really something that we

4   looked into, and it was -- you know, it was reported the

5   morning it happened.  My recollection is Mr. Dubray was

6   woken up on the couch by the child's mother, the -- either

7   morning or early afternoon.  I think it was about noon.

8       Q.   Was there any time lapse that you were aware of,

9   then, between the report of the victim to the mother?

10      A.   No.  To my knowledge it was pretty instantaneous.

11      Q.   You've had an opportunity, and I believe that,

12  along with and showed to, Mr. Dubray had the same

13  opportunity to review the video of Ms. Knudson's

14  interview.

15      A.   Yes, he was given a copy, and I know -- I can't

16  say that I remember sitting down and reviewing the video

17  with Mr. Dubray, but I know Mr. Fleischman did.  We had a

18  conversation about that, and I know that Mr. Dubray and I

19  did speak about the video.  I don't think that him and I

20  personally reviewed it, but I know we spoke of it, and I

21  know he reviewed it with Mr. Fleischman.

22      Q.   Is it safe to say that, in spite of that fact in

23  making a professional judgment on whether there would be

24  anything to be gained by bringing in an expert, that

25  wouldn't have prevented you from a vigorous

1    cross-examination of Tammy Knudson should the matter have

2    went to trial?

3        A.   No.  And, you know, pretty candidly, that's kind

4    of where I hang my hat as a defense attorney and what I

5    try and do, and I try to do a zealous cross-examination

6    every time that I do, and I would have prepared -- well,

7    in fact, quite frankly, we were getting pretty close to

8    trial.  We were already full in trial prep.  I had met

9    with Mr. Dubray about trial prep, and we were ready to go.

10       Q.   You had a chance, then, also to review the

11   documentation from Dr. Arne Graff?

12       A.   Yes.

13       Q.   And was that consistent with what had been

14   provided you through the Tammy Knudson interview and the

15   statements of the witnesses?

16       A.   Yes.

17       Q.   As far as trial preparation is concerned, this

18   was a case where we actually went so far as to do a jury

19   questionnaire.  Whose idea was that?

20       A.   Mine.

21       Q.   And do you recall how extensive that

22   questionnaire was?

23       A.   I don't.  But in these types of cases, I

24   generally like to do it when there's a child victim

25   involved.  Because it's pretty difficult, in my prior

1    experience, to pick a jury and ask the questions, and it

2    gets pretty sensitive; so that was something that I

3    wanted.

4       Q.   Had you discussed prior bad acts with Mr. Dubray?

5       A.   I had.  And, you know, it was my opinion the

6    State couldn't use that evidence against him unless we

7    opened the door.  So when we were prepping his testimony,

8    one of the questions that -- or one of his answers was --

9    and I remember this vividly -- "I would never do that."

10       Well, guess what?  There's other prior bad

11    incidents.  And I would have tried to keep out the other,

12    and still, in my opinion, I probably could have kept that

13    out.  But he had to be very selective in how he answered

14    questions so that evidence couldn't be brought in.

15       Q.   And to bring it in there would have -- there

16    would have likely been a motion in limine, and the Court

17    would have made a decision?

18       A.   Right.  Right.  But the crux of where I was going

19    with Mr. Dubray was we can't open the door.  So we can't

20    say, "I would never do this," when there's one prior --

21    even though it's a juvenile conviction -- another prior

22    allegation out of Minot.

23       Q.   In this case, there were plea negotiations with

24    the State prior to the pretrial conference, and I believe

25    a cover letter was sent and is part of Exhibit 2.  Did you

1   have a recommendation to your client on whether or not to

2   accept the plea offer made by the State?

3       A.   At that point in time, in my communications with

4   Mr. Dubray leading up to that point, it was to reject that

5   offer.

6       Q.   And why was that?

7       A.   I guess I honestly can't remember.

8       Q.   When the change of plea took place on the 15th of

9   July, how much lead time did you have?  When did you first

10   become aware that your client was going to or sought in

11   his interest to change his plea?

12       A.   We -- well, it had been something that Nathan and

13   I had talked about, you know.

14       And I guess there's a little more of a back

15   story.  Nathan was difficult to get ahold of.  I mean, the

16   Court can see with what's been provided, the communication

17   we did have.  There would be lapses in time where we would

18   have very little communication.  And so, you know, I guess

19   our office went as far as texting and trying those kind of

20   means to get ahold of him.

21       And so, you know, as far as sitting down and

22   talking with him about the case and how to proceed, you

23   know, the couple times that I vividly remember were

24   sitting down, going through the discovery with him and

25   talking about the weaknesses of our case, which I always

Blake Hankey-Direct by Jones

1    do.

2          I mean, I think we're -- I wouldn't do my clients

3    a service if I just said it was all rosy and just, we had

4    a great case; they can't prove it.

5          So we did go over the statements that he made.

6    We did go over, you know, the discovery materials, what

7    was weak on our side.

8    Q.    And I'll just -- in your professional judgment,

9    was there a significant risk factor in trial?

10   A.    There is.  Especially given the stakes and, quite

11   frankly, this judge.  I mean, we -- if -- you know, I

12   mean, there's been some pretty hefty sentences that have

13   come down with a loss at trial, and I think that's an

14   important factor to consider, you know, in all my clients.

15   Not that I recommend "plead guilty" if that's not what you

16   want to do.

17         But, you know, the day of the change -- I think

18   it was the day of the change of plea, it was Nathan,

19   Mr. Fleischman, Mr. McCarthy, and myself in a conference

20   room just right by Judge Jahnke's courtroom, and we sat in

21   there for a while.

22         And Mr. McCarthy, to avoid trial, wanted a chance

23   to just speak with all of us and say, "Here's why I think

24   I can prove my case."  And not many prosecutors do that,

25   but I -- quite frankly, I like it because it gives me a

1   nice snapshot into what the State is trying to prove or

2   what they think their case is, and it helps me attack it.

3       And, I guess, after that meeting we had a chance

4   to further talk, and it was at that time, then, that

5   Mr. Dubray made up his final determination, after speaking

6   with Mr. Fleischman, myself, alone, without Mr. McCarthy

7   there, as to what -- how we were going to proceed.

8       Q.   Did you in any way try to force Mr. Dubray to

9   make a trial decision?

10      A.   No.   I mean, that's not the way I practice law

11  at all.

12      I guess I can't remember specifically what I said

13  to him, but standard, what I tell all my clients is, "It's

14  your decision.   Here's the negatives.   Here's the

15  positives.   And, you know, ultimately it's up to you."

16      "And, you know, I'll go to trial, but if we go to

17  trial and lose, these are the negatives.   If we go to

18  trial and win, you walk out of here with nothing."

19      And so --

20      Q.   Would it be accurate -- an accurate statement

21  that that decision, then, did lead you to make a different

22  type of argument at sentencing, which included acceptance

23  of responsibility and included arguments as to -- while

24  not a legal defense -- putting into play the intoxication

25  and the blackout circumstance?

1  A.   Right.   That was part of the problem with the

2  case and why we did an Alford plea.   I don't do those very

3  often in my practice, but this is a case where there was

4  no other choice but to proceed, you know, in that manner.

5  And so that was part of the consideration why we

6  were going to get Dr. Benson involved, why we were going

7  to do -- you know, we were going to do a psychosexual

8  evaluation on Mr. Dubray to, you know, make determinations

9  as to his risk factor and how it can be, you know,

10  treated, etcetera, to try to limit the exposure he had.

11  Q.   In your estimation in either Dr. Graff's or Tammy

12  Knudson's interviews with the -- this juvenile victim, did

13  you see evidence of leading questions or tainting?

14  A.   No.

15  Q.   You've done similar cases and have seen where

16  you've made the argument that has taken place, in your

17  estimation?

18  A.   I've not done a trial on that issue, but I've

19  seen similar cases where I've used that in negotiations or

20  things like that.   But I've not had a trial -- if that's

21  your question, I have not had a trial where I've raised

22  that, but I've had similar cases where I've seen it.

23  Q.   Were you aware of whether or not Mr. Dubray was

24  ever seen by Dr. Benson?

25  A.   Never.

1    Q.   So what happened to the $2,500?

2    A.   It was -- I think it was returned to Mr. Bird

3  Bear.

4         MR. JONES:  I don't have any further questions,

5  Your Honor.

6         THE COURT:  Okay.  Mr. Mertz, you may

7  cross-examine.

8         MR. MERTZ:  Thank you, Your Honor.

9  **CROSS-EXAMINATION BY MR. MERTZ:**

10   Q.   Mr. Hankey, were you retained or appointed in

11  this case?

12   A.   I was retained.

13   Q.   Okay.  I've looked through the file I received in

14  this case and the Court's records.  I could not find that

15  the State had made a formal 404(b) notice in this case.

16  Was there a 404(b) notice concerning these prior bad acts?

17   A.   To my recollection there wasn't, and that

18  was what I was talking about with Mr. Jones.  Just, we had

19  to be careful in Nathan's testimony not to open up the

20  door about prior -- other prior incidences.  And that's --

21  to my recollection, that's why I thought I could

22  potentially keep those out.

23        I don't rec -- remember the State ever making

24  one.

25   Q.   And, by the same token, you did not file any kind

1  of a written motion in limine to get a pretrial ruling

2  about preventing State's witnesses from talking about

3  these other allegations, did you?

4      A.   No.

5      Q.   And why not?

6      A.   Well, I guess there's no indication that they

7  were ever going to be used unless we opened the door.  So

8  that's where I was -- what I was thinking is they -- the

9  State is not trying to use them, then, great, they're not

10  going to use them.  And I wanted to be careful that Mr.

11  Dubray didn't open up the door on his testimony so they

12  could be brought in.

13     Q.   Have you, in other cases, filed motions in limine

14  to keep out prior bad acts evidence?

15     A.   I have when I had the indication that the State

16  would be using that evidence.

17     Q.   Did you discuss with Mr. Dubray his position

18  concerning those allegations of prior bad acts?

19     A.   We discussed it, and he gave a pretty similar

20  explanation to me as he gave on the stand.

21     Q.   Okay.  So you knew that he was denying that

22  those -- that he had actually engaged in that behavior?

23     A.   Right.

24     Q.   Did the State give you notice that they were

25  going to call expert witnesses in this case?

1    A.    Yes.

2    Q.    And what were those expert witnesses, and what

3  was the purpose of them?

4    A.    Oh, my recollection is they were going to call,

5  oh, the person that did the forensic interview, Tammy

6  Knudson, to, I guess, testify to, you know, how she

7  conducted the interview.  You know, I guess that was my

8  understanding.  And I had the interview, I guess, and a

9  transcript of it.

10         And also Dr. Graff, I believe, was going to be

11  called as well.  I can't -- it's been a while.  I can't

12  right now think of what he exactly was going to testify

13  to.  I believe I was given a CD and a disclosure.

14    Q.    Was there a pretrial hearing concerning the

15  admissibility of hearsay evidence in this case under the

16  rules?

17    A.    There -- there wasn't, but, again, I was of the

18  opinion I could keep hearsay out.  It wasn't -- wasn't a

19  party.  It wasn't -- you know, he had a right to confront

20  his accusers.  I believe the eight year old would have had

21  to testify, and I would have fought to keep all the

22  hearsay evidence out.

23    Q.    Okay.  But there's a rule that requires the Court

24  to conduct a pretrial hearing concerning potential hearsay

25  evidence in a child sex abuse case.

1     A.   Correct.

2     Q.   Was there such a pretrial hearing in this case?

3     A.   No, there wasn't.

4     Q.   Okay.  Did you have Nathan Dubray privately take

5  a polygraph?

6     A.   I didn't.

7     Q.   Okay.  Have you ever done that in defending a

8  case?

9     A.   A few times.

10     Q.   Okay.  In this particular case, in reading the

11  record including -- up to and including the sentencing,

12  there was some implication that Nathan was suffering from

13  a selective memory.  He remembered parts of the night

14  and -- but he claimed he didn't remember molesting this

15  child --

16     A.   That's correct, yes.

17     Q.   -- is that accurate?

18     A.   Yes, it is.

19     Q.   Okay.  And it's my understanding that you did not

20  hire a private investigator, did you?

21     A.   No.

22     Q.   And you did not conduct any depositions of

23  anyone?

24     A.   Did not.

25     Q.   Okay.  And you didn't personally or have someone

1    in your staff interview any of the witnesses?

2       A.   No.

3       Q.   Okay.  Now, when would you do that in a -- you

4    know, this is a -- correct me if I'm wrong -- a double A

5    felony, two counts.  When would you hire an investigator

6    in a case, for example?

7       A.   If I believe the witness credibility was at

8    issue, there was some loose ends, something that needed

9    answers to.  And in this case, I didn't believe one was

10   necessary.

11      Q.   And why was that, sir?

12      A.   There was only two people there at this incident,

13   two people who knew what was going on.  We have an eight

14   year old and Mr. Dubray and, then, the other witnesses.  I

15   didn't believe, in my professional judgment, anything

16   could be gleaned by having a private investigator.

17      Q.   Okay.  Would that also apply to depositions?

18      A.   Correct.

19      Q.   Did you contemplate deposing the child?

20      A.   No.  No, I did not.

21      Q.   Have you ever deposed any victims in sexual

22   assaults or GSI cases in your practice?

23      A.   I haven't.

24      Q.   You've never deposed the victim?

25      A.   I haven't.

1    Q.   Okay.  Mr. Hankey, you were prepared to go to

2    trial.  You were preparing to go to trial, and your client

3    pled guilty on the eve of trial.  Would you tell the Court

4    what your theory of defense would have been in this case

5    had you tried the case.

6        A.   We would have had -- I mean, I can't tell you

7    exact theory.  I can tell you what I would have done.  I

8    guess, you know, we would have attacked the credibility.

9            We would have -- and I guess prepping Nathan, he

10   would have had to be just rock solid on the stand and that

11   was what -- the crux of what we were going to do.

12           And, I guess, viewed it as a "he said, she said"

13   type of a case.

14           We've got, you know, Nathan, and we had to be

15   careful on what he said so negative things couldn't come

16   in against him.

17           His testimony versus the eight year old.  Went

18   through in detail with Nathan about how -- what does she

19   have against you?  Why is she lying?  Why would she make

20   this up?

21           I guess the response that I received was that she

22   didn't -- that she didn't like -- when I'm talking about

23   the mother here, didn't like -- Nathan didn't like the new

24   boyfriend of who Shelly was dating; so that might be an

25   indication as to why she might be out to get him.

1    But, really, you know, Nathan wasn't able to come

2  up with much to give me as far as why this family would be

3  out to get him, why this girl would be making this up.

4    So, you know, that was our theory is that we were

5  going to try to say that for some reason the family was

6  mad, making this up, and Nathan had to be, you know, rock

7  solid on the stand.  That's --

8    Q.   But -- and we're talking about the child's

9  mother, Shelby.

10    A.   I think it's Shelly.

11    NATHAN DUBRAY:   Shelby.

12    MR. HANKEY:   Shelby?  Okay.  Sorry.

13    Q.   (Mr. Mertz continuing)  But -- okay.  So would

14  you agree that it's extraordinarily difficult to

15  effectively cross-examine a child, a small child?

16    A.   I would disagree.  Treat it a little bit

17  differently, but, I mean, it's easier on cross-examination

18  because you can ask them leading questions.

19    Q.   Well, I understand.  But do you recognize the

20  difficulty of basically attacking a child in front of a

21  jury?

22    A.   Right.  And, I guess, I've had to do it before.

23  I just need to use a different approach.  I don't think

24  it's difficult, though.

25    Q.   But you didn't see a need to depose the mother,

1    Shelby.  If you were going to present a theory of defense

2    that someone coerced or coached this child into making

3    this up -- you know, somehow either she's telling the

4    truth or she's making it up; right?

5         A.   Right.

6         Q.   Okay.  But you didn't see a need to depose Shelby

7    to ask those specific questions?

8         A.   No, I didn't.  You know, a lot of times in these

9    cases I like to keep things close to the vest.  And I've

10   been burned by having prelims and having witnesses, and

11   then we get to the trial, and all of a sudden they've had

12   time to prepare; the State's had time to prepare.

13           And no.  It was actually never a consideration.

14   It wasn't an afterthought.  It was that it was just never

15   a consideration.  The first time that I wanted to attack

16   or I wanted it to be here in front of the jury, if that's

17   the route we were going.

18        Q.   What would you base your questions on?  I mean, I

19   don't understand.  If you have no idea how she's going to

20   respond to your theory that she somehow coaxed this child,

21   what would you base your questions on, Mr. Hankey?

22        A.   So your question is my theory was she somehow

23   coaxed the child?

24        Q.   Right.  Right.

25        A.   "Isn't it true you're dating" -- I forget the

1    guy's name.  "Nathan didn't like that, did he?"

2         Q.   Okay.

3         A.   And, you know, I mean, that would have been what

4    I would have done.  And then --

5         Q.   Okay.

6         A.   -- Nathan would have had to testify to his

7    version of it but...

8         Q.   Okay.

9         A.   I guess I didn't want to give her or the State

10   any indication as to where we were going, because that

11   door probably very well would have been closed by the time

12   of trial.

13        Q.   Okay.

14             MR. MERTZ:  Thank you, Your Honor.  That's all I

15   have.

16             THE COURT:  Okay.  Mr. Jones.

17             MR. JONES:  Just a couple of follow-ups.

18   **REDIRECT EXAMINATION BY MR. JONES:**

19        Q.   First of all, on the issue of prior bad acts.  Is

20   it accurate that a great deal of that came from the PSI

21   and not from other information, other than, I believe,

22   there was a reference by Alcon, Mario Alcon?

23        A.   True.  And there was -- I had no indication the

24   State was going to try to use it.

25        Q.   Correct.  And it would be your practice, if it

1   were to come out, there'd be a motion or -- a motion in

2   limine, or you would have dealt with it at trial?

3       A.   Right.

4       Q.   You're aware that intoxication or -- can present

5   a serious problem with polygraph testing?

6       A.   Well, right.  The theory was, you know -- I mean,

7   well, shouldn't say "the theory," but, I mean, Nathan's

8   statement was that he didn't remember; so I don't know

9   what a polygraph would have done.

10          I mean, that's, you know -- and in my normal -- I

11  don't know if it was in this case, but normally I'll ask

12  the State, "Hey, if my client takes some passes of

13  polygraph, will you give it consideration?"  And on double

14  A felonies, I guess, I don't remember a case where it's

15  been given much consideration by the State but --

16      Q.   And you're aware that it's generally not even

17  offered or in consideration in instances where there's

18  blackout-type conditions?

19      A.   Right.  And I have a polygraph guy, it's Rollie

20  Rust, to do all my independent polygraphs.  It's a tool

21  that I do utilize, but in this case I didn't think it was

22  worthwhile to do it.

23      Q.   Would it be accurate to say that a lot of this

24  comes down to trial strategy?

25      A.   Yeah, I think a hundred percent on a case like

1    this.

2        Q.   And you'd had a chance to view -- review this

3    uncomfortable situation between Shelby W.████ and

4    Mr. Dubray.  This was something you discussed with your

5    client, was it not?

6        A.   Yes.

7        Q.   And that he was well aware that that would have

8    been one of the angles, one of the things that you would

9    have inquired in in examination or cross-examination?

10       A.   Oh, absolutely.  We had to attack the credibility

11   of her, and that's why, you know, the conversation was

12   had:  "Does she have something against you?  Does she not

13   like you?  Is she trying to get back at you?"

14            And, you know, that's when the thing about the

15   boyfriend came up that, you know, he didn't like, and

16   there was an issue between them now, and so that

17   conversation came about.

18       Q.   Okay.

19            MR. JONES:  I don't have any further questions,

20   Your Honor.

21            THE COURT:  Anything further, Mr. Mertz?

22            MR. MERTZ:  A little follow-up, Your Honor.

23   Thank you.

24   **RECROSS-EXAMINATION BY MR. MERTZ:**

25       Q.   Mr. Hankey, would you agree that to be effective,

1    especially in a jury trial, that you have to present -- to

2    be successful and effective, you have to try everything in

3    your power to present a credible theory to the jury?  You

4    have to be credible with them?

5         A.   Right.  I mean, yeah.  Yes.

6         Q.   Okay.  And to go -- just to go back to the

7    polygraph as a prep tool or a defense tool, Mr. Dubray

8    would have had trouble on the witness stand because of the

9    perception that he was experiencing a selective memory,

10   wouldn't you agree?

11        A.   He would have.

12        Q.   Okay.  And so the issue of whether or not he

13   actually remembered or didn't remember.  That would be the

14   point of the polygraph, did he actually remember what he

15   did, or didn't he remember?  As a defense attorney, you

16   would want to know if he was telling you the truth.

17        A.   Yeah, I can see that side of it.  Sometimes,

18   quite frankly, I don't want to know.  I mean, it's --

19   it's -- it's -- I mean, if our defense is call him to the

20   stand and testify, if I know he's going to be lying, I

21   can't call him as a witness --

22        Q.   Right.

23        A.   -- so --

24        Q.   Right.

25        A.   -- I mean, it gets to be a slippery slope.

Blake Hankey-Recross by Mertz

1    Q.    But, yes, but giving him effective and wise

2    counsel or, you know, effective counsel, pretrial, part of

3    it is being the devil's advocate.   You've already

4    talked --

5    A.    Yeah.

6    Q.    -- about that --

7    A.    Yeah.

8    Q.    -- right?

9    A.    Oh, absolutely.   Yeah.

10   Q.    You have to spend a lot of time with the

11   defendant showing the strengths of the prosecutor's case,

12   would you agree?

13   A.    Yes.

14   Q.    And the weaknesses of your theory of defense?

15   A.    Correct.

16   Q.    Okay.   So you would rather not put a defendant on

17   the witness stand when the story he's going to tell is

18   just going to get shot all full of holes; right?

19   A.    True.

20   Q.    Okay.

21   A.    Yeah.

22   Q.    And part of your job as the defense attorney is

23   to point out, basically, some of the fallacies that your

24   defendant is advocating to you in your conversations with

25   him?

1    A.   Correct.   Yeah.

2    Q.   Okay.

3    A.   I agree with that.

4    Q.   Okay.   Thank you.

5         MR. MERTZ:   No further questions.

6         THE COURT:   Mr. Jones?

7         MR. JONES:   No, Your Honor.

8         THE COURT:   Thank you, Mr. Hankey.

9         (The witness was excused.)

10        THE COURT:   State have any further witnesses?

11        MR. JONES:   No, Your Honor.

12        THE COURT:   Mr. Mertz, do you have any further

13   testimony?

14        MR. MERTZ:   No, Your Honor.   Thank you.

15        THE COURT:   Okay.   Then, were the parties going

16   to brief this any further or...

17        MR. MERTZ:   Leave that up to you, Your Honor.

18   I'll do whatever you'd like.

19        THE COURT:   It really doesn't matter to me.

20        MR. MERTZ:   We could do a brief closing argument

21   or --

22        THE COURT:   That will work.

23        MR. MERTZ:   Okay.

24        THE COURT:   You may go ahead.

25        MR. MERTZ:   Well, Your Honor, I know you can tell

1   from my questioning, you know, where we're going with

2   this.

3          Mr. Dubray specifically -- you know, he was

4   facing two double A felonies with the possibility of life

5   without parole, and I would suggest that he would have a

6   right to expect his attorney to leave no stone unturned.

7          And we know that Mr. Hankey, you know, didn't

8   hire an expert, didn't hire an investigator, didn't

9   hire -- didn't do any depositions, didn't interview any

10   witnesses.  He basically went off of the prosecutor's

11   discovery and, you know, his analysis of that discovery

12   with his client.

13          I do appreciate the detailed time records that

14   were introduced.  They were obviously very useful for this

15   Court.  And I was -- I just saw it now this morning, and I

16   was trying to total up how much time Mr. Hankey recorded

17   that he spent with Mr. Dubray pretrial.  It's not

18   insignificant.

19          I came up with about 11.3 hours right up to and

20   including the date of the plea, which included the

21   conferences that he talked about on the eve of trial, two

22   hours spent visiting with the prosecutor and with

23   Mr. Dubray.  But 11 hours out of 60-some for two double A

24   felonies.

25          I also think there's -- there is a problem with

1    these prior bad acts that were basically used, in a sense,

2    to persuade him to plead guilty.  Now we're hearing that

3    there was no fear that they would come in; but, again,

4    there was no motion in limine, which I view as a problem.

5         I certainly can't -- I'm not going to testify,

6    Your Honor, but there are aspects of this that I would

7    suggest, based on your experience, what you've seen in

8    similar cases leading up to this --

9         You know, I pressed Mr. Hankey initially on, you

10   know, "What was your theory of defense?  We're on the eve

11   of trial.  What's your theory of defense?"  And he

12   initially couldn't articulate it.

13        Then, later on, we were discussing the issue of,

14   you know, trying to undermine the credibility of the

15   child.  I would respectfully disagree with Mr. Hankey.  I

16   think it's extraordinarily difficult to cross-examine a

17   child in a sexual assault case, because I've even written

18   an article on it.  It's -- if you attack a young child in

19   front of a jury, I think you risk -- you have this

20   tremendous risk of alienating the jury.

21        So I think you do have to attack the adults

22   around the child.  And the mother would be the clear

23   subject of that, and there was no deposition of the

24   mother, and there was no interview of the mother; so

25   you're going to trial basically blind.  You don't know

1    what she's going to say.

2          You know, you could ask her, "Isn't it true that

3    Mr. Dubray didn't like your current boyfriend?"  And she

4    could have simply said, "Oh, no, that wasn't a problem."

5    And Mr. Hankey wouldn't know she was going to say that

6    until she was on the witness stand in front of the jury.

7          I think there are some severe gaps in trial

8    preparation here and in -- and in -- and ineffective

9    representation of Mr. Dubray.

10         I know, Your Honor, when Mr. Dubray came for

11   sentencing -- you know, I had the transcripts prepared,

12   because I wanted to know exactly what was said and what

13   went on, and Mr. Dubray indicated a desire to withdraw his

14   pleas.

15         You left the door open for a motion that could be

16   briefed and heard at a later date.  You chose to go on

17   with sentencing, but you left the door open.  I looked in

18   the record.  There was no such motion.

19         So we're left with an individual who feels that

20   he was not adequately represented or advised and that that

21   deprived him of his sacrosanct right to have a trial by

22   jury.

23         And Mr. Dubray brought this action, as you well

24   know, believing that he was ill-advised and that he did

25   not receive effective assistance, and therefore he's

1    asking that you would vacate the judgments and we go back

2    into a pretrial mode, would be my understanding at that

3    point.

4            Thank you, Your Honor.

5            THE COURT:   Thank you.

6            Mr. Jones?

7            MR. JONES:   Thank you, Your Honor.

8            First of all, with regard to the expert issue,

9    just to quickly reiterate on this, there's no allegation

10   and there's no inference in this case that there was any

11   gap in the incident and the reporting of the incident.

12           There's no issue of tainted memory.   There's no

13   issue that's been presented that would indicate this

14   eight-year-old girl was somehow inconsistent with her

15   statements both with Tammy Knudson and Dr. Graff.   There's

16   just simply nothing there to state that it was planted or

17   tainted.

18           Mr. Dubray would have us take a situation as he

19   would like it, rather than as the facts actually are

20   presented.   Quite frankly, the biggest problem Mr. Dubray

21   has in this case is Mr. Dubray.   And it's his own

22   statements; it's his own reactions; it's his own responses

23   to the mother, to law enforcement, and to questioning in

24   this case.

25           He presented a situation where it was going to be

1   extremely difficult for any defense to present him other

2   than as having stated, "I don't remember what happened,

3   but it could have happened."  That's the facts that we

4   have.

5          When we look at the witness statements on this,

6   they're not there as factual from the standpoint of having

7   observed what took place, but they're internally

8   consistent with what took place.

9          As far as the prior bad acts or prior incidences,

10  I'm not aware of anywhere in the case where it would have

11  been the State's intent to bring it in.  One was a

12  juvenile act.  I don't know how it would come in anyway.

13         The second is it just simply wasn't presented.  I

14  believe the concern would have been, and it's an active

15  concern, that when you hit sentencing, if found guilty,

16  it's an extraordinarily important matter to take into

17  consideration.

18         It was taken into consideration, and it was a

19  manifestly serious issue that needed to be addressed, and

20  by addressing it, I think the Court took all of this into

21  consideration and acceptance of responsibility.

22         And I believe in your sentencing you specifically

23  referred to those issues, that you were going to look at

24  that.  I believe one of your statements was, yeah, you

25  don't believe that he planned this; however, there was

1   intoxication, and that's what took place.

2        What we have in addition to that is what comes

3   down to trial strategy, and that's a factor that is always

4   going to be pertinent in a case like this.  We've seen 'em

5   many times.

6        I know that the defense, in cases like this,

7   often times take a position of, "I don't want to show my

8   cards on it, because if I show my cards, the State's gonna

9   go find two witnesses to deal with it."

10       We sometimes call it, not very kindly, a defense

11  by ambush.  But the reality is that's what it is.  We deal

12  with it all the time.

13       What we're here for, and I think essentially what

14  it all boils down to, the polygraph's a red herring.

15  Polygraphs have no efficacy if an individual is seriously

16  impaired.  You can't say what's part and what's not part

17  true or accurate.  They're just very rarely offered in a

18  case of that degree of intoxication where an individual

19  says he can't remember.

20       We're here because -- and I believe this is a

21  paraphrase of Mr. Dubray's statement in response to one of

22  my questions -- we're here because he didn't like the

23  sentence, and that's really what it boils down to.

24       There was no error.  We don't show that a

25  prejudice, in terms of what the trial strategies of

1  Mr. Hankey in his office were, negatively impacted

2  Mr. Dubray.

3       The Court is well aware and can take judicial

4  notice of the fact Mr. Hankey is anything if not zealous

5  in his representation and going to trial.  He doesn't

6  shirk from that responsibility, and he didn't here.  He's

7  retained in this case; so, if anything, he had even a

8  greater incentive to go to trial in a case like this.

9       We just simply don't see that.  We don't see that

10  the burden has been met.  We would rely on our brief with

11  regard to the specific laws would relate to this.  We

12  don't show that the two prongs have been met in this case,

13  and we believe that the motion should properly be denied.

14       THE COURT:  Mr. Mertz, anything further?

15       MR. MERTZ:  No.  Thank you, Your Honor.

16       THE COURT:  Okay.  I will give you a written

17  decision on this case.

18       MR. MERTZ:  Thank you.

19       THE COURT:  Okay.  Thank you.

20       And I can't remember the transport order.  Did it

21  say for the sheriff to return him when this was done?

22       MR. MERTZ:  That -- my orders pretty much always

23  say that.  I'm confident it does.

24       THE COURT:  Okay.

25       MR. MERTZ:  If it doesn't for some reason, I'll

1    submit one to you.

2              THE COURT:  Okay.  I just didn't look at it.  So

3    I'll just notify the clerk that they can let the sheriff

4    know he can be transported back.

5              MR. MERTZ:  Thank you, Your Honor.

6              THE COURT:  Okay.  Thank you.

7              This hearing is adjourned.

8              (The proceedings were concluded at 12:26 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF COURT REPORTER</u>

STATE OF NORTH DAKOTA )
                       ) ss.
COUNTY OF GRAND FORKS  )

       I, Marsha Allmaras, a duly appointed official court reporter,

       CERTIFY that I recorded in shorthand the foregoing proceedings had and made of record at the time and place indicated.

       I FURTHER CERTIFY that the foregoing and attached 59 typewritten pages contain an accurate transcript of my shorthand notes then and there taken.

       Dated at Grand Forks, North Dakota, this 1st day of February, 2015.

*Marsha Allmaras*
---------------------------
        Marsha Allmaras
      Official Court Reporter

THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO THE REPRODUCTION OF THE SAME BY ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING COURT REPORTER.

**Dubray, Nathan          Opened September 2012**

| Date | Initials | Job | Time | Postage |
|---|---|---|---|---|
| 9/16/2012 | BDH | Intake with nathan dubray, no charge. | 1 | |
| 9/25/2012 | BDH | TC from client's father-in-law | 0.2 | |
| 9/25/2012 | JLC | Opened file, drafted discovery demand, notice of appearance, certificate of service, sent copies to client. | 1 | |
| 9/26/2012 | ALF | Ct. Appearance - ITV from Jail. Initial Apperance/Bond Setting | 0.5 | |
| 9/26/2012 | ALF | Met with Client @ GFCCC to discuss Int. App/bond | 1 | |
| 9/26/2012 | BDH | TC to State's Attorney | 0.2 | |
| 9/27/2012 | ALF | Met with Client @ GFCCC to discuss Int. App/bond | 0.7 | |
| 9/28/2012 | BDH | TC from Client | 0.2 | |
| 10/4/2012 | ALF | Visit client @ GFCCC re: resheduled bond hrg. | 0.5 | |
| 10/4/2012 | AN | Letter to client | 0.2 | $0.45 |
| 10/4/2012 | BDH | TC from Roger Birdbear | 0.2 | |
| 10/4/2012 | BDH | TC to State's Attorney | 0.2 | |
| 10/5/2012 | ALF | TC with Burleigh County State's Atty. Re: provation revocation cases. | 0.2 | |
| 10/8/2012 | ALF | Review discovery materials provided by state's attorney. | 0.4 | |
| 10/8/2012 | AN | Discovery to Client | 0.8 | Jail |
| 10/8/2012 | AN | Letter to Client (Supplemental) | 0.2 | Jail |
| 10/9/2012 | BDH | Bond Hearing | 0.5 | |
| 10/10/2012 | ALF | Mtg with client and assistance @DMV obtaining driver's license. | 0.7 | |
| 10/10/2012 | LCR | Discovery Review | 0.3 | |
| 10/11/2012 | LCR | Discovery Review | 0.7 | |
| 10/14/2012 | LCR | Discovery Review | 3 | |
| 10/15/2012 | LCR | Discovery Review | 0.8 | |
| 10/16/2012 | LCR | Discovery Review | 0.8 | |
| 10/18/2012 | BDH | Discovery Review, including video. | 4.2 | |
| 10/18/2012 | ALF | Met with Burleigh County Assistant State's Attorney re: outstanding warrants in probation cases. | 0.5 | |
| 11/1/2012 | ALF | TC with Monica Dubray & Roger Birdbear to locate Nathan. Attend hearing re: outstanding bench warrants & probation reovation (Nathan not present). Met with Community Service Supervisor re: verification of completion of community service & payment of fee. | 1 | |
| 11/1/2012 | ALF | Travel time back to GFK | 3.8 | |

FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

OCT 2 1 2014

REBECCA ABSEY, CLERK
BY
Deputy

STATE'S
EXHIBIT 1
10-20-14 AA
18-2014-CV 960

EXHIBIT
12

33

| | | | | |
|---|---|---|---|---|
| | | Met with client before court appearance for arraignment and entering not guilty plea. | (5) | |
| 12/4/2012 | ALF | Went to Court Hearing (Arraignment) | 0.5 | |
| 12/10/2012 | AN | Letter to client w/ notice of hearing | 0.1 | |
| 12/20/2012 | AN | Phone Call | 0.1 | |
| 1/3/2013 | AN | Copy of Plea Agreement to client. | 0.1 | $0.45 |
| 1/4/2013 | ALF | View DVD of child victim interview. | 1.3 | |
| 1/7/2013 | ALF | Reviw police reports of discovery docs - prep for client meeting. | 0.5 | |
| 1/9/2013 | ALF | TC with Roger Birdbear | 0.1 | |
| 1/10/2013 | ALF | OC w/ Client, Roger Birdbear and Blake. Attend Ct. Appearance - pretrial hrg w/ blake | (6) 1.6 | |
| 1/10/2013 | AN | Letter to Client w/ supplemental information | 0.2 | $0.45 |
| 1/10/2013 | BDH | Met with client/ Pretrial Hearing | (7) 1 | |
| 1/15/2013 | AN | Letter to Client | 0.2 | $0.65 |
| 1/24/2013 | AN | Letter to client: Order granting motion to amend information and order granting motion to seal. | 0.2 | $0.45 |
| 1/24/2013 | LCR | Discovery Review | 0.3 | |
| 1/25/2013 | AN | Letter to Client | 0.2 | $0.45 |
| 2/11/2013 | BDH | Email to state's attorney | 0.2 | |
| 2/19/2013 | AN | Letter to client (Motions) | 0.2 | $0.46 |
| 4/8/2013 | ALF | TC w/ Client | 0.1 | |
| 4/21/2013 | ALF | Draft and efile proposed jury instructions | 1 | |
| 4/22/2013 | ALF | TC w/ Roger Birdbear | 0.4 | |
| 4/22/2013 | ALF | Review discovery materials; witness statements/police reports. | 1 | |
| 4/22/2013 | ALF | TC w/ Client | 0.2 | |
| 4/23/2013 | BDH | Court hearing, Final Dispo. Conference | 0.5 | |
| 4/23/2013 | ALF | Meet with client | (8) 0.8 | |
| 4/26/2013 | BDH | Met with client | (9) 1 | |
| 6/14/2013 | ALF | Draft proposed jury questions/response to state's proposed questionaire. | 0.5 | |
| 7/1/2013 | BLD | Letter to client with copies of order approving juror questionaire; and juror questionaire. | 0.1 | $0.46 |
| 7/9/2013 | ALF | TC / Text Messages w/ client | 0.3 | |
| 7/9/2013 | ALF | TC w/ Roger Birdbear | 0.3 | |
| 7/10/2013 | BDH | Review of email from Jacon McCarthy with a cleaner copy of supplemental discovery. | 0.1 | |
| 7/12/2013 | LCR | Sorted through Jury Questionaire | 0.8 | |

| Date | Initials | Description | Hours |
|---|---|---|---|
| 7/14/2013 | ALF | Review videotaped interview of Nathan w/ Det. Moe. Review audio recorded statements of Shelby Weist & Tori Killscro. Review text messages to / from Monica D. Review photographs of apt. Review addtl discovery docs, police reports, etc. | 1.8 |
| 7/14/2013 | ALF | TC with Client and with Blake | 1 |
| 7/15/2013 | ALF | Meeting with client. Meeting with state's attorney. Court Appearance - change of plea w/ blake. | 2 |
| 7/15/2013 | ALF | Met with Roger Birdbear | 0.3 |
| 7/15/2013 | ALF | Post bond @ GFCCC | 0.2 |
| 7/15/2013 | ALF | Met w/ Nathan. Go to Probation/parole office w/ nathan. Met w/ Sandy Parent. | 1 |
| 7/15/2013 | ALF | TC with Probation officer RE: PSI interview. | 0.2 |
| 7/17/2013 | ALF | TC with Roger Birdbear | 0.1 |
| 7/19/2013 | LCR | TC to Stacey Benson (x2) | 0.3 |
| 7/22/2013 | LCR | Pulled reports and Emailed to Stacy Benson | 0.4 |
| 7/24/2013 | ALF | TC from Client | 0.1 |
| 7/25/2013 | JLC | Letter to Nathan re: sending out payment to Stacey Benson's office of $2500 to cover evailuation retainer. | 0.1 |
| 7/25/2013 | JLC | Letter to Stacey Benson with enclosed check of $2500 to pay for evaluation retainer. | 0.1 |
| 7/29/2013 | ALF | TC with client RE: Burleigh County Case | 0.2 |
| 7/29/2013 | ALF | TC with Burleigh County State's Atty. | 0.2 |
| 8/6/2013 | ALF | Emial to Marjorie K. re: revocation hearing. | 0.2 |
| 8/6/2013 | ALF | TC with State's Attorney | 0.2 |
| 8/6/2013 | ALF | Text message communications w/ client after hours. | 0.2 |
| 8/7/2013 | ALF | Prepare notice of filing and certificate of service and efile proof of participation in tx program. | 0.5 |
| 8/8/2013 | ALF | Court Appearance - Burleigh County probation revocation. Client NOT present. Bench warrant issued. | 0.8 |
| 8/8/2013 | BDH | Reviw email from Jodi Johnson | 0.1 |
| 8/9/2013 | ALF | TC with client x2 | 0.2 |
| 8/9/2013 | ALF | Draft and efile and serve non opposition to motion to withdraw petition to revoke probation and quash bench warrant. | 0.5 |

*(10)*

| Date | Initials | Description | Time | Amount |
|---|---|---|---|---|
| 8/14/2013 | ALF | TC with Roger Birdbear | 0.1 | |
| 8/21/2013 | ALF | TC with Fargo probation officer Andi D. | 0.4 | |
| 8/21/2013 | ALF | TC with Jodi Johnson. Dr. Benson's assistant. | 0.1 | |
| 8/21/2013 | ALF | TC with Roger Birdbear | 0.1 | |
| 8/21/2013 | BDH | Review of email from Jodi Johnson, re: nathan dubray being a noshow for his interview and psychological testing. They called him twice with no answer. | 0.1 | |
| 8/22/2013 | MDL | Phone Call | 0.2 | |
| 9/6/2013 | BDH | Review of email from Jodi Johnson re: rescheduling his interview. & Review of email from Stacey Benson. | 0.1 | |
| 9/9/2013 | BDH | Review of email from Stacey Benson re: Nathan's evailuation and needing to schedule it. | 0.1 | |
| 9/10/2013 | BDH | Review of email from Jodi Johnson. Re: being unable to contact Nathan. | 0.1 | |
| 10/3/2013 | ALF | Review PSI, prep for sentencing hearing. | 0.5 | |
| 10/4/2013 | ALF | Met with client, prep for sentencing hearing. | 1 | |
| 10/4/2013 | ALF | Sentencing Hearing | 1.2 | |
| 10/4/2013 | ALF | Met with Roger Birdbear | 0.5 | |
| 10/4/2013 | ALF | Met with client @ GFCCC | 0.5 | |
| 10/4/2013 | BDH | Met with client | 0.7 | |
| 10/4/2013 | BDH | Prep for Hearing | 2 | |
| 10/4/2013 | BDH | Sentencing | 1.7 | |
| 10/4/2013 | BDH | Met with Roger Birdbear | 0.5 | |
| 10/6/2013 | ALF | TC from client from GFCCC. TC with Monica Dubray. | 0.2 | |
| 10/7/2013 | LALF | TC with client and donload/retrieve contact phone #'s | 0.5 | |
| 10/8/2013 | BDH | Visit client in Jail | 1 | |
| 10/18/2013 | LCR | Listening to CD's | 0.8 | |
| 10/22/2013 | LCR | Completed CD review | 0.3 | |
| 12/4/2013 | ALF | Review motion for restitution. Draft letter and mail to client. | 0.4 | |
| 1/24/2014 | ALF | Letter to client re: copies of file per client request. | 1.3 | $11.30 |

Total: 61.8

Phone Calls from Hankey Law to Nathan Dubray

| Date | Time | Duration | Phone No. |
|------|------|----------|-----------|
| 12/11/2012 | 11:54 a.m. | 0:30 | 701-421-2775 |
| 12/20/2012 | 2:40 p.m. | 1:36 | 701-421-2775 |
| 01/07/2013 | 8:52 a.m. | 0:30 | 701-421-2775 |
| 01/09/2013 | 1:45 p.m. | 0:48 | 701-421-2775 |
| 03/27/2013 | 7:04 p.m. | 0:42 | 701-421-9798 |
| 04/08/2013 | 3:13 p.m. | 0:42 | 701-421-9798 |
| 04/08/2013 | 4:53 p.m. | 4:00 | 701-421-5513 |
| 04/16/2013 | 2:16 p.m. | 3:42 | 701-421-5513 |
| 07/09/2013 | 4:22 p.m. | 3:12 | 651-212-8572 |
| 07/09/2013 | 4:33 p.m. | 3:18 | 651-212-8572 |
| 07/09/2013 | 5:01 p.m. | 0:06 | 651-212-8572 |
| 07/10/2013 | 9:33 a.m. | 0:42 | 651-212-8572 |
| 07/12/2013 | 3:31 p.m. | 6:00 | 651-212-8572 |

**In District Court, Grand Forks County, North Dakota**

Nathan G. Dubray,

                         Petitioner,

      v.

State of North Dakota,

                        Respondent.

Case No. 18-2014-CV-00960

Order Denying Application for
Post-Conviction Relief



FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

NOV 20 2014

REBECCA ABSEY, CLERK

BY _____

¶1.    Petitioner, Nathan G. Dubray (Dubray), seeks Post-Conviction Relief. Dubray is represented by Attorney Monty Mertz, and the State is represented by Assistant State's Attorney David Jones.

**Facts**

¶2.    Dubray entered open guilty pleas to two counts of Gross Sexual Imposition, a Class AA felony, on July 15, 2014. The Court determined the voluntariness of the pleas, inquired into the factual basis of the offenses, and accepted Defendant's pleas. A Presentence Investigation Report was ordered, and sentencing was scheduled for October 4, 2014. At the time set for sentencing, Dubray asked to withdraw his guilty pleas. The request was denied for the reason the Court accepted the guilty pleas on July 15, 2014. The Court reviewed the Presentence Investigation Report in open court and proceeded to impose concurrent sentences of 30 years with the North Dakota Department of Corrections, with 15 years suspended, and 10 years of supervised probation.

¶3.    Dubray asserts he is entitled to post-conviction relief because of ineffective assistance of counsel. Specifically, he claims trial counsel should have hired a private investigator, deposed the State's witnesses, and filed a motion to exclude evidence of prior bad acts. An evidentiary hearing was held on October 20, 2014, and the Court heard the testimony of Nathan Dubray and defense attorney, Blake Hankey.



EXHIBIT
13

1

35

## Law

¶4.     Dubray argues Hankey provided ineffective assistance of counsel at the trial court level. In Broadwell v. State. 2014 ND 6, 841 N.W. 750, the North Dakota Supreme Court explained the petitioner's burden of proof in a claim for ineffective assistance of counsel:

> "The issue of ineffective assistance of counsel is a mixed question of law and fact which is fully reviewable by this court. To succeed on a claim for ineffective assistance of counsel, a petitioner must prove counsel's performance fell below an objective standard of reasonableness and the deficient performance prejudiced him. Even where the court finds that counsel's representation fell below an objective standard of reasonableness, prejudice is not normally assumed. Unless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the context of the remaining evidence properly presented and the overall conduct of the trial. Courts need not address both elements of the ineffective assistance of counsel test, and if a court can dispose of the case by addressing only one element, it is encouraged to do so."

Broadwell. 2014 ND 6, ¶ 7, 841 N.W.2d 750 (citations and internal quotation marks omitted). The Petitioner must specify how and where trial counsel was incompetent and explain how the probable outcome would have been different Murchison v. State. 2011 ND 126, K 8,799 N.W.2d 360 (citing State v. Myers. 2009 ND 141, K 15, 770 N.W.2d 713). "A reasonable probability is a probability sufficient to undermine confidence in the outcome . ...." Id. at ¶ 8 (quoting Myers. at ¶ 15). In the instant case, Petitioner has failed to show how his attorney's performance was deficient and how he was prejudiced.

### A. Trial counsel's tactical decision not to hire a private investigator or depose witnesses was not ineffective assistance of counsel.

¶5.     At the evidentiary hearing, Attorney Blake Hankey testified that he chose not to hire a private investigator for a number of reasons. First, he stated that he worked on this case along with another attorney in his office, Adam Fleischman. Both attorneys reviewed the video-taped forensic interview. The only two people in the interview room at the time of the interview were the child and the forensic

2

interviewer. The child described the incident in detail. Dubray was afforded an opportunity to watch the forensic interview and discuss it with one of the attorneys. Both Hankey and Fleischman concluded the interview was handled appropriately.

¶6.    In deciding not to hire a private investigator, the attorneys also considered the fact the child reported the sexual acts to her mother almost immediately after they occurred and the fact the medical reports were consistent with the reports of the social worker who investigated the case. Hankey testified in his opinion there was little benefit that could be derived by retaining a private investigator. Since only two people were present at the time of the sexual acts, the victim and Dubray, Hankey saw no reason to depose any witnesses. In Hankey's opinion, hiring a private investigator and deposing the State's witnesses would not aid with the defense and would only result in unnecessary expenses for Dubray.

¶7.    Hankey did not file a pretrial motion to limit the admissibility of prior bad acts because it was his understanding the State did not intend to introduce evidence of prior bad acts in its case in chief. Hankey was also aware the State did not file a notice of intent to use prior bad acts as required by N.D.R.Evid. 404(b). Instead of spending time on what he deemed an unnecessary motion, Hankey prepared Dubray for testifying and stressed the importance of not providing responses that would open the door and allow for the admission of any prior bad acts.

¶8.    The State made a plea offer, and Hankey conveyed the offer to Dubray. The offer was discussed, and Dubray chose not to accept it. Hankey then prepared for jury selection and trial as scheduled. His anticipated trial strategy in this case included a vigorous cross-examination of the social worker and an attempt to keep out any testimony of prior bad acts of Dubray. While the case was pending for trial, Dubray was free on bail. Although Hankey testified that he had difficulty contacting Dubray, he was able to meet personally with Dubray prior to trial. At this meeting they were able to

discuss the weaknesses of the State's case, the statements made by Dubray, and the statements made by the victim. Hankey advised Dubray of the lengthy sentences recently imposed by this Court following a conviction of a sexual offense. Hankey and Fleischman next met with Jason McCarthy, the attorney prosecuting the case, who informed the defense attorneys of the facts he thought he could prove at trial. Following this meeting, Hankey and Fleischman again personally met with Dubray and further discussed whether to take the case to trial. The attorneys went over the benefits of entering guilty pleas with Dubray. They informed him if he entered guilty pleas, they could attempt to reduce the risk of exposure to a harsh sentence based upon acceptance of responsibility. They also informed Dubray they could arrange for an independent psycho-sexual evaluation. After a thorough discussion of the benefits and risks of taking the case to trial, Dubray chose to enter open guilty pleas.

¶9.     During the change of plea hearing, this Court thoroughly went through the voluntariness of the pleas, the facts of the crime, ensured Dubray was provided with sufficient time to discuss the case with his attorney, that Dubray was satisfied with the legal representation his attorney was providing, and that Dubray was not under the influence of any alcohol or drugs. The Court accepted the guilty pleas and scheduled sentencing for a later date to afford Dubray the opportunity to undergo an independent psycho-sexual evaluation. Despite the fact Dubray's father-in-law paid a $2,500 retainer to an evaluator, Dubray never completed the independent psycho-sexual evaluation. Dubray also arranged for outpatient substance abuse treatment to take place between the change of plea and sentencing. Dubray, however, was terminated from the program before it was completed.

¶10.    Dubray argues Hankey should have hired a private investigator, deposed the victim's mother, and filed a Motion in Limine to prevent the admission of prior bad acts. While counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, a particular decision not to investigate must be directly assessed for reasonableness in all

4

the circumstances, applying a heavy measure of deference to counsel's judgments. Strickland v. Washington, 466 US at 691. It is not the function of this Court to "second guess tactical decisions of defense counsel." State v. Schlickenmayer, 364 N.W.2d 108,112 (N.D. 1985) (citing State v. Motsko, 261 N.W.2d 860, 863 (N.D. 1977)). Hankey testified about the problematic issues the defense faced because of the almost immediate reporting of the incident by the child victim to her mother, Dubray's response when confronted by the victim's mother, the existence of a forensic interview, and the consistency of the statements made by the victim. This Court finds Hankey satisfactorily explained his rationale for preparing the defense in the manner he chose.

### B. Dissatisfaction with the frequency of trial counsel's communication is not grounds for post-conviction relief.

¶11.   In closing arguments, Dubray expressed dissatisfaction with the amount of time Hankey spent on the case. Hankey's detailed billing indicates over 60 hours of work went into the case and numerous items of written correspondence were exchanged. Dubray fails to establish how any additional attorney time would impact this case.   Additionally, Hankey testified that his office had difficulty keeping in touch with Dubray. Subjective dissatisfaction with the level of communication received from an attorney is insufficient to establish a claim of ineffective assistance of counsel. State v Fischer. 2008 ND 32, ¶ 19, 744 N.W.2d 760,766. In Fischer, the North Dakota Supreme Court denied Fischer's ineffective assistance of counsel claim based on failure to communicate because Fischer "pointed to nothing but his subjective dissatisfaction with his court-appointed attorneys.  Fischer's representations and assertions on appeal [were] insufficient to establish claim of ineffective assistance." State v. Fischer. 2008 ND 32,1(19,744 N.W.2d 760,766.

### C. Dubray fails to show how the results of his case would have been different had trial counsel hired a private investigator, deposed the State's witnesses, and filed a motion to limit prior bad acts.

¶12.    Here, Dubray's right to a jury trial was initially exercised, and a jury trial was scheduled. It was Dubray himself who opted to enter open guilty pleas and forego his right to a jury trial. The only evidence produced by Dubray at the evidentiary hearing was evidence of dissatisfaction with his trial attorney. There was no evidence presented to establish how depositions of trial witnesses, the hiring of a private investigator, or the filing of a motion to exclude prior bad acts would have changed the outcome of the trial. The Court was not made aware of Dubray's prior bad acts until sentencing, when this information became available through the Presentence Investigation Report. This same information would have been available to the Court for sentencing purposes had Dubray been convicted of the crimes by a jury. This Court concluded Dubray has failed to establish a reasonable probability of a different result.

## Order

¶13.    **It is hereby ordered,** the Application for Post-Conviction Relief is denied. Hankey's legal representation did not fall below an objective standard of reasonable performance. Additionally, there is no evidence to establish a reasonable probability that the outcome of this case would have been different had the case been tried to a jury.

Dated this 20 day of November, 2014.

By the Court:

Debbie G. Kleven
District Judge

Cc:    David Jones, Assistant State's Attorney
Monty Mertz, Attorney for Petitioner

6

IN DISTRICT COURT, GRAND FORKS COUNTY, NORTH DAKOTA

Nathan G. Dubray,            )
        Petitioner,          )     NOTICE OF APPEAL
        vs.                  )
State of North DAkota,       )     Case No. 18-2014-CV-00960
        Respondent.          )
                             )

**PLEASE TAKE NOTICE,** that Nathan G. Dubray, the above-named
Petitioner, pro se, appeals the **Order Denying Application
for Post-Conviction Relief,** dated the 20th day on November,
2014, by the Honorable Debbie G. Kleven, District Judge, to
the North Dakota Supreme Court.

## STATEMENT OF PRELIMINARY ISSUES

**1.** Whether the district court erred when it denied Petitioner's
Application For Post-Conviction Relief, as Petitioner's
Counsel failed to hire a private investigator; failed to
depose key state witnesses; failed to hire an expert to review
the forensic interviewer's techniques; and failure to com-
municate all known facts so Petitioner could make an informed
decision concerning going to trial or pleading out.

**2.** Petitioner reserves his right to add additional grounds or
issues after the appointment of counsel.

Dated this ⎷<sup>st</sup> day of December, 2014.



FILED IN THE OFFICE OF
CLERK OF DISTRICT COURT
GRAND FORKS COUNTY, N. DAK. ON

DEC - 3 ...

REBECCA ABSEY, CLERK

By _____
                    Deputy

Nathan Dubray, pro se
JRCC-39395
2521 Circle Drive
Jamestown, ND 58401



EXHIBIT
14



RECEIVED

DEC - 3 2014

GRAND FORKS, ND
CLERK OF DISTRICT COURT



North Dakota Supreme Court Docket ◄▲ ✎?

# Dubray v. State

HOME
OPINIONS
SEARCH
INDEX
GUIDES
LAWYERS
RULES
RESEARCH
COURTS
CALENDAR
NOTICES
NEWS
SELF HELP
SUBSCRIBE
CUSTOMIZE
COMMENTS

**20140428**

**Nathan G. Dubray, Petitioner and Appellant**

**v.**

**State of North Dakota, Respondent and Appellee**

**Appeal from:** District Court, Northeast Central Judicial District, Grand Forks County
Judge Debbie Gordon Kleven

**Nature of Action:** Post-Conviction Relief

**Counsel:** Appellee: Mark Jason McCarthy , Asst. State's Attorney
Appellant: Charles Justin Sheeley
Appellee: Meredith Huseby Larson , Asst. State's Attorney

**Term:** 09/2015   Argument: 09/21/2015  1:30pm
**ND cite:** 2015 ND 244
**NW cite:** 872 N.W.2d 633

**Issues:** **Appellant's Statement of the Issues:**
Whether the District Court Order denying Dubray's application for Post Conviction Relief should be reversed?

**Appellee's Statement of the Issues:**
I. Whether the district court properly denied Dubray's motion for post conviction relief?

---

**Docket entries:**

1  12/03/2014  NOTICE OF APPEAL: 12/03/2014
2  12/04/2014  NOT. OF FILING NOT. OF APPEAL AND PROOF OF SERV.
3  12/04/2014  Notice served on Nathan Dubray, M. Jason McCarthy and Monte Mertz
4  12/03/2014  ORDER FOR TRANSCRIPT: 12/03/2014
5  01/02/2015  ELEC. RECORD ON APPEAL DATED JANUARY 2, 2015 (ENTRY NOS.1-41)
6  01/09/2015  AMENDED ELEC. RECORD ON APPEAL DATED JANUARY 9, 2015 (ENTRY NOS.1-17, 19-26, 28-37, 39-43)
7  01/12/2015  MOT. EXT/TIME APPELLANT BRIEF

**EXHIBIT**
**15**
tabbies

| 8  | 01/14/2015 | NO ACTION TAKEN (motion is premature) |
|----|------------|----------------------------------------|
| 9  | 02/02/2015 | ELECTRONIC TRANSCRIPT DATED OCTOBER 20, 2014 w/ REDACTION KEY & C.O.S. |
| 10 | 02/02/2015 | Rcv'd c.o.s. of tra on appellant |
| 11 | 02/23/2015 | Assignment of Monty Mertz as counsel for Appellant |
| 12 | 03/09/2015 | ELEC. RECORD ON APPEAL DATED MARCH 9, 2015 (ENTRY NOS.1-39, 41-89)(underlying) |
| 13 | 03/10/2015 | AMENDED ELEC. RECORD ON APPEAL DATED MARCH 10, 2015 (ENTRY NOS.1-39, 41-76, 78-95) |
| 14 | 03/10/2015 | (NOT SENT: 77)(underlying) |
| 15 | 03/11/2015 | MOT. EXT/TIME APPELLANT BRIEF |
| 16 | 03/11/2015 | E-FILED MOTION |
| 17 | 03/11/2015 | E-mail that State does not object to request |
| 18 | 03/11/2015 | ACTION BY CLERK. Granted: 03/30/2015 |
| 19 | 03/30/2015 | APPELLANT BRIEF (PDF) |
| 20 | 03/30/2015 | E-FILED BRIEF (PDF) |
| 21 | 03/30/2015 | APPELLANT APPENDIX |
| 22 | 03/30/2015 | E-FILED APPENDIX |
| 23 | 04/01/2015 | Rcv'd 7 copies of ATB & 6 copies of ATA from CSD |
| 24 | 04/13/2015 | E-filing surcharge for ATB paid 4-13-15 through inter-departmental billing |
| 25 | 04/24/2015 | MOTION FOR Extension of Time to File Supplemental Statement under N.D.R.App.P. 24 |
| 26 | 04/24/2015 | ACTION BY CHIEF JUSTICE. Granted: 05/29/2015 |
| 27 | 04/24/2015 | MOT. EXT/TIME APPELLEE BRIEF (by the Court) |
| 28 | 04/24/2015 | ACTION BY CHIEF JUSTICE (30 days after service of Rule 24 statement. Granted: 06/30/2015 |
| 29 | 05/28/2015 | Supplemental Statement of Indigent Appellant purusant to Rule 24 N.D.R.App.P (scanned)(PDF) |
| 30 | 05/28/2015 | DISK NONCOMPLIANCE |
| 31 | 06/10/2015 | Charles Sheeley is substituted at counsel for the Appellant. |
| 32 | 06/24/2015 | APPELLEE BRIEF (PDF) |
| 33 | 06/24/2015 | E-FILED BRIEF |
| 34 | 06/25/2015 | Rcv'd c.o.s. of AEB on C. Sheeley |
| 35 | 06/29/2015 | Rcv'd $25 e-filing surcharge for AEB (receipt #23699) |
| 36 | 06/30/2015 | Rcv'd 7 copies of AEB from CSD |
| 37 | 07/08/2015 | REPLY BRIEF (PDF) |
| 38 | 07/08/2015 | E-FILED BRIEF (PDF) |
| 39 | 07/14/2015 | Received 7 copies of the RYB from Central Duplicating |
| 40 | 07/31/2015 | NOTICE OF ORAL ARGUMENT SENT |
| 41 | 09/21/2015 | APPEARANCES: Charles J. Sheeley; M. Jason McCarthy |
| 42 | 09/21/2015 | ARGUED: Charles J. Sheeley; M. Jason McCarthy |
| 43 | 09/21/2015 | ORAL ARGUMENT WEBCAST |

44  10/13/2015  DISPOSITION: AFFIRMED BY SUMMARY DISP.
45  10/13/2015  UNANIMOUS OPINION: Per Curiam,
46  10/14/2015  Judgment Sent to Parties
47  11/12/2015  MANDATE

→

20140428

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
MARCH 30, 2015
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT

## STATE OF NORTH DAKOTA

Nathan Dubray,         )
                           )     Supreme Court no. 20140428

     Petitioner/Appellant,  )

                           )     District Court no. 2014-CV-00960

     -vs-                 )

State of North Dakota,    )

     Respondent/Appellee,  )
                           )

---

**Brief of Petitioner/Appellant Nathan Dubray**

**Appeal from Order Entered on November 20, 2014**

**In District Court, County of Grand Forks, State of North Dakota
The Honorable Debbie G. Kleven**

---

**MONTY G. MERTZ (#03778)**
**Supervising Attorney**
**Fargo Public Defender's Office**
**912 3rd Avenue South**
**Fargo, ND 58103-1707**
**Phone (701) 298-4640**
**Fax (701) 239-7110**
**Email: momertz@nd.gov**
**E-File Address: Fargopublicdefender@nd.gov**
**Attorney for Nathan Dubray**

EXHIBIT
*16*
tabbies

¶ 1 Table of Contents

Table of Authorities………………………………………………..¶ 2

Issue………………………………………………………….¶ 3

Statement of the Case……………………………………………¶ 5

Statement of Facts…………………………………….…………¶ 10

Argument………………………………………………….…¶ 47

The Order denying Dubray post-conviction
relief should be reversed …………………………………….......¶ 48

Conclusion…………………………………………………....¶ 61

¶ 2 Table of Authorities

Cases

*Bahtiraj v. State*, 2013 ND 240, 840 N.W.2d 605................................¶ 50

*Damron v. State*, 2003 ND 102, 663 N.W.2d 650................................¶ 50

*Ernst v. State,* 2004 ND 152, 683 N.W.2d 891..............................¶¶ 50, 58

*Greywind v. State*, 2004 ND 213, 689 N.W.2d 390........................¶ 50

*Hill v. Lockhart*, 474 U.S. 52 (1985)....... ...........................................¶ 50

*Lindsey v. State*, 2014 ND 174, 852 N.W.2d 383........................¶¶ 50, 58

*McMann v. Richardson*, 397 U.S. 759 U.S. (1970)..............................¶ 50

*Moore v. State*, 2013 ND 214, 839 N.W.2d 834....................................¶ 50

*Patten v. State*, 2008 ND 29, 745 N.W.2d 626....................................¶ 50

*Premo v. Moore*, 131 S. Ct. 733 (2011)...............................................¶ 50

*Sambursky v. State*, 2006 ND 223, 723 N.W.2d 524............................¶ 50

*State v. Moore*, 2005 ND 183, 709 N.W.2d 21....................................¶ 57

*State v. Slapnicka*, 376 N.W.2d 33 (N.D. 1985) ...................................¶ 50

*Strickland v. Washington*, 466 U.S. 668 (1984)....................................¶ 50

*Tollett v. Henderson*, 411 U.S. 258 (1973)..........................................¶ 50

*Woehlhoff v. State*, 487 N.W.2d 16 (N.D. 1992).....................................¶ 50

Statutes

N.D.C.C. §12.1-20-03.....................................................................¶ 53

N.D.C.C. §12.1-32-01.....................................................................¶ 53

Court Rules

N.D.R.Crim.P. 11. .......................................................................¶¶ 50, 59

N.D.R.Evid. 803(24)........................................................................¶ 53

¶ 3 Issue

¶ 4 Whether the District Court Order denying Dubray's application for Post Conviction Relief should be reversed?

¶ 5 Statement of the Case

¶ 6 Nathan Gene Dubray (hereinafter Dubray) was charged with two counts of Class AA Felony Gross Sexual Imposition by an Information filed August 6, 2012, in Grand Forks County Case No. 2012-CR-01960. (CR Doc ID# 2)(Criminal file Register of Actions = CR)(App. 3-4). Dubray pleaded guilty on July 15, 2013 to both counts. A pre-sentence investigation was ordered. (CR Doc # 70).

¶ 7 Dubray was sentenced on October 4, 2013 to concurrent sentences of thirty years, with fifteen years suspended for ten years of supervised probation. (CR Doc ID# 78). A motion for restitution was granted, and Count 1 of the Judgment was amended to order restitution in the amount of $5,265.53. (CR Doc ID# 88)(App. 5-12).

¶ 8 Dubray then applied for post-conviction relief in a Petition filed on July 14, 2014, supported by a brief, in Grand Forks County file No. 2014-CV-00960 (CV Doc ID # 1; App. 13-16 & 17-39)(Entries in the Clerk's Register of Action in the civil file will be CV Doc ID# and pages in the Appendix App.). The State's Answer was filed on July 24, 2014. (CV Doc ID# 10; App. 40-42).

¶ 9 An evidentiary hearing was held on October 20, 2014. (Transcript of evidentiary hearing, hereinafter TR3). All relief was denied by the Order Denying Application for Post-Conviction Relief, filed on November 20, 2014. CV Doc ID#

35, App. 43-48). Notice of Appeal was filed on December 3, 2014. (CV Doc ID# 36; App. 49).

¶ 10 Statement of Facts

¶ 11 Dubray entered guilty pleas on the eve of his jury trial. (TR1: 1-19)(Plea Hearing Transcript = TR1; Sentencing Transcript = TR2; Pst-Conviction Hearing Transcript = TR3). Dubray's retained attorney, Blake Hankey, informed the court that Dubray would enter "open pleas" based upon a recommendation the state would make at sentencing. The pleas would be "Alford pleas." (TR1 3: LL 14-22). The court conducted an appropriate colloquy with Dubray, including ensuring his understanding of an Alford plea. (TR1 9: LL 14-22).

¶ 12 The court asked the prosecutor to recite the factual basis for the guilty plea. (TR1 9: L 23)

¶ 13 On January 3, 2012, a juvenile female M.W. born in 2003, reported that Dubray, then twenty-six years old, woke her up and brought her into the living room of her mother's residence, where he "rubbed her private" during the early morning hours of January 3, 2012. (TR1 9: LL 14-15 to 10: LL 1-6). She also reported that Dubray unzipped his pants and tried to make her "lick his bottom" (TR1 10: LL 7-8). In an interview using pictures she identified a male's bottom as his penis and her private as her vagina. (TR1 10: LL 7-13).

¶ 14 The first encounter was interrupted by a knock at the door. This caused Dubray to put his penis back in his pants and the girl went to bed. (TR1 10: LL

17-19). Law enforcement officers were sent to the residence at 3:00 a.m. that morning to conduct a welfare check on Dubray. (TR1 10: LL 20-23).

¶ 15 The girl reported she was awakened again by Dubray, this time after the sun was up that same morning. (TR1 10: LL 24-25; 11: L1).

¶ 16 The girl stated Dubray brought her into the living room and had her sit on his lap. He took his bottom (penis) from his pants and made her touch his penis with her hand. In an interview she said he wanted her to do something with her hand, which she described as a back and forth motion. At the same time, Dubray had his hand down her pants rubbing her vaginal area. (TR1 11: LL 1-11).

¶ 17 Dubray was interviewed by a detective later the same day, January 3, 2012. (TR1 11: LL 12-13). Dubray indicated late that morning he had been awakened by the girl's mother who was yelling at him about touching the girl. (TR1 11: LL 12-18). When asked about touching the girl's privates, Dubray said, "I would never do that." When asked why the girl would say or make that up, his response was: "Usually a child that age, they are telling the truth." (TR1 11: LL 16-21).

¶ 18 When the detective told Dubray the girl had stated he asked her to touch his privates, Dubray put his hands over his eyes and began to weep, stating, "If I did, I'm sorry" and "I honestly don't know." (TR1 11: LL 22-25; 12: LL 1). Dubray also stated that he "blacked out" and doesn't remember exactly what he did, but remembered going to Joe Bull's residence between 3:00 and 8:00 a.m. Dubray also stated, "I don't know if I did or if I didn't. If I did, I don't know," when the accusations were repeated. (TR1 12: LL 2-8). Dubray also told investigators he

had been drinking Vodka, smoking marijuana, and drank at least one beer. (TR1 12: LL 9-12).

¶ 19 Dubray agreed with those facts. (TR1 12: LL 13-15). The court asked Mr. Hankey to further comment on the basis for the Alford plea, and he reiterated Dubray's consumption of alcohol and marijuana and Dubray's assertion that he could not remember what happened. (TR1 12: LL 16-25; 13: LL 1-17). The court asked Dubray if he was under the influence to the point he could not recall what happened on the dates in question. Dubray agreed. (TR1 13: LL 18-25; 14: LL 1-4).

¶ 20 The Court found a factual basis for Dubray's guilty pleas and that they were freely and voluntarily made. (TR1 14: LL 5-7).

¶ 21 The sentencing hearing took place on October 4, 2013. (TR2 1-39). Mr. Hankey informed the court Debray wanted to withdraw his guilty pleas pursuant to **N.D.R.Crim.P 11(d)(B)(ii)** which allows withdrawal of guilty pleas for any fair and just reason prior to sentencing. (TR2 3: LL 14-24). The trial court decided to proceed with the sentencing hearing, referring to **State v. Moore**. The court indicated that Dubray could file a motion supported by a brief and affidavits and allow the state to respond. If Dubray could show a fair and just reason, he would be allowed to withdraw his pleas, but the court would proceed with his sentencing. (TR2 4: LL 11-25; 5: LL 1-4).

¶ 22 Mr. Hankey also indicated Dubray felt pressured by defense counsel to plead guilty, and asked the court to address that issue. (TR2 5: LL 5-17). The

court addressed Dubray and stated that Dubray had stated his pleas were freely and voluntarily made and that no one had made any threats or promises to him. Dubray agreed. (TR2 5: LL 21-25; 6: LL 1-8). The court denied the request and again indicated Dubray could file a motion and indicated the court would proceed. (TR2 6: LL 9-17).

¶ 23 As part of its sentencing argument, the prosecutor indicated that this was "at least the third time the defendant has been alleged to have committed a similar type of event." (TR2 11: LL 5-7). The prosecutor went on to indicate that although the defendant may not have been convicted, he had received some form of sexual addiction therapy related to a previous allegation, so he would expect that his behavior would cause harm to a child. (TR2 11: LL 5-19). The prosecutor also went on to argue that because of his prior behavior and his Alford plea he was not fully admitting what he did to the child, it would be "impossible to state that the defendant won't do it again." (TR2 12: LL 10-25).

¶ 24 The prosecutor went on to argue that the defendant had abused a "public position of responsibility or trust," due to his relationship with the child's family. (TR2 14: LL 5-16). The prosecutor also alluded to what amounts to Dubray's "selective memory" of the events. (TR2 13: LL 2-16).

¶ 25 Hankey pointed out that Dubray has had a difficult life and has turned to addiction. He graduated from high school and completed some college courses. His criminal history was minor prior to these offenses. Dubray's wife has reported that when he is sober he is a good and loving father. (TR2 16: LL 5-25; 17: LL 1-

25). Mr. Hankey also pointed out he was not convicted of prior allegations for similar conduct. Mr. Hankey argued that the moderate risk assessment was due to the prior unproven allegations and his supposed failure to take responsibility for his actions in this case. Aside from those considerations, his risk to reoffend would be low. (TR2 18: LL 6-23).

¶ 26 Hankey argued for a sentence of thirty years with twenty-five suspended for ten years of supervised probation. (TR2 20: LL 1-24). The Court followed the State's recommended sentence of thirty years, with fifteen suspended and ten years of supervised probation. (TR2 26: LL 3-8).

¶ 27 The Court advised Dubray of his right to appeal and reminded him he could file a motion to withdraw his guilty pleas. (TR2 37: LL 12-21). No appeal was filed and no motion to withdraw the guilty pleas was filed.

¶ 28 An evidentiary hearing was held on October 20, 2014 on Dubray's application for post-conviction relief. (TR3, 1-60). Two witnesses testified, Dubray and his attorney, Blake Hankey. (TR3, 4-25; 25-50).

¶ 29 Dubray claims he received ineffective assistance of counsel. (TR3 4: LL 10-13). Dubray was represented by Blake Hankey.  Hankey did not hire a private investigator. He did not take any depositions. He did not interview any of the state's witnesses.  He did not explore any defense witnesses. (TR3 4: LL 17-25; 5: L 1-7).

¶ 30 Dubray entered an Alford plea on the eve of his jury trial. (TR3 5: LL 8-11). Dubray met with Hankey to prepare for trial but did not know what the theory of his defense would be. (TR3 6: L 25; 7: LL 1-2).

¶ 31 There were two incidents in Dubray's past which were disclosed in discovery and the pre-sentence report. On both occasions, Dubray had been accused of sexual misconduct. (TR3 9: LL 1-3). On the first occasion, Dubray was accused of touching a younger cousin. He attended classes for sexual offenders. (TR3 9: LL 5-22). He was told if he didn't admit to it, he would have to sit in the Boy's Ranch until he was 21. So, he admitted it, but did not do it. He was not represented by an attorney. (TR3 10: LL 1-17).

¶ 32 In the second incident, Dubray was accused of raping a fourteen year old girl. (TR3 10: LL 18-25). He was in California when the girl was allegedly raped. Dubray did not do either act. (TR3 11: LL 1-18). However, these alleged incidents entered into the plea discussions with his attorney. (TR3 11: LL 19-22).

¶ 33 The prior incidents of alleged sexual misconduct entered into discussions about whether he should plead guilty and whether those incidents would come up during the trial. (TR3 12: LL 1-13). Dubray felt he had no choice but to take the plea agreement. (TR3 12: L 25; 13: LL 1-3).

¶ 34 On the day of sentencing, Dubray asked the court if he could withdraw his guilty pleas. (TR3 13: LL 3-10). He felt Hankey had not provided an adequate defense. Hankey did not hire an expert witness to address the issues with the child victim. (TR3 13: LL 15-25; 14: LL 1-5).

¶ 35 Dubray asked the court to let him have a trial because he believes he is innocent. (TR3 14: LL 16-21). Dubray felt his attorney could have shown the state's witnesses were not telling the truth. (TR3 15: LL 1-7). Dubray conceded he told the court when he pleaded guilty that he had sufficient time to discuss his case with attorneys and he was satisfied with them.  It was also his decision to plead guilty. (TR3 15: LL 12-25). Dubray said he was frustrated with his sentence. (TR3 16: LL 5-7).

¶ 36 Dubray conceded he had made statements to law enforcement to the effect, "If I did it, I'm sorry.  I don't know," and "I don't know if I did it or not. I blacked out." (TR3 16: LL 15-25). Dubray also conceded that at his change of plea hearing, he admitted he was too drunk to remember. (TR3 17: LL 1-4).

¶ 37 Dubray said he owed it to his children to withdraw his guilty pleas and prove he is innocent. However, he conceded he had said: "[A] child at that age is probably not going to lie." (TR3 17: LL 15-25; 18: L 1).

¶ 38 Dubray conceded he was confronted by the child's mother within a short time after the alleged incident. (TR3 19: LL 19-25; 20: LL 1-25; 21: LL 1-11).

¶ 39 Attorney Blake Hankey testified and exhibits where introduced to reflect his time records and correspondence with Dubray. (TR3 25: LL 17-25; 26: LL 1-25; 27: LL 1-25, 28: LL 1-12).

¶ 40 Hankey indicated he watched the forensic video of the child's interview and saw no need to hire an expert. (TR3 29: LL 20-25; 30: LL 1-23).

¶ 41 Hankey indicated that with "this judge" there were "hefty sentences" after a loss at trial. (TR3 35: LL 8-16).

¶ 42 Mr. Hankey conceded he did not file a motion in limine as to the alleged prior sexual misconduct by Dubray. (TR3 38: L 25; 39: LL 1-12). There was no pretrial hearing on the issue of hearsay evidence. (TR3 40: LL 14-25; 41: LL 1-3).

¶ 43 Hankey did not hire a private investigator. He did not take any depositions. (TR3 41: LL 19-24). Neither Hankey nor any of his staff interviewed any witnesses in the case. (TR3 41: L 25; 42: LL 1-2). Hankey did not see it was necessary to hire a private investigator or depose any witnesses. (TR3 42: LL 1-18).

¶ 44 Hankey has never deposed a victim in a sexual assault or GSI case. (TR3 42: LL 19-25).

¶ 45 Although Hankey claimed his client was prepared to go to trial and pleaded guilty on the eve of trial, he could not articulate his theory of defense had there been a trial. (TR3 43: LL 1-7). Hankey felt it is not difficult to cross-examine a child victim in a sexual assault case. (TR3 44: LL 13-24).

¶ 46 Hankey indicated he wanted to confront witnesses for the first time in front of the jury even when he had no idea what their answers would be. (TR3 45: LL 8-24).

### ¶ 47 Argument

¶ 48 **The Order denying Dubray post conviction relief should be reversed.**

### ¶ 49 Standard of Review

¶ 50 Dubray asserts he received ineffective assistance of counsel, he was ill advised to plead guilty, and asks that he be allowed to withdraw his guilty pleas and go to trial.

> Generally, when a post-conviction relief applicant seeks to withdraw a guilty plea, the district court looks to whether relief is necessary to correct a "manifest injustice." *See Moore v. State*, 2013 ND 214, ¶ 10, 839 N.W.2d 834. "'When a defendant applies for post-conviction relief seeking to withdraw a guilty plea, we . . . treat the application as one made under N.D.R.Crim.P. [11](d).'" *Moore, at* ¶ 10 (*quoting Greywind v. State*, 2004 ND 213, ¶ 7, 689 N.W.2d 390). "Withdrawal is allowed when necessary to correct a manifest injustice." *Moore, at* ¶ 10. "Before accepting a plea of guilty, the court must . . . determine that the plea is voluntary and did not result from force, threats, or promises other than promises in a plea agreement." N.D.R.Crim.P. 11(b)(2). "Waivers of constitutional rights, such as guilty pleas, must be done freely and voluntarily." *Moore, at* ¶ 11.

> When a defendant pleads guilty on the advice of counsel, the defendant "'may only attack the voluntary and intelligent character of the guilty plea.'" *Damron v. State*, 2003 ND 102, ¶ 9, 663 N.W.2d 650 (*quoting Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Unless a defendant can prove "serious derelictions" on the part of the defendant's attorney that kept a plea from being knowingly and intelligently made, the defendant will be bound by that guilty plea. *Damron, at* ¶ 13 (*citing McMann v. Richardson*, 397 U.S. 759, 774 (1970)). "In criminal cases, the defendant has the burden to present evidence to overcome the presumption that defense counsel is competent and adequate, and to do so, the defendant must point 'to specific errors made by trial counsel.'" *Damron, at* ¶ 13 (*quoting State v. Slapnicka*, 376 N.W.2d 33, 36 (N.D. 1985)). In this case, Lindsey's post-conviction relief application and supplemental brief seek to have her guilty plea set aside on grounds of ineffective assistance of counsel, newly discovered evidence, and prosecutorial misconduct.

> Lindsey claims she received ineffective assistance of counsel leading to her guilty plea.

> An applicant for post-conviction relief bears a "heavy burden" to prevail on an ineffective assistance of counsel claim. *See Bahtiraj*

*v. State*, 2013 ND 240, ¶ 8, 840 N.W.2d 605; *Patten v. State*, 2008 ND 29, ¶ 9, 745 N.W.2d 626.

> [T]o prevail on a post-conviction relief application based on ineffective assistance of counsel, the petitioner must (1) "show that counsel's representation fell below an objective standard of reasonableness" and (2) "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).
>
> > Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial or in pretrial proceedings, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . . It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.
>
> *Premo v. Moore*, 131 S. Ct. 733, 739-40 (2011) (internal quotations and citations omitted). The two-part Strickland test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "Thus, a defendant must demonstrate both deficient representation by counsel and prejudice caused by the deficient representation." *Woehlhoff v. State,* 487 N.W.2d 16, 17 (N.D. 1992). . . .
>
> The first prong is measured using "prevailing professional norms," *Sambursky v. State*, 2006 ND 223, ¶ 13, 723 N.W.2d 524, and is satisfied if [the defendant] proves counsel's conduct consisted of errors serious enough to result in denial of the

counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

*Bahtiraj*, 2013 ND 240, ¶¶ 9-10, 840 N.W.2d 605. The second prong of the *Strickland* test is satisfied in the context of a guilty plea if the defendant shows "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ernst v. State*, 2004 ND 152, ¶ 10, 683 N.W.2d 891 (*quoting Hill*, 474 U.S. at 59); see also *Bahtiraj*, at ¶¶ 15-16.

*Lindsey v. State*, 2014 ND 174, ¶¶ 16- 19, 852 N.W.2d 383.

¶ 51 Dubray asserts his pleas were not voluntary due to his attorney's serious derelictions. Hankey indicated he watched the forensic video of the child's interview and saw no need to hire an expert. (TR3 29: LL 20-25; 30: LL 1-23). Hankey indicated that with "this judge" there were "hefty sentences" after a loss at trial. (TR3 35: LL 8-16). Mr. Hankey conceded he did not file a motion in limine as to the alleged prior sexual misconduct by Dubray. (TR3 38: L 25; 39: LL 1-12). There was no pretrial hearing on the issue of hearsay evidence. (TR3 40: LL 14-25; 41: LL 1-3). Hankey did not hire a private investigator. He did not take any depositions. (TR3 41: LL 19-24). Neither Hankey nor any of his staff interviewed any witnesses in the case. (TR3 41: L 25; 42: LL 1-2). Hankey did not see it was necessary to hire a private investigator or depose any witnesses. (TR3 42: LL 1-18). Hankey has never deposed a victim in a sexual assault or GSI case. (TR3 42: LL 19-25). Although Hankey claimed his client was prepared to go to trial and pleaded guilty on the eve of trial, he could not articulate his theory of defense had there been a trial. (TR3 43: LL 1-7). Hankey felt it is not difficult to cross-examine a child victim in a sexual assault case. (TR3 44: LL 13-24). Hankey indicated he

wanted to confront witnesses for the first time in front of the jury even when he had no idea what their answers would be. (TR3 45: LL 8-24).

¶ 52 The prior incidents of alleged sexual misconduct entered into discussions about whether Dubray should plead guilty and whether those incidents would come up during the trial. (TR3 12: LL 1-13). Dubray felt he had no choice but to take the plea agreement. (TR3 12: L 25; 13: LL 1-3). On the day of sentencing, Dubray asked the court if he could withdraw his guilty pleas. (TR3 13: LL 3-10). He felt Hankey had not provided an adequate defense.  Hankey did not hire an expert witness to address the issues with the child victim. (TR3 13: LL 15-25; 14: LL 1-5). Dubray asked the court to let him have a trial because he believes he is innocent. (TR3 14: LL 16-21). Dubray felt his attorney could have shown the state's witnesses were not telling the truth. (TR3 15: LL 1-7). Dubray conceded he told the court when he pleaded guilty he had sufficient time to discuss his case with attorneys and he was satisfied with them.  It was also his decision to plead guilty. (TR3 15: LL 12-25). Dubray said he was frustrated with his sentence. (TR3 16: LL 5-7). Dubray conceded he had made statements to law enforcement to the effect, "If I did it, I'm sorry.  I don't know," and "I don't know if I did it or not. I blacked out." (TR3 16: LL 15-25). Dubray also conceded that at his change of plea hearing, he admitted he was too drunk to remember. (TR3 17: LL 1-4). Dubray said he owed it to his children to withdraw his guilty pleas and prove he is innocent. However, he conceded he had said: "[A] child at that age is probably not going to lie." (TR3 17: LL 15-25; 18: L 1). Dubray conceded he was

confronted by the child's mother within a short time after the alleged incident. (TR3 19: LL 19-25; 20: LL 1-25; 21: LL 1-11).

¶ 53 Hankey defended Dubray against two counts of Gross Sexual Imposition, both AA felonies, punishable by life without the possibility of parole. **N.D.C.C. §§12.1-20-03(1)(d), 12.1-20-03(3)(a), 12.1-32-01(1).**   The stakes aren't any higher in North Dakota. Notwithstanding, Hankey did not see a need to hire an expert witness to review information about the child victim of sexual abuse, after watching the video of the forensic interview with the child. (TR3 29: LL 20-25; 30: LL 1-23). At the same time, the court had not conducted a pre-trial hearing to determine whether any of the hearsay evidence would be admitted at trial. Such a hearing is mandatory. **N.D.R.Evid. 803(24).**

¶ 54 All Hankey did do was study and share the materials disclosed in discovery by the prosecutor. He did not interview, nor did he depose any witnesses, either for the state or the defense. He did not interview the child or the child's mother. Hankey stated he has never deposed defense witnesses in a sexual assault case.  He wants to find out what they have to say for the first time at trial in front of the jury. (TR3 44: LL 13-24, 45: LL 8-24). Hankey conceded he did not file a motion in limine as to the alleged prior sexual misconduct by Dubray. He felt he could keep that information out of evidence unless they opened the door.  (TR3 38: L 25; 39: LL 1-12). However, those prior allegations loomed as a dark cloud over Dubray when he entered Alford pleas on the eve of his jury trial.  Hankey struggled to articulate what the theory of defense would be at trial.

¶ 55 All Hankey did was review the basic discovery and share it with Dubray. He literally did nothing more, and was ostensibly ready to go to trial on two AA felonies. Yes, Dubray conceded he had made some arguably incriminating statements, but those statements were far from a confession. He also admitted that he told the court when he pleaded guilty he could not remember committing the crimes because he was drunk. Dubray asked the court to withdraw his guilty pleas before he was sentenced, and claimed he felt forced by his attorney to plead guilty. (TR3 13: LL 3-10).

¶ 56 Hankey did make an oral motion to withdraw the guilty pleas. The sentencing hearing took place on October 4, 2013. (TR2 1-39). Hankey informed the court Debray wanted to withdraw his guilty pleas pursuant to **N.D.R.Crim.P 11(d)(B)(ii)** which allows withdrawal of guilty pleas for any fair and just reason prior to sentencing. (TR2 3: LL 14-24).

¶ 57 The trial court decided to proceed with the sentencing hearing, referring to *State v. Moore*, presumably *State v. Moore*, **2005 ND 183, 709 N.W.2d 21**, although nothing in that per curiam opinion lends support to the procedure the court followed. The court indicated that Dubray could file a motion supported by a brief and affidavits and allow the state to respond. If Dubray could show a fair and just reason, he would be allowed to withdraw his pleas, but the court would proceed with his sentencing. (TR2 4: LL 11-25; 5: LL 1-4).

¶ 58 In its decision, the trial court did not address the proper standard articulated by this court in **Lindsey v. State, 2014 ND 174, ¶¶ 16- 19, 852 N.W.2d 383.** (App. 43-48). "The second prong of the *Strickland* test is satisfied in the context

of a guilty plea if the defendant shows "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ernst v. State*, **2004 ND 152, ¶ 10, 683 N.W.2d 891. (*citations omitted*).** The question is not whether Duray would have been acquitted at trial, which is the standard applied by the trial court.   The standard is whether, if Hankey's performance had not been so deficient, there is a reasonable probability that Dubray would not have pleaded guilty. Dubray has proven on this record that Hankey's performance prior to his guilty pleas did fall below an objective standard of reasonableness, and the trial court's findings to the contrary are erroneous. Hankey did no independent investigation or preparation and planned to try the case by the seat of his pants. Dubray was placed in such a position by his attorney that he felt he had no choice but to plead guilty, not based upon confidence in his attorney's advice after leaving no stone unturned, but based upon being helpless to make a knowing, intelligent and voluntary waiver of his right to a trial.

¶ 59 This court should apply the lesser "fair and just" standard, not the far more onerous "manifest injustice" standard, because Hankey neither filed a motion to withdraw the guilty pleas, despite being invited to do so, nor did he file a direct appeal.  Furthermore, the trial court abused its discretion by not allowing Dubray to withdraw his guilty plea applying the "fair and just" standard.   There is no indication in this record that the prosecution would have been prejudiced in any manner had Dubray been allowed to withdraw his guilty pleas. **N.D.R.Crim.P. 11(d)(1) & (3).**

¶ 60 In summary, Dubray was provided ineffective assistance of counsel as to his guilty pleas in this case. Dubray was facing two AA felonies and was entitled to more than his attorney's cursory review of the state's discovery. An issue of great concern is how the prior allegations of sexual misconduct against Dubray improperly played a role in his guilty pleas. The trial court applied the wrong standard to Dubray's application for post-conviction relief. Dubray does not have to prove he would have been acquitted at trial, but that he would not have pleaded guilty if his attorney's representation had been effective, which he has done.

## ¶ 61  Conclusion

¶ 62 The District Court's Order should be reversed, the Criminal Judgment should be vacated, and Dubray should be allowed to withdraw his guilty pleas.

Respectfully submitted this 30th day of March, 2015.

MONTY G. MERTZ (#03778)
Supervising Attorney
Fargo Public Defenders Office
912 - 3rd Avenue South
Fargo, ND 58103-1707
Phone (701) 298-4640
Fax (701) 239-7110
Email: momertz@nd.gov
E-File Address: Fargopublicdefender@nd.gov
Attorney for Nathan Dubray

**IN RE**        Dubray v. State
Supreme Court No. 20140428
Grand Forks Co. No. 2014-CV-00960

# CERTIFICATE OF SERVICE
# BY ELECTRONIC MEANS

I, Monty G. Mertz, do hereby certify that, on the 30th day of March, 2015, I served the Brief of Petitioner/Appellant Nathan Dubray and the Appendix in this case on the following:

**Mark Jason McCarthy ND Bar ID# 05656**
Attorney at Law
<u>Grand Forks County</u>
<u>State's Attorney's Office</u>
124 S. Fourth St.
P.O. Box 5607
Grand Forks, ND 58206-5607

Attorney for Appellee

by sending an E mail to sasupportstaff@gfcounty.org with the documents attached in PDF format.  To the best of my knowledge, this is the Eservice address for Mr. McCarthy.

Dated this 30th of March, 2015.

Monty G. Mertz,  ND Bar ID#03778
Supervising Attorney
Fargo Public Defender Office
912 3rd Avenue South
Fargo, ND 58103-1707
Phone: 701-298-4640
Fax: 701-239-7110
Eservice: fargopublicdefender@nd.gov

IN RE                    Dubray v. State
                         Supreme Court No. 20140428
                         Grand Forks Co. No. 2014-CV-00960

## CERTIFICATE OF SERVICE
## N.D.R.App.P. 24

I, Monty G. Mertz, do hereby certify that, on the 30th day of March, 2015, true copies of the **Brief of Petitioner/Appellant Nathan Dubray** and the **Appendix** in this case were mailed to:

Mr. Nathan Dubray
#39395
James River Corrections Center
2521 Circle Drive
Jamestown, ND 58401

Petitioner/Appellant

To the best of my knowledge, this is the mailing address for Mr. Dubray.

Dated this 30th day of March, 2015.

Monty G. Mertz, ND Bar ID#03778
Supervising Attorney
Fargo Public Defender Office
912 3rd Avenue South
Fargo, ND 58103-1707
Phone: 701-298-4640
Fax: 701-239-7110
Attorney for Petitioner/Appellant
E-service address: Fargopublicdefender@nd.gov

20140428

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT

MAY 28 2015

STATE OF NORTH DAKOTA

IN THE SUPREME COURT
STATE OF NORTH DAKOTA

NATHAN Dubray,                    )
    Petitioner/Appellant,         )    Supreme Court No. 20140428
                                  )
    ___ vs. ___                   )
                                  )
STATE OF NORTH DAKOTA,            )    District Court No. 2014-CV-00960
    Respondent/Appellant,         )

Rule 24, SUPPLEMENTAL STATEMENT
OF PETITIONER/APPELLANT NATHAN DUBRAY

APPEAL FROM ORDER ENTERED on NOVEMBER 20, 2014, IN DISTRICT COURT, COUNTY OF GRAND FORKS, STATE OF NORTH DAKOTA, THE HONORABLE DEBBIE G. KLEVEN.

NATHAN DUBRAY
James River Correctional Center
2521 Circle Drive
Jamestown, North Dakota  58401

EXHIBIT
17
tabbies

# [#1] TABLE OF CONTENTS

Table of Authorities . . . . . . #2
Supplemental Statement , . . . . #3
Conclusion . . . . . . . . #26
Certificate of Service . . . . . #28
Certificate of non-compliance . . . #31



# [#2] TABLE OF AUTHORITES

## NORTH DAKOTA CASES:

Clark v. State,
2008 ND 234, 758 NW 2d 900 . . . . . . #23

Patten v. State,
2008 ND 29, 745 N.W. 2d 626 . . . . . #19

STATE v. Barnes,
2007 ND 15, 726 NW 2d 595 . . . . . . #21

State v. Klodt,
298 N.W. 2d 783 (ND 1980) . . . . . #24

State v. McKay,
234 NW. 2d 853 (ND 1975) . . . . . #20

State v. Rydberg,
519 N.W. 2d 306, 310 (ND 1994) . . . . #24


## Federal cases:

Strickland v. Washington
466 US. 668, 104 S.ct 2052, 80 L.Ed 2d 674 (1984). #14, 16, 19, 23

U.S. v. Cronic,
466 U.S. 496, 91 L.Ed. 2d 397, 106 set. 2639 (1968). # 19, 22

North Carolina v. Alford,
400 U.S. 25, 91 S.ct. 160, 27 L.Ed. 2d 162 (1970). #20

[#3]  SUPPLEMENTAL STATEMENT OF ADDITIONAL GROUNDS

[#4.] Petitioner/Appellant ("Appellant") received ineffective assistance of counsel during the original proceeding, outside the range of competence demand of attorneys in a criminal case, in violation of Appellant's Sixth Amendment rights under the United States Constitution.

[#5.] Appellants Father-in-Law paid the original Trial Attorney ("counsel") $50,000.00 (Fifty-Thousand Dollars) to represent Appellant in the underlying criminal offense(s) in this matter.

[#6.] Counsel made many promises to Appellant concerning the representation, including ① To conduct a complete investigation with a private investigator. ② To hire an expert to investigate or conduct relevant research into the fact that the alleged child victim's memory may have been tainted by relatives, adult authority figures or by the forensic interviewer; ③ To supply Appellant with all information, facts, documents, papers, reports and transcripts in a timely manner; ④ To communicate with Appellant in order to keep Appellant informed

(1)

(5.) To represent Appellant with his great skill, knowledge of the law and it's effects on Appellant's diligence and preparation.

[47.] Counsel failed to conduct the promised "Complete investigation" with a private investigator, even though a large portion of the original $50,000.00 U.S. Dollars was to be used to hire a private investigator for this investigation. Some of the facts a private investigator would have discovered are:

    a.) That evidence given by the alleged child victim, during the forensc interview on January 9, 2012, which was conducted by Tammy Knudson, of the Grand Forks County Social services, was tainted by concerned authority figures, including but not limited to: anxious parents and other adult family members, school teachers, police officals, and social worker therapists.

    b.) That this forensic interview was conducted seven (7) days after the

alleged incident, and that during these (7) seven days prior to the forensic interview the alleged child victim had been repeatedly questioned by several authority figures in different settings, and this repeated questioning, interviewing and counseling tainted the alleged child victim such that the alleged child victim would not be competent to testify under the rules of evidence. The private investigator would have discovered evidence of tainted memory, which would have raised reasonable concern as to whether the alleged child victim would be able to testify by memory, had counsel hired a private investigator.

C.) That the Prosecuting Attorney knew or had a duty to know that charging Appellant with multiple offenses was multiplicity, highly suspicious and based on fabricated and/or tainted evidence, and was designed to scare Appellant into pleading out, when Appellant clearly wanted

To go to trial.

d.) That statements and/or evidence given to Law Inforcement by Bobby Joe Bull; Torey Lynn Killscrow; Shelby Joleen Weist; Thomas Weist and Mario Alcon did not conform with the facts and were deceptive and untruthful. And had a criminal and personal background check been conducted on these person's it would have also been discovered that some if not all had untruthful character's and/or prior crimes of dishonesty or false statements to law enforcement.

[48] Counsel failed to hire the promised expert to investigate or conduct relevant research into the fact that the alleged child victim's memory may have been tainted by relatives, adult authority figures or by the forensic investigator, even though a large portion of the original $50,000.00 U.S. Dollars was to be used to hire an expert for this investigation. Some of the facts

an expert would have discovered are;

a.) that the evidence given by the alleged child victim, during the forensic interview on January 9, 2012, which was conducted by Tammy Knudson, of Grand Forks County Social Services was tainted by concerned authority figures, including but not limited to: Anxious parents and other family members, School teachers, police officals, social worker therapists.

b.) that the repeated questioning and leading statements by the forensic interviewer, Tammy Knudson Tainted the alleged child victims memory such that the alleged child Victim was not competent under the Rules of Evidence, To testify, as the alleged child victim's memory of the events had been tainted by this repeated questioning, interviewing, leading statements and counseling.

C.) An expert would have determined that a highly advanced inquiry into the atmosphere and demeanor surrounding the verbal interactions between the alleged child victim and concerned adults was necessary to determine wheather the alleged child victims memory was tainted.

[G9.] Counsel failed to supply Appellant with the promised information, facts, documents, papers, notes, reports or transcripts:

a.) Counsel failed to comply with Appellant's repeated reasonable requests for information, facts, documents, papers, reports, notes as was required of a reasonable attorney, pursuant to Rule 1.4 of the North Dakota Rules of Professional Conduct.

b.) Counsel failed to supply Appellant with sufficient information to participate intelligently in discussions concerning the representation and

The entering of the plea of guilty during the original proceeding.

C.) Appellant was unable to make an intelligent and Knowing decision as to wheather to plead out or go to trial.

[#10] Counsel failed to effectively communicate with appellant on any matter, except a few short periods before each court hearing.

a) Appellant was competely unware of any relevant research which was being conducted by counsel. And in fact was only made aware of this lack of relevant research and investigation after pleading guilty on advice of Counsel, against Appellant's wishes. When Appellant finally received a copy of Counsel's file, when Appellant was incarcerated at the James River Correctional Center.

[¶11.] Counsel failed in his duty to represent Appellant with the promised skill, thoroughness, legal knowledge, preparation and diligence, for which he was paid.

a.) Counsel failed in his promised duties, which he was paid for and which are required of a reasonable attorney.

b.) Counsel's pref performance was clearly below the prevailing "Professional norms", which are required under Rule (1.1), (1.3) and (1.4) pursuant to the North Dakota Rules of Professional Conduct.

[¶12] The North Dakota Rules of Professional Conduct set out the foundation and basic duties which are required of a reasonable Attorney. It is clear in the present matter Counsel's failed in these "principles" and "basic duties" during both the original proceeding by failing to investigate the statements made by the alleged Child Victim and the witnesses.

[¶13] The North Dakota Rules of Professional Conduct are the prevailing "Professional norms" are the "basic duties" and "principles" which are required of a reasonable attorney. Counsel failed in these "principles" and "basic duties" by failing to do the "PROMISED" and required work for the $50,000.00 U.S. Dollars.

[¶14] The question under the first test in STRICKLAND is whether or not the failure to conduct any relevant investigation or to hire an expert to investigate the statements made by the alleged child victim and the witnesses by counsel is deficient conduct. SEE, STRICKLAND, At 687. All appellant argues that it is. Counsel is presumed to have prepaired and investigated and then communicated all options with Appellant.

[¶15] Investigating all known facts, statements and evidence are simply a basic part of practicing law. By failing to do any investigation on his own or hiring an expert to investigate, was deficiant below the standard in the community.

[#16] The second test in <u>Strickland</u>, is essentially that Appellant was prejudiced by counsel's lack of Knowledge, investigation and advice, and would that prejudice have made a difference in the outcome. <u>SEE</u>, <u>STRICKLAND</u> At 694. Appellant argues that he was prejudiced, and counsel's errors and advice did make a difference in the outcome. When representing a defendant counsel must be competent in the basic parts(s) of practicing law. Such as investigating all Known facts, statements and evidence.

[#17] When negotiating a guilty plea, Knowledge of the revelant facts, Statements and evidence and an investigation into all underlying facts is essential, and counsel's failure here was unreasonable and prejudiced Appellant.

[#18] The prejudice occured as Appellant would have more thoughtfully considered trying the case before a jury, but for counsel's failure to prepare,

investigate, hire an expert and communicate with Appellant, and upon advice of counsel this option was effectively denied to Appellant. Had Appellant known that Counsel had failed in his duties, Appellant would have replaced him, and put the State to the test at trial, and disputed the case as charged. The uninformed and poor advice of Counsel made a difference in the outcome of the case and sentence, and the outcome would have been different had counsel given accurate and informed advice and information to Appellant. Appellant was inherently misled and uninformed by Counsel's deficiant performance and advice.

[¶19] In the context of a guilty plea, the prejudice prong of the <u>Strickland</u> test governing a claim of ineffective assistance of counsel is satisfied if the Appellant shows that there is a reasonable probabilty that, but for Counsel's error's, Appellant would not have pleaded guilty and would have

insisted on going to trial. SEE, Patten v. State, 2008, ND 29 ¶9, 745 NW. 2d 626. In the present case Applant would not have pled guilty, but for the advice of Counsel. therefore, the adversarial process itself was presumptively unreliable during the proceeding. SEE, U.S. v. Cronic, 466 U.S at 659 (1984) It is clear in this situation prejudice occured.

[¶20] Appellant has shown a manifest injustice has resulted from the plea of guilty on ineffective advice of Counsel, and therefore the court abused it's discretion and was without jurisdiction to sentence Appellant to a term of incarceration. SEE, North Carolina v. Alford, 400 U.S. 25, 91 S.ct. 160, 27 L. Ed. 2d 162 (1970) STATE v. McKay, 234 NW. 2d 853 (ND 1975) There is a reasonable probabilty that but for these unprofessional errors of counsel, the result of the original proceeding would have been different. Had Counsel, during the original proceeding, done even a perfunctary

Job there is a very good chance Appellant would not have plead guilty

[¶21] Clearly Appellant did not enter his plea knowingly or intelligently and thus, the withdrawl of the plea is necessary to correct a manifest injustice. SEE, State v. Barnes, 2007 N.D. 15, ¶16, 726, N.W. 2d 595.

[¶22] Each claim of ineffective assistance of counsel here supports ineffectiveness on their own, as each error is sufficiently egregious and prejudicial. SEE, United States v. Cronic, 466 U.S. 496, 91 L.Ed. 2d 397, 106 S.ct. 2639 (1968) Clearly there were multiple errors here, which each on their own prejudiced Appellant and made counsel's performance constitutionally defective.

[¶23 Appellant was not accorded the counsel guaranteed by the Sixth Amendment. And clearly below the "objective standard of reasonableness"

"Considering prevailing professional norms." SEE, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984) Clark v. State, 2008 ND 234, ¶12, 758 NW. 2d 909 SEE Also N.D.R. Prof. Conduct.

[¶24.] While Appellant believes that his fifth, sixth and fourteenth Amendment protections are enough, he believes that he should be afforded even greater Constitutional protection under Artical I, Section 12 of the North Dakota Constitution, especially regarding his due process rights and right to effective assistance of counsel. SEE, State v. Klodt, 298 N.W. 2d 783 (ND 1980) The emphasis of Artical I, Section 12 of the North Dakota Constitution should be on protecting an individuals right to due process and effective assistance of counsel, rather than simply just guaranteeing it. SEE, State v. Rydberg 519, N.W. 2d 306, 310 (ND 1994)

[¶25]          CONCLUSION

[¶26] The District Court's order must be reversed, The criminal Judgement must be vacated, and Appellant must be allowed to withdraw his guilty plea.

[¶27] Respectfully submitted this __ day Of May, 2015.

Nathan Dubray
#39395
James River Correctional Center
2521 Circle Drive
Jamestown, North Dakota  58401

[¶28]   CERTIFICATE OF SERVICE

[¶29] I hereby certify that I served, by United States MAIL (Prison mail Box system) true and correct copies of the foregoing Rule 24, Supplemental statement of Petitioner/Appellant  NAthan Dubray upon:

Monty G. Mertz
Supervising Attorney
Fargo  Public Defender's Office
912 3rd Avenue South
Fargo, North Dakota  58103-1707

[¶30] Dated this 27th day of MAy, 2015

NATHAN Dubray

[¶31] Certificate of Non-Compliance

[¶32] I hereby certify that I am incarcerated at the James River Correctional Center at Jamestown, North Dakota and inmates are not allowed to use word processor's or Computers for any legal work

and further inmates are not allowed
to file any papers or documents
electronically or by any other means
than United States Mail.

[#33] Dated this 27 day of May, 2015


NATHAN Dubray   #39395
James River Correctional Center
2521 Circle Drive
Jamestown, North Dakota 58401

*original*

20140428

RECEIVED BY CLERK
SUPREME COURT     JUN - 1 2015

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT

MAY 28 2015

STATE OF NORTH DAKOTA

NATHAN Dubray,        )
Petitioner/Appellant,  )    Case no. 2014 0428
        vs.            )
STATE OF NORTH DAKOTA, )    CERTIFICATE OF SERVICE
    Respondant/Appelloet, )

(1) I hereby certify that I served, by United STATES mail (Prison Mail Box System) a true and correct copy of the Rule 24, Supplemental Statement of Petitioner/Appellant Nathan Dubray upon:

Mark Jason Mclarthy
P.O Box 5607
Grand Forks, north Dakota 58206-5607

(2) Dated this 27th day of May, 2015

Nathan Dubray

20140428

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JUNE 24, 2015
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

| | | |
|---|---|---|
| Nathan Dubray, | ) | Supreme Court No. 20140428 |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | District Court No. 18-2014-CV-00960 |
| vs. | ) | |
| | ) | |
| State of North Dakota, | ) | |
| | ) | |
| Respondent/Appellee. | ) | |

ON APPEAL FROM DENIAL OF POST-CONVICTION RELIEF
FROM THE DISTRICT COURT
FOR THE NORTHEAST CENTRAL JUDICIAL DISTRICT
GRAND FORKS COUNTY, NORTH DAKOTA
THE HONORABLE DEBBIE KLEVEN, PRESIDING

**BRIEF OF APPELLEE**

Meredith H. Larson
ND Bar ID #06206
Assistant State's Attorney
Grand Forks County
124 South 4th Street
P.O. Box 5607
Grand Forks, ND 58206-5607
(701) 780-8281
E-Service Address: sasupportstaff@gfcounty.org

M. Jason McCarthy
ND Bar ID #05656
Assistant State's Attorney
Grand Forks County
124 South 4th Street
PO Box 5607
Grand Forks, ND 58206-5607
(701) 780-8281
E-Service Address: sasupportstaff@gfcounty.org

EXHIBIT
tabbies®
_18_

# TABLE OF CONTENTS

Table of Contents..................................................................................................... i

Table of Authorities ................................................................................................ ii

Statement of the Issue ........................................................................................... iii

Law and Argument ............................................................................................... ¶1

**I.     The district court properly denied Dubray's motion for post-conviction relief**
.............................................................................................................. ¶1

　　　A.     *Hankey's representation did not fall below an objective standard of*
　　　　　　*reasonableness*................................................................................¶5

　　　B.     *Even if Hankey's representation fell below an objective standard for*
　　　　　　*reasonableness, there is not a reasonable probability that, but for*
　　　　　　*Hankey's alleged errors, Dubray would have insisted on going to trial*...¶9

Conclusion ......................................................................................................... ¶13

# TABLE OF AUTHORITIES

**North Dakota State Cases**

Damron v. State, 2003 ND 102, 663 N.W.2d 650 ............................................................ ¶2

Ernst v. State, 2004 ND 152, 683 N.W.2d 891 ............................................................ ¶3, 9

Everett v. State, 2015 ND 149, No. 20140288, 2015 WL 3622253 (N.D.) ...................... ¶8

Flanagan v. State, 2006 ND 76. 712 N.W.2d 602 ............................................................ ¶8

Investors Title Ins. Co. v. Herzig, 2010 ND 169, 788 N.W.2d 312 .............................. ¶12

Lindsey v. State, 2014 ND 174, 852 N.W.2d 383 ........................................ ¶2, 3, 9, 10, 12

Moore v. State, 2013 ND 214, 839 N.W.2d 834 ............................................................... ¶2

Noorlun v. State, 2007 ND 118, 736 N.W.2d 477 ......................................................... ¶5, 7

Patten v. State, 2008 ND 29, 745 N.W.2d 626 ................................................................. ¶1

Rummer v. State, 2006 ND 216, 722 N.W.2d 528 ....................................................... ¶5, 7, 9

Sambursky v. State, 2006 ND 223, 723 N.W.2d 524 ........................................................ ¶3

State v. Austin, 2007 ND 30, 727 N.W.2d 790 ................................................................. ¶5

State v. Skonsby, 417 N.W.2d 818 (N.D. 1987) ............................................................... ¶6

**Other State Cases**

Hill v. Lockhart, 474 U.S. 52 (1985) ................................................................................ ¶3

McMann v. Richardson, 397 U.S. 759 (1970) .................................................................. ¶2

Strickland v. Washington, 466 U.S. 668 (1984) ................................................ ¶3, 6, 9, 12

**North Dakota Rules**

N.D.R.App.P. 24 ................................................................................................................ ¶8

ND.R.Crim.P. 11 (d) ......................................................................................................... ¶2

**Secondary Sources**

Goodpaster, *The Trial for Life:  Effective Assistance of Counsel in Death Penalty Cases,*

58 N.Y.U.L.Rev. 299, 343 (1983) .................................................................................... ¶6

## STATEMENT OF THE ISSUE

I.   Whether the district court properly denied Dubray's motion for post
     conviction relief?

## LAW AND ARGUMENT

I.   **The district court properly denied Dubray's motion for post-conviction relief.**

[¶1] Post-conviction relief hearings are civil in nature and are governed by the North Dakota Rules of Civil Procedure. Patten v. State, 2008 ND 29 ¶8, 745 N.W.2d 626. The issue of ineffective assistance of counsel is a mixed question of law and fact that is fully reviewable by the North Dakota Supreme Court. Id. However, a trial court's findings of fact in a post-conviction relief proceeding will not be disturbed unless clearly erroneous. Id. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made. Id.

[¶2] An application for post-conviction relief seeking to withdraw a guilty plea is treated as a motion to withdraw guilty plea under N.D.R.Crim.P. 11(d). Moore v. State, 2013 ND 214, ¶10, 839 N.W.2d 834. Withdrawal of the guilty plea is allowed only when necessary to correct a manifest injustice. Id. A guilty plea must be done freely and voluntarily and when a defendant has entered into a plea at advice of counsel, only the voluntary and intelligent character of the guilty plea can be challenged. Id. at ¶11; Lindsey v. State, 2014 ND 174, ¶17 (quoting Damron v. State, 2003 ND 102 ¶9, 663 N.W.2d 650). Unless the defendant can establish "serious derelictions" on the part of the defendant's attorney that kept a plea from being knowingly and intelligently made, the defendant will be bound by that guilty plea. Damron at ¶13 (citing McMann v. Richardson, 397 U.S. 759, 774 (1970)). The defendant has the burden to present evidence to overcome the presumption that defense counsel is competent and adequate,

1

and to do so, the defendant must point to specific errors made by trial counsel. Id.

[¶3] In the case at hand, Dubray alleges that ineffective assistance of trial counsel. This Court has stated that an applicant for post-conviction relief bears a "heavy burden" to prevail on an ineffective assistance of counsel claim. Lindsey v. State, 2014 ND 174, ¶19, 852 N.W.2d 383. The petitioner must show that 1) counsel's representation fell below an objective standard of reasonableness and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). This two-part test under Strickland applies to challenges of guilty pleas based on an ineffective assistance of counsel claim. Id. (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). A defendant must demonstrate both deficient representation by counsel and prejudice caused by the deficient representation. Id. This Court has stated that the first prong is measured using "prevailing professional norms," and is satisfied if the defendant proves counsel's conduct consistent of errors serious enough to result in denial of counsel guaranteed by the Sixth Amendment. Id. (citing Sambursky v. State, 2006 ND 223, ¶13, 723 N.W.2d 524; Strickland, 466 U.S. at 687). The second prong of the Strickland test is satisfied in the context of a guilty plea if the defendant shows there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Id. (citing Ernst v. State, 2004 ND 152, ¶10, 683 N.W.2d 891).

[¶4] In order for Dubray to establish that the district court's denial of his post-conviction relief application to withdraw his guilty plea was clearly erroneous, he must establish that the district court erred when determining that there was not a manifest

2

injustice resulting in Dubray being permitted to withdraw his guilty plea. In order to establish such a standard based on ineffective assistance of counsel, Dubray must first successfully argue that Hankey's representation of him fell below an objective standard of reasonableness.  Second, Dubray must be able to establish that even if Hankey's representation of him fell below an objective standard of reasonableness that there is a reasonable probability that, but for Hankey's alleged errors, he would have insisted on going to trial.  Dubray could not establish either prong at the district court level. Further, on appeal Dubray cannot establish either prong and therefore the district court's denial of his application for post-conviction relief was not clearly erroneous.

  *A.*   *Hankey's representation did not fall below an objective standard of reasonableness.*

[¶5] On appeal, trial tactics, such as the decision to call certain witnesses, hire private investigators, and whether to depose or how to question certain witnesses are not second-guessed. Noorlun v. State, 2007 ND 118, ¶12, 736 N.W.2d 477 (citing State v. Austin, 2007 ND 30, ¶32, 727 N.W.2d 790).  Strategic choices by trial counsel made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.  Id. In Rummer v. State, Rummer claimed that trial counsel was ineffective and alleged that his counsel failed to adequately investigate scientific evidence. Rummer v. State, 2006 ND 216, ¶14, 722 N.W.2d 528. The district court, however, found that the trial counsel's strategy was an appropriate strategy among other alternatives in light of all the other evidence presented. Id. Further, the district court found that simply because another attorney may have proceeded differently, did not make the trial counsel's strategy below minimal standards. Id.

[¶6] This Court has stated that judicial scrutiny of counsel's performance must be highly deferential. State v. Skonsby, 417 N.W. 2d 818, 828 (N.D. 1987).  Further, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Id. The defendant must overcome the presumption that under the circumstances the challenged action may be considered sound trial strategy.  Id. Further, in Strickland, the United States Supreme Court has acknowledged that there are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.  Strickland v. Washington, 466 U.S. 689-690 (1984) (citing Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L.Rev. 299, 343 (1983)).

[¶7] In this case, Dubray alleges that Hankey's performance fell below an objective standard of reasonableness because he did not depose the victim, interview other witnesses who were not present for the crime, or hire an expert to challenge the forensic interview.  However, this Court has specifically recognized that each of those specific complaints fall within the sound purview of trial strategy.  Hankey testified that he did not find it to be a useful or effective strategy to depose a victim or witnesses in a criminal case in advance of trial. Post-Conviction Relief Hearing Tr. pp. 40-46.  Hankey testified that it is his trial strategy to wait until trial to cross-examine the witnesses so as to prevent the State and the State's witnesses from knowing his defense and questions in advance.  Post-Conviction Relief Hearing Tr. pp. 40-46. Hankey testified that he spent time watching and analyzing the forensic interview and that he did not feel that it would be an effective use of time or money to hire an expert to challenge the apparently sound and professional forensic interview that was completed with the victim.  Post-Conviction

4

Relief Hearing Tr. pp. 29-32.  Additionally, Dubray complains Hankey did not file a motion in limine regarding Dubray's prior bad acts.  Hankey testified that he did not do so because the State had not filed a Rule 404(b) Notice to introduce any prior bad acts and that, to his knowledge, the State had no intent on offering them.  Post-Conviction Relief Hearing Tr. pp. 38, 39.  As the Court has recognized in Rummer and Noorlun, the decisions made by Hankey are decisions that do not fall below the wide range of reasonable professional assistance. Hankey considered many options and chose a strategy he felt most appropriate when counseling Dubray. This Court will not engage in hindsight and simply because appellate counsel may have represented Dubray in a different matter, does not mean Hankey's assistance was ineffective.  Dubray cannot meet the first prong required to establish ineffective assistance resulting in a manifest injustice and therefore, his appeal should be denied.

[¶8] It should also be noted that pursuant to Rule 24 of the North Dakota Rules of Appellate Procedure, Dubray was permitted by the North Dakota Supreme Court Clerk to file a Supplemental Statement.  Rule 24 of the North Dakota Rules of Appellate Procedure provides that an indigent defendant in a criminal case represented by counsel may file a Supplemental Statement with the North Dakota Supreme Court. N.D.R.App.P. 24.  This Court has previously stated that post-conviction relief proceedings are civil in nature.  Flanagan v. State, 2006 ND 76, ¶9, 712 N.W.2d 602.  In the Supplemental Statement, Dubray reiterates issues raised by counsel regarding the forensic interview and private investigator/witness interviews.  Dubray claims Hankey failed to provide him with "information, facts, documents, papers, notes, reports or transcripts.  This allegation is not supported by the record.  In a post-conviction relief proceeding, the Petitioner bears

5

the burden to establish grounds for relief. Id. at ¶10.  During the evidentiary hearing, Dubray admitted to being provided the discovery materials.  Post-Conviction Relief Hearing Tr. p. 5.  Additionally, exhibits were entered into evidence at the evidentiary hearing establishing that Dubray was sent discovery and supplemental discovery. Post-Conviction Relief Evidentiary Hearing Exhibits 1-2.  There is no testimony or evidence to support Dubray's claim raised for the first time on appeal.  Further, issues not raised in a post-conviction relief application at the district court level cannot be considered on appeal. Everett v. State, 2015 ND 149, ¶16, No. 20140288, 2015 WL 3622253 (N.D.).

> B.    *Even if Hankey's representation fell below an objective standard of reasonableness, there is not a reasonable probability that, but for Hankey's alleged errors, Dubray would have insisted on going to trial.*

[¶9] The second prong of Strickland requires a defendant to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Ernst v. State, 2004 ND 152, ¶10, 683 N.W.2d 891. In Lindsey v. State, the defendant claimed that she received ineffective assistance of counsel because her attorney failed to provide her transcripts of interviews with a psychologist, that she was coerced, and that she was heavily medicated when she entered her plea.  Lindsey v. State, 2014 ND 174, ¶¶20-23, 852 N.W.2d 383.  However, this Court recognized that the transcript reflected the defendant entered her plea voluntarily and was advised of all the rights she was giving up.  Id. Additionally in the Rummer case, this Court addressed specifically the argument of whether an additional witness would have changed the result in a case.   This Court stated that a defendant must offer evidence that any additional witnesses would have aided the defense's claim  Rummer at ¶12.

6

[¶10] In this case Dubray alleges that Hankey should have deposed witnesses, hired an expert, and filed a motion in limine to prevent prior bad acts from coming in. With respect to the witnesses, Dubray never once explained to the district court or this Court on appeal how deposing any witnesses would have resulted in any different information.  Dubray and the eight-year-old victim were the only people present when the molestation took place.   The other witnesses, as Hankey testified, were not relevant to the ultimate issue, as to whether the molestation happened. Post-Conviction Relief Hearing Tr. pp. 40-46.  Further, the State had taken no action to notice out prior bad acts and in fact, most of the information regarding any prior bad acts were only detailed in the pre-sentence investigation which took place only after Dubray entered his guilty plea. Post-Conviction Relief Hearing Tr. p. 46.  Dubray does not detail how hiring an expert to testify regarding the forensic interview would have ultimately changed Dubray's decision to enter a guilty plea.  It is Dubray's burden to establish to the district court, and on appeal, to this Court, how but for Hankey's alleged errors, he would have insisted on going to trial.  There is no information for this Court or the district court to rely on that would explain how the result of the proceeding would have been different.  Depositions of the witnesses would have resulted in no additional information about the molestation. Dubray has not explained what information they could have obtained that would have changed his decision.   The forensic interview was completed professionally and appropriately.  Dubray has not alleged otherwise nor has he explained what information an expert witness would or could have provided that would have resulted in him persisting with a not guilty plea and proceeding to trial.  As in Lindsey, Dubray was read his rights.  He stated his pleas of guilty were made freely and voluntarily.  Change of Plea

7

Hearing Tr. p. 7. He stated that he had not been threatened or promised anything in an effort to plead guilty. Change of Plea Hearing Tr. p. 7. He acknowledged that there had been a jury questionnaire done and jurors were ready to report. Change of Plea Hearing Tr. p. 7. Dubray indicated he understood he was waiving his right to jury trial and his right to face the witnesses the State may call. Change of Plea Hearing Tr. p. 7. Dubray acknowledged that he understood he could receive a sentence up to life in prison. Change of Plea Hearing Tr. p. 8. Dubray specifically stated that he had enough time to discuss this case with his attorneys and that he was satisfied with the representation he received from his attorneys. Change of Plea Hearing Tr. p. 8. At the post-conviction relief hearing, Dubray never alleges that he was coerced into pleading guilty. In fact, he does not even allege his plea was not voluntary. Post-Conviction Relief Hearing Tr. pp. 12-13. Instead, he alleges that he was led to believe he would be found guilty "no matter what". Post-Conviction Relief Hearing Tr. pp. 12-13. Hankey specifically testified that, although Dubray made it difficult to keep in contact with, he had sat down with Dubray on several occasions, went through the discovery with him and discussed the strengths and weaknesses of the case. Post-Conviction Relief Hearing Tr. pp. 34-38. Further, Hankey testified that one of the Assistant State's Attorneys involved in the case also detailed for Dubray and Hankey the State's evidence. Post-Conviction Relief Hearing Tr. pp. 34-38. Hankey testified that he does not advise his clients to plead guilty or not. Post-Conviction Relief Hearing Tr. pp. 34-38. Instead, he presents the facts to his client and the risks and benefits of proceeding to trial and ultimately lets the client make the decision. Post-Conviction Relief Hearing Tr. pp. 34-38.

[¶11] Dubray himself provided the most enlightening testimony of the Post-

8

Conviction Relief hearing.  Dubray specifically acknowledged that he did tell the district

court on July 15, 2013 when he changed his plea that he was satisfied with Hankey's

representation. Post-Conviction Relief Hearing Tr. p. 16.  Dubray further stated that the

only thing that had changed between July 15, 2013 when he entered guilty pleas to

October 20, 2014 at the Post-Conviction Relief hearing  as to the quality/satisfaction with

his representation by Hankey was the amount of time in which he was sentenced.  Post-

Conviction Relief Hearing Tr. p. 16.

[¶12] Dubray has the burden to establish both prongs of Strickland. Not only can

the first prong not be established regarding the quality of Hankey's representation, but the

second prong also cannot be established.  In light of the fact that the Court and Mr.

Hankey, both explained in detail the possibility of being sentenced to life in prison,

simply being upset with the length of the sentence received does not amount to

ineffective assistance of counsel.   Finally, Dubray alleges that because the district court's

order sets forth the wrong standard; whether but for counsel's errors there would have

been a different result if this case were tried to a jury, this Court should reverse the

district court's decision.  The State concedes that the standard set forth in Lindsey v.

State is whether but for counsel's alleged errors Dubray would have persisted in his not

guilty plea.  However, this Court has stated that it will not set aside a correct result based

on correct reasoning under the wrong law if the results would have been the same under

the correct law.  Investors Title Ins. Co. v. Herzig, 2010 ND 169, ¶40, 788 N.W.2d 312.

The district court appropriately determined Dubray could not meet either prong of the

Strickland test; counsel's performance was not deficient and a different result was not

probable but for any alleged deficiency.   Therefore, the district court's decision denying

9

Dubray post-conviction relief should be affirmed.

## CONCLUSION

[¶13] For the above-stated reasons, Dubray's appeal should be denied.

DATED this ___ day of June, 2015.


Meredith H. Larson
ND Bar ID #06206
Assistant State's Attorney
Grand Forks County
124 South 4th Street
PO Box 5607
Grand Forks, ND 58206-5607
(701) 780-8281
E-Service Address:  sasupportstaff@gfcounty.org

10

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

| | | |
|---|---|---|
| Nathan Dubray, | ) | Supreme Court No. 20140428 |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | District Court No. 18-2014-CV-00960 |
| vs. | ) | |
| | ) | |
| State of North Dakota, | ) | |
| | ) | |
| Respondent/Appellee. | ) | |
| | ) | |

### AFFIDAVIT OF SERVICE
### BY E-MAIL
### SA#121086

STATE OF NORTH DAKOTA )
                      ) SS
COUNTY OF GRAND FORKS)

The undersigned, being of legal age, being first duly sworn deposes and says that on the 24 day of June, 2015, she served via e-mail true copies of the following documents:

**BRIEF OF APPELLEE**

and that said email was served on the address of:

Monty G. Mertz and said e-mail address is: fargopublicdefender@nd.gov

At the office of the Grand Forks County State's Attorney's Office.

States Attorney's Office

Subscribed and sworn to before me this 24 day of June, 2015.

Notary Public

JENNIFER ALVSTAD
Notary Public
State of North Dakota
My Commission Expires March 26, 2021

dj

20140428

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JUNE 25, 2015
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

| | | |
|---|---|---|
| Nathan Dubray, | ) | Supreme Court No. 20140428 |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | District Court No. 18-2014-CV-00960 |
| vs. | ) | |
| | ) | |
| State of North Dakota, | ) | |
| | ) | |
| Respondent/Appellee. | ) | |
| | ) | |

## AFFIDAVIT OF SERVICE
### BY E-MAIL
SA#121086

STATE OF NORTH DAKOTA )
                                              ) SS
COUNTY OF GRAND FORKS)

The undersigned, being of legal age, being first duly sworn deposes and says that on the 25 day of June, 2015, she served via e-mail true copies of the following documents:

**BRIEF OF APPELLEE**

and that said email was served on the address of:

Charles J. Sheeley and said e-mail address is: sheeleylawnd@gmail.com

At the office of the Grand Forks County State's Attorney's Office.

_Darlene Jensen_
States Attorney's Office

Subscribed and sworn to before me this 25 day of June, 2015.

_Jennifer Alvstad_
Notary Public

JENNIFER ALVSTAD
Notary Public
State of North Dakota
My Commission Expires March 26, 2021

dj

20140428

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JULY 8, 2015
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT

# STATE OF NORTH DAKOTA

# SUPREME COURT NO. 20140428

*2014-CV-00960*

| | |
|---|---|
| Nathan Dubray, | ) |
| Appellant, | ) |
| | ) |
| vs. | ) |
| | ) |
| State of North Dakota, | ) |
| Appellee. | ) |

---

## APPELLANT'S REPLY BRIEF

---

Appeal from the November 20, 2014, Order Denying Application for
Post-Conviction Relief
the Honorable Debbie G. Kleven, Presiding

Charles J. Sheeley, NDID #06383
**SHEELEY LAW, P.C.**
3332 4th Avenue South, Suite 2D1
Fargo, North Dakota 58103
Telephone: (701) 356-4207
E-mail: sheeleylawnd@gmail.com

**ATTORNEY FOR APPELLANT**

EXHIBIT
19

## [¶ 1] <u>TABLE OF CONTENTS</u>

<u>Paragraph No.</u>

Table of Contents ................................................................. ¶ 1

Table of Authorities ............................................................. ¶ 2

Law and Argument ............................................................... ¶ 3

       **I.**     **Counsel was defective and Mr. Dubray was prejudiced by the defective representation.**

       **II.**    **Mr. Dubray's attempt to withdraw his guilty plea through post-conviction proceedings should be reviewed under the "fair and just" standard.**

Conclusion ......................................................................... ¶ 10

Certificate of Service ........................................................... ¶ 13

[¶ 2] **TABLE OF AUTHORITIES**

**Paragraph No.**

**Cases**

Bahtiraj v. State, 2013 ND 40, 840 N.W.2d 605 ……………...¶ 5

Sambursky v. State, 2006 ND 223, 723 N.W.2d 524…………..¶ 4

State v. Feist, 2006 ND 21, 708 N.W.2d 870………………....¶ 7

State v. Lium, 2008 ND 33, 744 N.W.2d 775…………..…...¶ 6, 7

**Rules**

N.D.R.Crim.P. 11(d)…………………………………........ ¶ 7

N.D.R.Crim.P. 52(b)………………………………….......¶ 8

[¶ 3] <u>**LAW AND ARGUMENT**</u>

I.      <u>**Counsel was defective and Mr. Dubray was prejudiced by the defective representation.**</u>

[¶ 4]   The government urges this Court find that Nathan Dubray's trial attorney's decision to forgo depositions of witnesses; decision to forgo having an expert review video of an interview with a child; decision to forgo filing any 404(b) pretrial motions; and decision to have his client meet with the government attorney for the government attorney to outline his case were "trial strategy." (Appellee Br., ¶ ¶ 5, 6, 7). The government's position is untenable. Mr. Dubray was on the eve of trial for two AA Felonies with no real trial strategy except to cross-examine the witnesses. (Post-conviction Tr. p. 42, ll. 6-8). On the eve of trial, Mr. Dubray had little idea beyond what was written in police reports of what witness testimony might be. On the eve of trial, there was no investigation into whether the child may have been coached or otherwise targeting Mr. Dubray instead of another individual. On the eve of trial, no expert on behalf of Mr. Dubray had reviewed the interview of the child to look for discrepancies in how the interview was handled or other factors Mr. Dubray might be able to utilize at trial. On the eve of trial, Mr. Dubray was confronted with the unanswered question of whether two other unsubstantiated allegations of child molestation would be used against him to convict him for this charge. Finally, on the eve of trial Mr. Dubray was confronted by not only his attorney's lack of preparation, but also the

opposite – he was able to listen to everything the government attorney had done in preparation, and listen in a private meeting how the government attorney planned to convict him. (Post-Conviction Relief Tr. p. 34, ll. 10-25, p. 35, ll. 107). The government can label this "trial strategy," but the explanations behind the labels are implausible and void of any substance. It is incredulous to argue that in a child sex case and on the eve of trial, mere cross-examination preparation amounts to effective representation. It is understandable that Mr. Dubray felt he had no decision but to plead guilty to something he did not do. The allegations could have put him in prison for the rest of his life. Counsel should have, at the very least, interviewed witnesses prior to trial; should have hired an expert to attempt to rebut the government's two experts; and should have ensured Mr. Dubray through pretrial motions that prior, unsubstantiated allegations would remain out of the trial. Counsel's representation was deficient and fell below the "prevailing professional norms." See Sambursky v. State, 2006 ND 223, ¶ 13, 723 N.W.2d 524. The Court should require a higher standard of representation than what was provided here and find the first Strickland prong was met.

[¶ 5]   To demonstrate prejudice, Mr. Dubray must show that but for his counsel's errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Bahtiraj v. State, 2013 ND 40, ¶ 15, 840 N.W.2d 605. The prejudice factor was established

by Mr. Dubray's strenuous attempt to withdraw his guilty plea before he was sentenced.   This is more than the "self-serving" statement provided in Bahtiraj.  Id. at ¶ 16.  Had Mr. Dubray been properly counseled, he would not have pleaded guilty and the result would have been different.

## II.   Mr. Dubray's attempt to withdraw his guilty plea through post-conviction proceedings should be reviewed under the "fair and just" standard.

[¶ 6]   Mr. Dubray unequivocally moved to withdraw his guilty plea prior to being sentenced on October 4, 2013.  (Sentencing Hearing Tr. p. 3, ll. 4-24). The district court essentially ignored his request, and demanded the case proceed to sentencing.  (Sentencing Hearing Tr. p. 4, ll. 21-25).  In doing so, the district court ignored the standard the Court and North Dakota Rules of Criminal Procedure require: That Mr. Dubray need only show a fair and just reason to withdraw his plea.  State v. Lium, 2008 ND 33, ¶ 17, 744 N.W.2d 775; N.D.R.Crim.P. 11(d).  The district court's failure to properly consider the motion was obvious error and warrants withdrawal of Mr. Dubray's plea.

[¶ 7]   An individual should be allowed to withdraw his guilty plea after entering the plea but before sentencing for any fair and just reason unless the prosecution has been prejudiced by reliance on the plea.  Lium, 2008 ND 33, ¶ 17; N.D.R.Crim.P. 11(d).  (Rule 11(d)) "should be liberally construed in favor of the defendant, and that leave to withdraw a guilty plea before

sentencing should be freely granted." State v. Feist, 2006 ND 21, ¶ 21, 708 N.W.2d 870.

[¶ 8]   Here, Mr. Dubray, through counsel, requested to withdraw his guilty plea prior to the sentencing hearing. (Sentencing Hearing Tr. p. 3, ll. 4-24). Mr. Dubray's counsel made the request, and also made a somewhat subtle hint that perhaps he should withdraw from representation of Mr. Dubray. (Sentencing Hearing Tr. p. 5 ll. 5-17).   Nonetheless, the district court demanded the case be heard for sentencing that morning.   (Sentencing Hearing, p. 4, l. 15). The sentencing court's basis for denying the request to withdraw were victim-based: that "we owe it to the victim to bring this to an end" and that the "victim does deserve some conclusion to this case" (Sentencing Hearing Tr. p. 4, l. 15; p. 6, l. 14). Neither of these factors were advocated for by the government's attorney, nor are they factors that should be considered under the "fair and just" plea withdrawal standard. The factor that should have been considered - Mr. Dubray's claim of innocence - was simply ignored by the district court. The district court committed obvious error in evaluating Mr. Dubray's motion to withdraw. Mr. Dubray's right to jury trial was compromised by the district court's error. An obvious error that affects substantial rights may be considered even though it originally was not brought to the court's attention. N.D.R.Crim.P. 52(b). This is an exceptional circumstance which this Court should take notice and order Mr.

Dubray's pleas be withdrawn, or the matter remanded for a hearing on the motion to withdraw.

[¶ 9]   Counsel's performance was further deficient for failing to challenge the denial of a plea withdrawal through the post-trial motions offered by the district court.  Counsel had a duty to follow through with representation for Mr. Dubray after judgment was entered but he failed to do so.

## [¶ 10] **CONCLUSION**

[¶ 11] Counsel's failure to depose witnesses, hire an expert to rebut the government's two experts, and file pretrial motions to litigate the admissibility of prior allegations against Mr. Dubray amounts to deficient representation.   Further, counsel's failure to follow through with Mr. Dubray's request to withdraw his guilty plea fell below the professional norms expected of attorneys in North Dakota.  Had counsel been effective, Mr. Dubray would have insisted on going to trial.   In fact, Mr. Dubray attempted to withdraw his guilty plea prior to even being sentenced.

[¶ 12] In addition, this Court should find the district court's analysis of Mr. Dubray's request to withdraw his motion was flawed.  The court failed to follow the "fair and just" standard and instead imposed a victim-based standard not authorized by law in denying Mr. Dubray's motion to withdraw his guilty plea.  This Court should Order the guilty plea withdrawn or, at the least, remand the case to the district court for a hearing on the motion to withdraw the guilty plea.

Dated this 8th day of July, 2015.

/s/ Charles Sheeley
Charles J. Sheeley (#06383)
**SHEELEY LAW, P.C.**
3332 4TH Avenue South, Suite 2D1
Fargo, ND 58103
Phone: (701) 356-4207
Facsimile: (701) 356-4209
sheeleylawnd@gmail.com

**ATTORNEY FOR APPELLANT**

## [¶ 13] **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was sent by e-mail on 8th day of July, 2015, to: sasupportstaff@gfcounty.org; Meredith.larson@gfcounty.org; and jason.mccarthy@gfcounty.org

/s/ Charles Sheeley
Charles J. Sheeley

FILED BY CLERK   OCT 13 2015
SUPREME COURT

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2015 ND 244

Nathan G. Dubray,

Petitioner and Appellant

v.

State of North Dakota,

Respondent and Appellee

No. 20140428

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Per Curiam.

Charles J. Sheeley (argued), 3332 Fourth Ave. S., Ste. 2D1, Fargo, ND 58103, for petitioner and appellant.

Mark J. McCarthy (argued) and Meredith H. Larson (on brief), Assistant State's Attorneys, P.O. Box 5607, Grand Forks, ND 58206-5607, for respondent and appellee.

STATE OF NORTH DAKOTA } SS.
IN THE SUPREME COURT

I, Penny Miller, Clerk of the Supreme Court within and for the State of North Dakota, do hereby certify that the above and foregoing is a full, true and correct copy of the original, as the same remains on file in my said office.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Seal of said Court at Bismarck, this 13th day of November 20 15

Penny Miller
Clerk, Supreme Court

by Sarah E. Erck, deputy clerk

EXHIBIT
tabbies
20

**Dubray v. State**

**No. 20140428**

**Per Curiam.**

[¶1]    Nathan Dubray appeals from a district court order denying his application for post-conviction relief.  In 2013, Dubray pled guilty to two counts of gross sexual imposition, a class AA felony.  Dubray applied for post-conviction relief claiming ineffective assistance of counsel and seeking to withdraw his guilty pleas and proceed to trial. After an evidentiary hearing, the district court denied his application. Dubray appealed, arguing the district court committed reversible error in denying his application claiming his guilty pleas were not voluntary because he received ineffective assistance of counsel and was prejudiced by his trial counsel's failure to (1) hire a private investigator; (2) depose witnesses; (3) move to exclude evidence; and (4) communicate all known facts to Dubray.  Dubray also argues the district court applied the wrong standard to the second prong of its analysis.  Courts need not address both prongs of the Strickland test if a court can resolve the case by addressing only one prong.  Rencountre v. State, 2015 ND 62, ¶ 7, 860 N.W.2d 837.  We conclude the district court's finding that Dubray's trial counsel's representation did not fall below an objective standard of reasonableness is not clearly erroneous. Therefore, we summarily affirm under N.D.R.App.P. 35.1(a)(2).

[¶2]

1

IN THE SUPREME COURT
STATE OF NORTH DAKOTA

**JUDGMENT**

Supreme Court No. 20140428
Grand Forks County Case No. 2014-CV-00960

Appeal from the district court for Grand Forks County.

**Nathan G. Dubray,**                                  **Petitioner and Appellant**
    v.
**State of North Dakota,**                            **Respondent and Appellee**

[¶1]     This appeal having been heard by the Court at the September 2015 Term before:

[¶2]     Chief Justice Gerald W. VandeWalle, Justice Dale V. Sandstrom, Justice Carol Ronning Kapsner, Justice Daniel J. Crothers, and Justice Lisa Fair McEvers;

[¶3]     and the Court having considered the appeal, it is ORDERED AND ADJUDGED that the order of the district court is AFFIRMED under N.D.R.App.P. 35.1(a)(2).

[¶4]     This judgment, together with the opinion of the Court filed this date, constitutes the mandate of the Supreme Court on the date it is issued to the district court under N.D.R.App.P. 40.

Dated: October 13, 2015

By the Court:

_Gerald W. VandeWalle_
Chief Justice

ATTEST:

_Penny Miller_
Clerk

STATE OF NORTH DAKOTA } SS.
IN THE SUPREME COURT }

I, Penny Miller, Clerk of the North Dakota Supreme Court, do hereby certify that the foregoing is a complete and correct copy of the judgment of the Supreme Court entered in the above entitled action. The same, together with the opinion of the Court, is hereby transmitted to the Court below as the mandate of the Supreme Court

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Seal of said Court this 12th day of November 20 15

_Penny Miller_
Clerk of the Supreme Court

by _Sarah E. Erck, deputy_
_Clerk_

IN DISTRICT COURT, GRAND FORKS COUNTY, STATE OF NORTH DAKOTA

| | | |
|---|---|---|
| State of North Dakota, | ) | **MOTION TO WITHDRAW GUILTY PLEA** |
| Plaintiff, | ) | |
| vs. | ) | |
| Nathan G. Dubray, | ) | Crim.Case No. 18-2012-CR-01960 |

[¶1] COMES NOW, Nathan G. Dubray the above-named Defendant ("Defendant"), pro se, and hereby respectfully requests the Honorable Court to allow Defendant to withdraw his guilty plea, entered during the Sentencing of October 4, 2013, before the Honorable Debbie G. Kleven, Judge of the District Court, on the two underlying offenses in this matter.

[¶2] PLEASE TAKE NOTICE, that Defendant has requested a hearing on this Motion. (See, REQUEST FOR HEARING ON DEFEN-DANT'S MOTION TO WITHDRAW GUILTY PLEA, within).

[¶3] PLEASE TAKE FURTHER NOTICE, that Defendant has requested the appointment of counsel for the requested hearing on this Motion at public expense.

[¶4] Dated this 27 day of December, 2015.


Nathan G. Dubray, pro se
James River Correctional Center, Inmate #39395
2521 Circle Drive
Jamestown, ND 58401

**EXHIBIT
21**

IN DISTRICT COURT, GRAND FORKS COUNTY, STATE OF NORTH DAKOTA

State of North Dakota,      )    AFFIDAVIT OF NATHAN G. DUBRAY
     Plaintiff,            )    IN SUPPORT OF MOTION TO WITH-
      vs.                 )    DRAW GUILTY PLEA
Nathan G. Dubray,           )    Crim.Case No. 18-2012-CR-01960
     Defendant.            )

[¶1] Nathan G. Dubray, the above-named Defendant, being first duly sworn on oath, states and alleges as follows:

[¶2] That Affiant is the Defendant in the above-entitled action.

[¶3] That on July 15, 2013, Affiant plead guilty to both of the underlying offenses in the above-entitled matter, pursuant to an Alford plea at a change of plea hearing.

[¶4] That multiple times prior to the sentencing hearing of October 4, 2013, Affiant informed his attorney Mr. Hankey that Affiant wanted to withdraw his guilty pleas prior to sentencing. Further, Affiant wanted Mr. Hankey to present this request to the Court.

[¶5] That Mr. Hankey failed to file the requested motion to withdraw guilty plea papers, prior to the sentencing hearing of October 4, 2013.

[¶6] That during the sentencing hearing of October 4, 2013, Mr. Hankey informed the Court that Affiant had requested to

1

withdraw his guilty pleas pursuant to N.D.R.Crim.P. 11(d)(B)
(ii) which allows withdrawal of guilty pleas for any fair and
just reason prior to sentencing.

[¶7] That the Court decided to proceed with the sentencing
hearing, but the Court indicated that Affiant could file a
motion supported by a brief and affidavit and allow the State
to respond, and that if Affiant could show a fair and just
reason, Affiant would be allowed to withdraw his guilty pleas.

[¶8] That the prosecution would not have been prejudiced in
any manner had Affiant been allowed to withdraw his guilty
pleas.

[¶9] That the prior unfounded allegations of sexual miscon-
duct against Affiant improperly played a role in Affiant
pleading out, along with Mr. Hankey's representation which
amounted to little more than a cursory review of the State's
Discovery and the Clerk's Record.

[¶10] That had Mr. Hankey fully provided Affiant with infor-
mation concerning the outcome of the Alford pleas, Affiant
would not have plead out to these offenses and Affiant would
have insisted on a jury trial.

[¶11] That Affiant's pleas to the underlying offenses in this
matter were not voluntary due to Mr. Hankey's serious dere-
lictions. Mr. Hankey failed to hire an expert to interpret

2

the forensic video; informed Affiant that with "this judge" there were "hefty sentences" after a loss at trial; failed to file a motion as to the unfounded alleged prior sexual mis-conduct; failed to request a pretrial hearing on the issue of hearsay evidence as is required under law; failed to hire a private investigator which Affiant paid for; failed to take any depositions which Affiant paid for; failed to interview any witnesses; did not articulate any theory or defense or go over discovery with Affiant.

[¶12] That Affiant was placed in such a position by Mr. Hankey that Affiant felt he had no choice but to plead guilty, and not based upon confidence in Mr. Handey's advice.

[¶13] That Affiant's pleas were based upon being helpless to make a knowing, intelligent and voluntary waiver of his right to a trial.

[¶14] Dated this $\partial\partial$ day of December, 2015.

Nathan G. Dubray, Affiant, pro se
James River Correctional Center, Inmate #39395
2521 Circle Drive
Jamestown, ND 58401

STATE OF NORTH DAKOTA    )
                         )  ss.
COUNTY OF STUTSMAN       )

[¶15] Nathan G. Dubray being first duly sworn on oath, deposes

3

and says that he is the Defendant in the above-entitled
action; that he has read the **AFFIDAVIT OF NATHAN G. DUBRAY
IN SUPPORT OF MOTION TO WITHDRAW GUILTY PLEA** within and
knows the contents thereof and that the same is true, except
as to matters stated therein upon information and belief and
as to those matters he states that he believes them to be
true.

_____
Affiant

**STATE OF NORTH DAKOTA**          )
                                   )  ss.
**COUNTY OF STUTSMAN**             )

[¶16] On the ___22___ day of December, 2015, before me, a Notary
Public, in and for the county and state, personally appeared
Nathan G. Dubray, known to me to be the person who is
described in and who executed the **AFFIDAVIT OF NATHAN G.
DUBRAY IN SUPPORT OF MOTION TO WITHDRAW GUILTY PLEA** within
and acknowledged to me that he executed the same.

_____
Notary Public

```
╔═══════════════════════════════╗
║      DENISE KRENZ             ║
║      Notary Public           ║
║   State of North Dakota      ║
║ My Commission Expires August 3, 2021 ║
╚═══════════════════════════════╝
```

4

IN DISTRICT COURT, GRAND FORKS COUNTY, STATE OF NORTH DAKOTA

| State of North Dakota, | ) | **BRIEF IN SUPPORT OF MOTION TO** |
| Plaintiff, | ) | **WITHDRAW GUILTY PLEA** |
| vs. | ) | |
| Nathan G. Dubray, | ) | Crim.Case No. 18-2012-CR-01960 |
| Defendant. | ) | |

[¶1] COMES NOW, Nathan G. Dubray, the above-named Defendant ("Defendant"), pro se, and hereby respectfully requests the Honorable Court to allow Defendant to withdraw his guilty plea, entered during the Sentencing of October 4, 2013, before the Honorable Debbie G. Kleven, Judge of the District Court, on the two underlying offenses in this matter.

[¶2] Defendant asserts his pleas were not voluntary due to his attorney, Mr. Hankey's serious derelictions. All Mr. Hankey did, was to study the materials disclosed in discovery by the prosecutor and the record by the Clerk. Mr. Hankey did not interview, nor did he depose any witnesses, either for the State or the defense. He did not interview the alleged child victim or the alleged child victim's mother. Mr. Hankey did not file a motion in limine as to the alleged prior sexual misconduct by Defendant. Mr. Hankey articulated no theory of defense to Defendant.

[¶3] Defendant agreed to Alford pleas of guilty on the eve of his jury trial, because of Mr. Hankey's failures and advice and because the unfounded prior allegations loomed as a dark cloud over Defendant. Mr. Hankey only reviewed the

1

basic discovery and clerk's record and did literally nothing
more, but convince Defendant to a plea deal on two AA felonies.

[¶4] It is clear from the trial transcripts and the post-
conviction hearing transcripts that Defendant requested and
informed Mr. Hankey he wanted to remove the pleas of guilty
entered a the change of plea hearing of July 15, 2013. Mr.
Hankey failed to file the proper motion paper to withdraw the
guilty pleas. Mr. Hankey did make a oral motion to withdraw
the guilty pleas at the sentencing hearing of October 4, 2013.
Mr. Hankey informed the Court that Defendant wanted to with-
draw his guilty pleas pursuant to N.D.R.Crim.P. 11(d)(B)(ii),
which allows withdrawal of guilty pleas for any fair and just
reason prior to sentencing.

[¶5] The Trial Court decided to proceed with the sentencing
hearing, referring to State v. Moore, presumably State v.
Moore, 2005 ND 183, 709 N.W.2d 21, although nothing in that
per curiam opinion lends support to the procedure the Court
followed. The Court indicated that Defendant could file a
motion supported by a brief and affidavit and allow the State
to respond, and if Defendant could show a fair and just reason,
he would be allowed to withdraw his pleas, but the Court
would proceed with sentencing.

[¶6] There can be no "fair and just" pleas of guilty, when
Mr. Hankey neither filed a motion to withdraw the guilty
pleas, despite being invited to do so, nor did he file a

direct appeal, even as being paid $50,000.00 to do just such, and Mr. Hankey did no independent investigation or preparation and basically planned to try the case by the seat of his pants. Defendant was placed in such a position by Mr. Hankey that he felt he had no choice but to plead guilty, which was not based upon confidence in his attorney's advice after a thorough investigation and preparation. And there is no indication in the record that the Prosecution would have been prejudiced in any manner had Defendant been allowed to withdraw his guilty pleas.

[¶7] Dated this _22_ day of December, 2015.


Nathan G. Dubray, pro se
James River Correctional Center, Inmate #39395
2521 Circle Drive,
Jamestown, ND 58401

3

IN DISTRICT COURT, GRAND FORKS COUNTY, NORTH DAKOTA

State of North Dakota,

                Plaintiff,

    v.

Nathan Gene Dubray,

                Defendant.

**STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**
Court No. 18-2012-CR-01960
SA#121086

[¶1] On December 28, 2015, the State received a Notice of Motion and Motion to Withdraw Guilty Plea, Brief in Support of Motion to Withdraw Guilty Plea, Affidavit of Nathan Dubray in Support of Motion to Withdraw Guilty Plea, and Request for Hearing. The State resists Defendant's request.

[¶2] Mr. Dubray fails to provide any law or case law in support of his request to withdraw his guilty plea. After a court has accepted a guilty plea and the defendant has been sentenced, a guilty plea may not be withdrawn unless withdrawal is necessary to correct a manifest injustice. State v. Farrell, 2000 ND 26, ¶ 8, 606 N.W.2d 524. Not only has Dubray failed to establish he suffered a manifest injustice, Mr. Dubray fails to even argue or attempt to articulate that he suffered one. Rather Dubray argues his attorney failed to adequately prepare for trial and/or investigate the case after having been paid a large sum of money.

[¶3] Mr. Dubray's request could be viewed as a motion for a new trial under Rule 33 of the North Dakota Rules of Criminal Procedure. That Rule sets a 14 day deadline for filing such a motion absent newly discovered evidence. Dubray is approximately 2 years past this deadline and has failed to provide the Court with newly discovered evidence.



EXHIBIT

22

[¶3] Mr. Dubray previously argued to the Court that his trial counsel was ineffective in his Petition for Post Conviction Relief. His arguments in his pending motion are strikingly similar to the rejected claims made in his failed bid for post-conviction relief. As such, should the Court view Defendant's request to withdraw his guilty plea under the spirit and terms of the Post Conviction Relief Act the State respectfully requests that Dubray's request be denied on the grounds of res judicata as these claims of ineffectiveness were fully and finally determined in a previous proceeding and/or misuse of process as the specific claim the trial counsel failed to withdraw the guilty plea was inexcusably not raised in the post conviction proceeding. N.D.C.C. § 29-32.1-12; See also Jensen v. State, 2004 ND 200, ¶ 9, 688 N.W.2d 374 (ruling that post-conviction relief is not warranted when defendants assert claims that are merely variations of previously rejected claims); Silvesan v. State, 1999 ND 62, ¶ 12, 591 N.W.2d 131 (raising issues in a second post-conviction application which could have been raised in the first was a misuse of process).

[¶4] Wherefore, the State respectfully requests that Dubray's motion be denied.

DATED this 7ᵗʰ day of January, 2016.

M. Jason McCarthy
Assistant State's Attorney
ND Bar ID #05656
124 South 4ᵗʰ Street
PO Box 5607
Grand Forks, ND 58206-5607
(701) 780-8281
E-Service Address: sasupportstaff@gfcounty.org

MJM/dj

**In District Court, Grand Forks County, North Dakota**

| | |
|---|---|
| State of North Dakota, | Case No. 18-2012-CR-1960 |
| Plaintiff, | Order Denying Application For Court-Appointed Attorney and Order Denying Motion to Withdraw Guilty Plea |
| v. | |
| Nathan G. Dubray, | |
| Defendant. | |

¶1    Defendant entered guilty pleas to two counts of Gross Sexual Imposition, class AA felonies. An Amended Criminal Judgment was entered on January 3, 2014. Defendant did not appeal from the Amended Criminal Judgment. Defendant filed an Application for Post-Conviction Relief in Case No. 18-2014-CV-960 alleging ineffective assistance of counsel and seeking to withdraw his guilty pleas and proceed to trial. This Court granted Defendant's request for a court-appointed attorney for the post-conviction relief petition and held an evidentiary hearing. Following the hearing, this Court denied the Application for Post-Conviction Relief, and Defendant appealed the decision to the North Dakota Supreme Court. Defendant was represented by court-appointed counsel during the appeal. The North Dakota Supreme Court affirmed the trial court's decision. <u>Dubray v. State</u>, 2015 ND 44. Defendant now requests the Court appoint an attorney to represent him in the filing of a Motion to Withdraw Guilty Plea in this case.

¶2    Defendant fails to provide any legal support for his request for court-appointed counsel. The Amended Judgment was entered on January 3, 2014, and Defendant did not file a timely appeal from the criminal judgment. Since the time for an appeal has expired, this Court finds the criminal case has concluded and there is nothing pending before the Court other than the Motion to Withdraw Guilty Plea, which is discussed below. The Guidelines to Determine Eligibility for Indigent Defense Services provide that a Defendant has a right to counsel when charged with a

1

EXHIBIT
23

felony, in a post-conviction proceeding, and in appeal of a criminal conviction or post-conviction determination. In this case, Defendant was afforded counsel through sentencing and did not appeal the conviction. Likewise, he was provided with court-appointed counsel in the appeal of the post-conviction determination and during the appeal. Consequently, under the facts of this case, this Court finds Defendant is not entitled to court-appointed counsel.

¶3      N.D.R.Crim.P. 11(d) sets forth the grounds for withdrawing a guilty plea. A guilty plea may only be withdrawn after sentencing unless the defendant proves that withdrawal is necessary to correct a manifest injustice. Here, Defendant argues that because of ineffective assistance of counsel, his guilty pleas were not voluntary. This is the same argument Dubray advanced in his Petition for Post-Conviction Relief. The Court finds the Motion to Withdraw Guilty Plea on the claim of ineffective assistance of counsel was fully and finally determined in the post-conviction proceedings.

¶4      **It is hereby ordered** Defendant's Application for Court-Appointed Counsel and the Motion to Withdraw Guilty Plea are denied.

Dated: January 11, 2016

By the Court:

Debbie G. Kleven
District Judge

Cc:     Nathan Dubray, 2521 Circle Dr., Jamestown, ND 58402
        M. Jason McCarthy, Assistant State's Attorney

2